UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KIM FOREMAN, ) | |
| ) | |
| Plaintiff, ) | CAUSE NO. 3:06-cv-449-MHT |
| ) | |
| v. ) | |
| ) | |
| MASTERBRAND CABINETS, INC., ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S TRIAL BRIEF

Defendant MasterBrand Cabinets, Inc. ("MBCI") respectfully submits this Trial Brief pursuant to this Court's Order dated August 23, 2007. In this case, Plaintiff Kim Foreman alleges that the termination of her employment with MasterBrand Cabinets, Inc. ("MBCI"), involved discrimination on the basis of her race and/or sex in violation of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") and 42 U.S.C.§1981 ("§ 1981").[1] Ms. Foreman has not alleged any direct evidence of discrimination. Rather, it appears from her contentions in the Pretrial Order that Ms. Foreman intends to attempt to prove her claims of discrimination entirely under the indirect method of proof set out in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). (*See* Doc. No. 43 at 3-4.)

---

[1] As noted in MBCIs Opposition to Plaintiff's Motion in Limine, under her analysis in her Motion in Limine, Plaintiff has waived her claim under §1981. For the reasons set out in MBCIs Opposition, MBCI disagrees with Plaintiff's analysis. However, if Plaintiff's Motion In Limine is granted with respect to MBCIs affirmative defenses, MBCI respectfully submits that Plaintiffs §1981 claim would also have to be deemed waived.

Ms. Foreman's claims fail as a matter of law. Ms. Foreman cannot establish a prima facie case of discrimination on the basis of either race or sex.[2] In particular, Ms. Foreman cannot present any evidence of an employee outside of her protected classes who engaged in "nearly identical" misconduct but who was treated differently than she was treated.[3]

Even if Ms. Foreman could show a prima facie case, Ms. Foreman cannot present any evidence that MBCI's legitimate, non-discriminatory reasons for terminating her employment were pretexts for discrimination. Indeed, two of the decision makers – Anthony Zellars and Buddy Smith – involved in the decision to terminate Ms. Foreman's employment are, like Ms. Foreman, African-American. Under these circumstance, she would bear a particularly heavy burden in showing her termination was the result of discriminatory animus based on her race. There is no such evidence.

Finally, the evidence will show that Ms. Foreman is not entitled to any damages, including back pay, front pay, benefits, compensatory damages, punitive damages, and/or nominal damages, attorneys fees and costs, or to any equitable relief, including an injunction or declaratory judgment. Even if Ms. Foreman were determined to be entitled to damages, the evidence will show that any alleged lost wages must be off-

---

[2] For the reasons set forth in MBCI's Motion in Limine, Ms. Foreman should be precluded from presenting any evidence regarding Thomas Clack and DuWayne Nazworth at trial because they did not engage in misconduct that was "nearly identical" to that of Plaintiff. (*See* Doc. No. 46 at 7-8.)

[3] During the Pretrial Hearing on August 21, 2007, the Court instructed the parties to address the issue of whether Ms. Foreman's claims would fail if there was no common decision maker involved in her termination and in the incidents involving Mr. Clack and Mr. Nazworth. Based on MBCI's further investigation and research following the Pretrial Hearing, MBCI does not intend to rely on the argument that there was no common decision maker.

set by the amounts that Ms. Foreman has earned since the termination of her employment and that Ms. Foreman has failed to mitigate her alleged damages.

## Facts

MBCI anticipates that the pleadings and evidence will establish the following:

Ms. Foreman was employed as an Assembler in the Assembly Department at MBCI's Auburn facility. Ms. Foreman's primary duty was expediting parts for cabinetry. As an expediter, Ms. Foreman was responsible for locating and obtaining replacement parts for missing or damaged components so that cabinet assembly could be completed and the cabinets shipped as a complete kitchen. The expediting function involves identifying the part or component that needs to be repaired or replaced and working with the other departments in the production cycle to obtain the item so that a cabinet may be fully assembled and sent to the Shipping Department. Since MBCI builds a kitchen at a time, the expeditor position is important in fulfilling MBCI's commitment to ship kitchens complete and on time.

Ms. Foreman's employment with MBCI was terminated on April 13, 2005, after it was determined that on the previous work day she had abandoned her job duties and responsibilities for an extended period of time and been absent from the Auburn facility without notice and without informing any representative of management.

