IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

KIM FOREMAN,

PLAINTIFF,           CIVIL ACTION NO. 3:06cv00449 (MHT)

V.

MASTERBRAND CABINETS, INC.,

DEFENDANT.

### PLAINTIFF'S TRIAL BRIEF

COMES NOW the Plaintiff, by and through undersigned counsel, and submits this Trial Brief pursuant to this Honorable Court's Pre-Trial Order of August 22, 2007.

I.     **Plaintiff's Burden of Proof**

    A. **Introduction**

Plaintiff has asserted a claim of gender discrimination pursuant to Title VII of the Civil Rights Act of 1964 (Title VII) and a claim of race discrimination pursuant to Title VII and 42 U.S.C. § 1981 (§ 1981) in her Complaint for damages. Generally, the Plaintiff was terminated for allegedly abandoning her job without telling her supervisor. White males committed the same infraction and were not terminated by the same decision maker. As noted at the Pre-Trial conference, Defendant intends to argue that Plaintiff's termination and her comparator's were

1

not made by identical decision-makers. The evidence at trial will show this is not true. Furthermore, even if such evidence is presented, the "cat's paw" theory of discriminatory intent should be considered by this Court.

### B. Burden of Proof

#### 1. Prima Facie Case

Plaintiff's claims of race and gender discrimination are based on circumstantial evidence. The Plaintiff may establish a prima face case of illegal discrimination by showing that "(1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class." *Hammons v. George C. Wallace State Cmty. College*, 174 Fed. Appx. 459, 462 (11th Cir. 2006). The McDonnell Douglas framework used to analyze a Title VII claim is also applicable to a § 1981 claim. *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1015 n. 1. (11th Cir. 2001). The evidence will show that Defendant does not dispute three of the four prima facie elements necessary to meet Plaintiff's initial burden of proof.

#### (a) Protected Class

Plaintiff is a member of two protected classes that are at issue in this case: sex and race. (See 42 U.S.C. § 2000e-2(a)(1)). Plaintiff is an African-American

female. (See Doc. 1: Plaintiff's Complaint, Exhibit A). Plaintiff does anticipate Defendant disputing this element of the prima facie case.

**(b)    Qualified**

The Eleventh Circuit has "recognized that in termination cases, the question of whether the plaintiff was qualified to do the job is not often at issue. In cases where a plaintiff has held a position for a significant period of time, qualifications for that position sufficient to satisfy the prima facie case can be inferred." *Crapp v. City of Miami*, 242 F.3d 1017, 1020 (11th Cir. 2001) (citing *Rosenfeld v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495 n. 2 (11th Cir. 1987)). Defendant's admitted responses in its Answer to Plaintiff's Complaint allow the Court to properly draw the inference that Plaintiff was qualified for the position.

MBCI **admits** that Plaintiff began working for MBCI on July 24, 2000 as an expeditor. (Doc. 9: Defendant's Answer ¶ 5). Plaintiff had no relevant performance issues whatsoever during her employment with Defendant.[1] (Pl. Ex. 2: Int. No. 10). Defendant terminated Plaintiff's employment on April 13, 2005. (Doc. 9: Defendant's Answer ¶ 12). Plaintiff was employed for four years, eight months, and three weeks.[2] The Court, and the jury, may infer that Plaintiff was qualified for her position with Defendant.

---

[1] Defendant has deemed that Plaintiff had no performance issues during her tenure with the company.
[2] See http://www.timeanddate.com/date/duration.html

### (c) Tangible Adverse Job Action:

"Termination clearly satisfies an adverse employment action." *Labady v. Gemini Air Cargo, Inc.*, 350 F. Supp. 2d 1002, 1018 (S.D. Fla. 2004). The Defendant does not dispute that it terminated Plaintiff's employment. (Doc. 9: Defendant's Answer ¶ 12).

### (d) Favorable Treatment Outside the Protected Class

Plaintiff must show that employees outside of her protected class who were similarly situated were treated more favorably. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). Defendant terminated Plaintiff's employment "because she had left the plant <u>without notifying any member of management</u>, had a handbook and had reviewed the appropriate policies at the time of her hire, and should have been aware of the consequences of her action" (Pl. Ex. 1: RFA No. 7). "Plaintiff did not advise nor seek the permission of her team leader, Mr. Buddy Smith, prior to leaving work." (Pl. Ex. 1: RFA No. 3).