On April 12, 2005, Ms. Foreman clocked in for her shift at 7:00 a.m. Her Team Leader and direct supervisor on that day was Mr. Buddy Smith. Mr. Smith, like Ms. Foreman, is African-American.

Less than two hours after she clocked in, Ms. Foreman, at 8:54 a.m., walked off the job and clocked out. Ms. Foreman did not advise Mr. Smith that she was leaving work or leaving the facility. Ms. Foreman also did not advise or seek to advise any other supervisor or any member of MBCI's management team that she was leaving her job assignment and leaving the Auburn facility.

After some period of time, it was determined by Mr. Smith and Mr. Norm Krogh that Ms. Foreman had disappeared. Mr. Krogh was at that time the Auburn Facility's Plant Manager and responsible for manufacturing operations.

More than six hours later, at 3:36 p.m., Ms. Foreman returned to the facility and clocked back in to work. She did not report to Mr. Smith, Mr. Krogh, or the human resources department. After Mr. Smith and Mr. Krogh became aware of Ms. Foreman's reappearance in the facility, Mr. Krogh informed her that she would need to report to human resources the next morning. Ms. Foreman admitted that she had left the facility without informing Mr. Smith or any MBCI supervisor or member of management. She indicated she had left due to personal problems and that she did not have a doctor's note. Ms. Foreman was placed on suspension pending the outcome of MBCI's investigation of her extended, unauthorized absence from her job and the facility.

Mr. Smith and Mr. Krogh consulted with Human Resources Manager Tom Barthel. Mr. Barthel, in turn, consulted with his own supervisor, Mr. Anthony Zellars. Mr. Zellars was at that time the Auburn Facility's General Manager and the highest ranking manager within the Facility. Mr. Zellars, like Ms. Foreman, is African-American.

The next morning, on April 13, 2005, Ms. Foreman met with Mr. Barthel. Ms. Dot Humphries, another MBCI supervisor, sat in on the conference as a witness. Ms. Foreman admitted during her conversation with Mr. Barthel that on the day before, she had left her job and the facility without informing her supervisor and that she had been missing from the facility for the better part of the workday. Mr. Barthel then informed Ms. Foreman that her employment was terminated because she had left the plant without notifying any member of management, was gone without any valid reason for an excessive amount of time, had a handbook and had reviewed the appropriate policies at the time of her hire, and should have been aware of the consequences of her action.

Mr. Smith, Mr. Krogh, Mr. Barthel, and Mr. Zellars all agreed that termination of Ms. Foreman's employment was warranted under the circumstances.

On or about May 16, 2005, Ms. Foreman called MBCI's human resources hotline. She indicated that she had been "terminated on 04/12/05 for leaving her work locations."[4] When asked if she had notified anyone she was leaving her job that day, Ms.

---

[4] Ms. Foreman indicated that the unemployment office had told her she was denied benefits because their file said she had resigned. She apparently called MBCI's personnel hotline to resolve the unemployment office's confusion over whether her abandonment of her position should be treated by them as a voluntary resignation or a termination.

5

Foreman admitted again "no." Ms. Foreman did not allege during her hotline call that she believed her termination had been discriminatory.

## Procedural Posture

As set forth more fully below, the trial in this matter will show that the evidence fails, as a matter of law, to support Ms. Foreman's allegations. MBCI respectfully submits that this case will be particularly appropriate for resolution upon a motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) and that upon such a motion, judgment should be entered as a matter of law in MBCI's favor on all of Plaintiff's claims.

## Argument

### I.  Legal Standards

To support a disparate treatment claim under Title VII for improper termination, a plaintiff "must prove that the defendant acted with discriminatory purpose." *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002). Where a plaintiff lacks direct evidence of discrimination, she "must create an inference of discrimination by establishing a prima facie case." *Id.* The Eleventh Circuit has explained that for a plaintiff alleging discriminatory discharge to make out a prima facie case, she must show:

> [1] that she is a member of a protected class, [2] that she was qualified for the job from which she was fired, and [3] ' that the misconduct for which she was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained.'

*Williams*, 303 F.3d at 1293 (citation omitted).