Plaintiff has a valid and identical white-male comparator. "MBCI admits that to the best of its knowledge, Thomas "Mike" Clack is a white male." (Pl. Ex. 1: RFA No. 11). The personnel files of Plaintiff and Clack show that each signed identical acknowledgements regarding company policies and receipt of handbooks. "On May 16, 2005, Mr. Clack worked the entire scheduled production shift. After scheduled production was complete but before the full duties and responsibilities

of the Support Tech position were completed, Mr. Clack clocked out and left work without first notifying this team leader, Mr. Buddy Smith. As a result of this incident, Mr. Clack was issued a written warning and was demoted form the Support Tech lead position.[3]

Defendant's counsel indicated that different decision-makers existed regarding the employment decisions of Plaintiff and the comparators. However, this argument lacks merit. "Norm Krogh, Senior Manufacturing Manager, was responsible for suspending Plaintiff, and Tom Barthel, Human Resources Manager, ultimately made the decision to terminate Plaintiff's employment. (Pl. Ex. 2: Int. No. 6). Mr. Clack is similarly situated. "Employment decisions, including disciplinary action, are made through the Human Resources Department." (Pl. Ex. 2: Int. No. 4). "Mr. Barthel had general responsibility for personnel matters in the Auburn plant at the time of the termination of Plaintiff's employment." (Pl. Ex. 2: Int. No. 6). Mr. Barthel was the acting Human Resources Manager at the time Mr. Clack was disciplined. (See Pl. Ex. 3). Mr. Clack was written up pursuant to company policy and issued a demotion. Mr. Buddy Smith and Mr. Norm Krogh signed the write-up and demotion for Mr. Clack. (See Pl. Ex. 4). Logically, Mr. Barthel was responsible for this sort of personnel decisions.

---

[3] Plaintiff expects Defendant to argue that Mr. Clack's leaving without permission of Mr. Smith is different because the job duties of the day were complete. However, Defendant's own discovery responses show that the issue of this case is leaving without notifying any member of management. The relevant infraction is that neither employee is present at the factory to perform whatever work the Defendant may require of them during the scheduled shift.

Should the Court find that Mr. Barthel is not a common decision-maker, this finding does not preclude the Court from ruling that Plaintiff's comparator is similarly situated. "The fact that different supervisors are involved does not alone prevent a person from being a similarly situated employee." *Wyant v. Burlington Northern Sante Fe Railroad et al*, 210 F. Supp. 2d 1263, 1284 (N.D. Ala. 2002) (citing *Anderson v. WBMG-42*, 253 F.3d 561, 565-66 (11th Cir. 2001) (in dicta, rejecting "the proposition that whenever two different supervisors are involved in administering the disciplinary actions, the comparators cannot as a matter of law be similarly situated for Title VII purposes.")). At best, Defendant can only argue that two of the three relevant management officials are involved in Plaintiff and Clack's disciplinary decisions.

Plaintiff's burden is to show that "middle and upper managers were aware of, and consciously overlooked, similar violations by other employees when plaintiff was disciplined." *Moreland v. Miami-Dade County*, 255 F. Supp. 2d 1304, 1313 (S.D. Fla.) (quoting *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989). The jury is in the best position to decide if Norm Krogh, the middle manager, and Buddy Smith consciously overlooked Mr. Clack's violations of company policy. The jury is also in the best position to decide whether Mr. Krogh and Mr. Smith acted with or without Mr. Barthel's input in bringing about Plaintiff's termination.

Without question, Mr. Krogh "was responsible for suspending Plaintiff." (See Pl. Ex. 2: Int. No. 6). Mr. Krogh's decision set the wheels in motion for Plaintiff's termination. "The 'cat's paw' theory may be utilized by the plaintiff to prove 'that the discriminatory animus behind the recommendation caused the discharge … if the plaintiff shows that the decision-maker followed the biased recommendation without independently investigating' the recommendation." *Tucker v. Housing Auth. of the Birmingham Dist.*, 2007 U.S. App. 8143 (11th Cir. April 5, 2007) (citing *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). "In such a case, the recommender is using the decision-maker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus. Essentially, where the individual accused of discriminatory animus is 'an integral part' of a multi-level personnel decision, their improper motivation may "taint[] the entire … process." *Tucker v. Housing Auth. of the Birmingham Dist.*, 2007 U.S. App. 8143 (11th Cir. April 5, 2007) (citing *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999)). A reasonable jury can find that Barthel was a conduit by which Krogh made an employment decision motivated by discriminatory animus. The jury can find that, although Barthel made the ultimate decision to terminate Plaintiff, he was merely endorsing and adding to Krogh's decision.