If a plaintiff succeeds in establishing a prima facie case giving rise to a presumption of discrimination, the defendant must rebut this presumption by producing evidence that the termination was motivated instead by a legitimate, nondiscriminatory reason. *Wright v. Sanders Lead Co.*, 2006 WL 905336, at *6 (M.D. Ala. April 7, 2006). If the defendant is able to meet this burden of production, the plaintiff, in order to prevail, must then present sufficient evidence to demonstrate that the proffered reason is merely a pretext for discrimination. *See Holston v. The Sports Authority*, 136 F. Supp. 2d 1319, 1325 (N.D. Ga. 2000).

The same standards governing liability under Title VII apply to § 1981 claims. *Wright*, 2006 WL 905336, at *11.

II. **There Is No Evidence To Support Ms. Foreman's Claims Of Discrimination**

    A. **Ms. Foreman Cannot Make Out A Prima Facie Case Because There Is No Evidence That Another Employee Engaged In Nearly Identical Misconduct But Was Treated Differently**

To establish the third prong of her prima facie case, Ms. Foreman bears the burden of demonstrating that she was "treated differently than a similarly situated employee outside of . . . her protect class." *Wright*, 2006 WL 905336, at *8. To carry this burden, Ms. Foreman must show that "the proposed comparator was 'similarly situated in all relevant respects.'" *Id.* (citation omitted). As another Court in this District has explained, a "similarly situated" employee is one

> who was "subject to the same standards" as Plaintiff and "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's

7

>treatment of them for it." For purposes of the prima facie showing, "[t]he most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed."

*Id.* (internal citations omitted). The Eleventh Circuit has further explained that a plaintiff is similarly situated to another employee for purposes of establishing her prima facie case of discriminatory discharge only if "the quantity and quality of the comparator's misconduct [are] nearly identical." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). *See also, Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable business decisions and confusing apples with oranges." ); *Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1184-1185 (11th Cir. 1984) (a plaintiff alleging discriminatory discharge must show that the misconduct for which he was fired was "nearly identical" to conduct engaged in by a employee outside the protected class, who was retained by the employer); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982) (plaintiff must establish that the misconduct for which she was fired was "nearly identical" to that committed by a person outside her protected class who was retained).

In addition, an employer "may believe, without violating Title VII, that there is a qualitative difference between various acts of misconduct." *Wright*, 2006 WL 905336, at *8 (citation omitted). *See also Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311, *modified on other grounds*, 151 F.3d 1321 (11th Cir. 1998) ("Title VII does not take away an employer's right to interpret its rules as it chooses, and to

8

make determinations as it sees fit under those rules."). Where a plaintiff and her proposed comparators are *not* similarly situated, "an employer's decision to impose different punishment on each does not raise an inference of illegal discrimination." *Id.*

In *Holston*, for example, the court granted summary judgment in the defendant's favor on plaintiff's claim of discriminatory discharge where she failed to identify any similarly situated employee. There, the plaintiff was responsible for packing the employer's products into boxes to be shipped, and she was stationed along a conveyor belt in her employer's facility. The court summarized the facts as follows:

> On June 30, 1998, plaintiff began her shift as usual at 7:30 a.m., but by mid-morning, she began to suffer from intense vaginal itching related to a recurrent yeast infection. Plaintiff wanted to leave work to see her doctor, and contends that she searched for Wolfson [who was plaintiff's immediate supervisor], but could not find her. Accordingly, she left a note for Wolfson on her desk that stated: "Gayle, I'm too hot! Had to leave. Schawanda." Plaintiff did not include more specific details about her medical condition because Wolfson's desk was in an open area and plaintiff wanted to keep her condition private. . . . Plaintiff then clocked out at around 11:00 a.m.

*Id.* at 1322. After the plaintiff was determined to be gone from work, Wolfson reported the plaintiff's absence to her own supervisor, Rodney Littlejohn.[5]

> Littlejohn subsequently interviewed all the lead persons and supervisors in plaintiff's work area to determine whether plaintiff had notified any of them that she was leaving work early. It is undisputed that every lead person and supervisor . . . to whom Littlejohn spoke told him that plaintiff had not notified them that she was leaving work early.

---

[5] Wolfson was white, and Littlejohn was African-American. The race of the plaintiff's supervisors did not make a difference in the court's conclusion that the plaintiff had failed to make out a prima facie case of discrimination due to her inability to point to a similarly situated employee.