    2.    **Defendant's Legitimate Non-Discriminatory Reason**

"If the plaintiff successfully rebuts a presumption of illegal discrimination by establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action." *Evans v. Ala. Dep't of Corrections*, 418 F. Supp. 2d 1271, 1275 (M.D. Ala. 2005). Defendant has met its burden of production under the *McDonnell-Douglas* burden shifting analysis framework. Defendant terminated Plaintiff's employment "because she had left the plant <u>without notifying any member of management</u>, had a handbook and had reviewed the appropriate policies at the time of her hire, and should have been aware of the consequences of her action" (Pl. Ex. 1: RFA No. 7).

### 3. Pretext for Discrimination

"Once the defendant satisfies this burden of production, the plaintiff must set forth evidence that would be sufficient to convince a reasonable fact finder that the reason given by the defendant is pretextual." *Evans v. Ala. Dep't of Corrections*, 418 F. Supp. 2d 1271, 1275 (M.D. Ala. 2005). The Plaintiff "may succeed in [meeting] this [burden] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256; 101 S. C.t 1089, 1095, 67 L. Ed. 207, 217 (1981). The Eleventh Circuit has emphasized the *Burdine* decision and noted that a plaintiff may meet her burden "by showing that a discriminatory

reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation." *Clark v. Coats & Clark*, 990 F.2d 1217, 1228 (11th Cir. 1993).

Defendant has relied on Plaintiff's knowledge of the company policies in its legitimate non-discriminatory reason for her termination. (See Pl. Ex. 1: RFA No. 7). An employer's violation of its own procedures can be evidence of pretext. *Bass v. Bd. of County Comm'rs, Orange County*, Fla., 256 F.3d 1095, 1108 (11th Cir. 2001). *See also Rudin v. Lincoln Land Community Coll.*, 420 F.3d 712, 727 (7th Cir. 2005) ("An employer's failure to follow its own internal procedures can constitute evidence of pretext."). "Departures from normal procedures may be suggestive of discrimination." *Brown v. Marriott Int'l, Inc.*, 2006 U.S. Dist. LEXIS 56246 at [*32] (N.D. Ga. 2006) (citing *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985)). Defendant's termination decision of Plaintiff was made in utter disregard to its internal policies.

## II.   Defendant's Affirmative Defenses

While not waiving her motion in limine regarding affirmative defenses, Plaintiff is briefing the Court on Defendant's possible mitigation of damages affirmative defense that may require evidentiary rulings at trial. "While it is the plaintiff's duty to mitigate, it is the defendant who has the evidentiary burden of demonstrating at trial that a plaintiff has failed to satisfy this duty. This may be

done by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." *Palma v. Pharmedica Communs., Inc.*, 2003 U.S. Dist. LEXIS 21160 at [*50] (Conn. D.C. 2003) (citing *Clark v. Franke*, 960 F.2d 1146, 1152 (2nd Cir. 1992)). Plaintiff expects Defendant to spend an inordinate amount of time on Plaintiff's subsequent employment, despite the fact Plaintiff is stipulating to the set off of back pay damages.

Respectfully submitted,

/s/ Allen D. Arnold
_____
Allen D. Arnold

OF COUNSEL:
ARENDALL & ASSOCIATES
2018 Morris Avenue, Third Floor
Birmingham, Alabama 35203
205.252.1550 - Office
205.252.1556 - Facsimile

### CERTIFICATE OF SERVICE

I have filed the foregoing with the Clerk of the Court using the CM/ECF system on August 31, 2007, which will forward a copy to:

Mark J. Romaniuk
Christopher C. Murray

/s/ Allen D. Arnold
_____
Of Counsel