9

*Id.* at 1323.  After consulting with the company's human resources department, Littlejohn decided plaintiff's employment should be terminated.  The next morning when the plaintiff returned to work, Littlejohn informed her that her employment "was being terminated for job abandonment."  *Id.*

The plaintiff in *Holston* sued under Title VII and § 1981 alleging her termination had been discriminatory on the basis of race.  In an effort to establish a prima facie case, the plaintiff pointed to a white employee as a comparator, contending this employee had received more favorable treatment in similar circumstances.  Specifically, the plaintiff alleged that the white employee had failed to show up to work but had not been fired until she had missed three consecutive days, while plaintiff had been fired immediately.  Rejecting this argument, the court concluded that the white employee had not engaged in "nearly identical" misconduct because the defendant viewed the misconduct of an employee who abandoned her job in the middle of a shift "as a more serious threat to the orderly work of the plant" than the misconduct of an employee who does not show up to work at all.  *Id.* at 1328.  The evidence showed that the employer believed that when an employee abandons her job in the middle of her shift without notifying a supervisor, "it could result in a work flow stoppage and backlog that could decrease productivity," while an employee's failure to appear for work at all was less disruptive because the employer could make adjustments in the work flow at the beginning of the day.  *Id.*  Accordingly, the court concluded the plaintiff, by not presenting evidence of another employee who had engaged in "nearly identical"

misconduct, had failed to establish a prima facie case of discrimination. The court thus granted summary judgment in the defendant's favor.

Similarly, in *McCalister v. Hillsborough County Sheriff*, the plaintiff police officer admitted that he had abandoned his post for a little over an hour to drive home, change his clothes, and meet with a female acquaintance. 2006 WL 3741883 (11th Cir. Dec. 20, 2006). After an investigation into his conduct by his employer, it was determined his employment should be terminated for abandoning his post and for breaking five other rules relating to this incident. The plaintiff sued, alleging his termination had been based on race.

The District Court in *McCalister* granted summary judgment in favor of defendant, and the Eleventh Circuit affirmed, concluding that none of the comparators identified by the plaintiff had engaged in "nearly identical" misconduct. For example, the Court explained that the plaintiff was not similarly situated to one employee who had been reprimanded for "Failure to Report For Duty Due To Improper Conduct" after he had missed work due to a motorcycle crash that had been his own fault. The Court concluded this incident was not "nearly identical" to the plaintiff's misconduct, stating:

> a failure to report for duty is not materially identical to departing one's post mid-shift for a tryst, leaving military personnel and property unguarded, lying to another officer about it, and then submitting a false document requesting payment for the trouble.

2006 WL 3741883, at *3.

Like the plaintiffs in the two cases discussed above, Ms. Foreman cannot produce evidence of any comparator whose "quantity and quality" of misconduct was

11

nearly identical to her own but who was treated differently.  Ms. Foreman abandoned her position shortly after her shift began without informing her supervisor or any member of MBCI management and was gone for over six hours before reappearing at work.  Although she indicated that she had experienced a personal problem, she also indicated that she had not seen a doctor, nor did she present a doctor's note upon returning to the facility.  Plaintiff has identified two alleged comparators in her Complaint and in the Pretrial Order, Mr. Clack and Mr. Nazworth.  However, the evidence will show that neither Mr. Clark nor Mr. Nazworth engaged in misconduct that was nearly identical in quality or quantity to Ms. Foreman's.

Because Ms. Foreman will not be able to establish a prima facie case of discrimination, her claims will fail as a matter of law.

B. **Ms. Foreman Cannot Show That MBCI's Legitimate, Non-Discriminatory Reasons For Terminating Her Employment Were Pretexts For Discrimination**

The evidence will show that MBCI terminated Ms. Foreman's employment in good faith after it was determined that on the previous work day she had abandoned her job duties and responsibilities for an extended period of time and been absent from the Auburn facility without notice and without informing any representative of management.  Ms. Foreman cannot produce any evidence that MBCI's legitimate, non-discriminatory reasons for her termination were pretexts for discrimination on the basis of either race or sex.

Indeed, as noted above, Mr. Smith and Mr. Zellars are both African-American and therefore in the same protected class as Ms. Foreman with respect to race.

12

Mr. Smith was Ms. Foreman's direct supervisor and was involved in the discovery, investigation, and assessment of Ms. Foreman's abandonment of her job on April 12, 2005. Mr. Zellars was at that time the General Manager of the Auburn facility. All of the remaining individuals involved in the decision making process, Mr. Smith, Mr. Krogh and Mr. Barthel, reported to Mr. Zellars. In addition, Mr. Zellars spoke directly with Ms. Foreman about her job abandonment. After investigating the incident, all four concurred in the decision that termination of Ms. Foreman's employment was appropriate under the circumstances.

When, as here, decision makers are in the same protected class as the plaintiff, "the employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision complained about." *Holston*, 136 F. Supp. 2d at 1335. *See also Walker v. Boys and Girls Club of America*, 38 F.Supp. 2d 1326, 1337 (M.D. Ala. 1999) (in holding plaintiff failed to make out a prima facie case of discrimination, the court observed that it is "extremely difficult for a plaintiff to establish discrimination where the allegedly discriminatory decision-makers are within the same protected class as the plaintiff."). Ms. Foreman can present no evidence to meet this very heavy burden.

Accordingly, even if Ms. Foreman could make out a prima facie case, there is simply no evidence by which she can demonstrate pretext, and her claims would still fail as a matter of law.

III.   **Damages**

Ms. Foreman cannot show she is entitled to any damages. However, even were Ms. Foreman due damages, those damages would need to be reduced or entirely excluded.

   A.   **Ms. Foreman's Alleged Damages Would Be Subject To Reduction**

The evidence will show that any award of back pay or front pay would need to be offset based on Ms. Foreman's earnings after her termination. Ms. Foreman has had several jobs since her employment with MBCI ended. The evidence will also show that Ms. Foreman left at least one post-MBCI job with Capitol Vial in February 2006 to accept employment at WPH-Martex, even though this change in employment resulted in a reduction in pay. To the extent that the evidence shows Ms. Foreman did not use "reasonable and good faith efforts" to retain a higher paying job in favor of a lesser paying one , any lost wages she might be awarded "should be decreased by the amount [s]he would have earned had [s]he not quit" the former job. *Cf. Sennello v. Reserve Life Ins. Co.*, 667 F. Supp. 1498, 1513-14 (S.D. Fla. 1987), *aff'd*, 872 F.2d 393 (11th Cir. 1989).

   B.   **Ms. Foreman Would Not Be Entitled To Punitive Damages**

The evidence will also establish that even were Ms. Foreman entitled to damages, she would have no right to punitive damages. "Punitive damages are 'an extraordinary remedy,' to be reserved for egregious cases." *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322 (11th Cir. 1999). "For punitive damages, a plaintiff must demonstrate some form of reckless or egregious conduct or otherwise 'every employment

14

discrimination claim [could] include a punitive damage award because every employment discrimination plaintiff must demonstrate an intentional unlawful discrimination.'" *Id.* (citation omitted). Accordingly, to obtain punitive damages, a plaintiff must demonstrate reckless or egregious conduct by providing (1) a pattern of discrimination; (2) spite or malevolence; or (3) a blatant disregard for civil obligations. *Id.* at 1322-23.. In the Eleventh Circuit, punitive damages will ordinarily not be assessed against employers with only constructive knowledge of the violations. *Id.*; *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1279-80 (11th Cir. 2002); *Splunge v. Shoney's, Inc.*, 97 F.3d 488, 491 (11th Cir. 1996). Here, Ms. Foreman cannot offer any such evidence.

WHEREFORE, MBCI respectfully submits this Trial Brief.

Respectfully submitted,

BAKER & DANIELS LLP

By:    s/ Christopher C. Murray
    Mark J. Romaniuk, (IN Bar #15255-49)
    Christopher C. Murray (IN Bar #26221-49)
     (both admitted *pro hac vice*)
    Attorneys for MasterBrand Cabinets, Inc.

300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
mark.romaniuk@bakerd.com
christopher.murray@bakerd.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2007, the foregoing was filed electronically. Notice of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system.

>David R. Arendall
>Allen D. Arnold
>ARENDALL & ASSOCIATES
>2018 Morris Avenue
>Birmingham, Alabama  35203

>>s/ Christopher C. Murray
>>Christopher C. Murray

BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
mark.romaniuk@bakerd.com
christopher.murray@bakerd.com

BDDB01 4868219v2