

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1985 WL 2208 (E.D.N.C.), 38 Fair Empl.Prac.Cas. (BNA) 263, 37 Empl. Prac. Dec. P 35,327
**(Cite as: Not Reported in F.Supp.)**



DEBBIE B. SHAW, Plaintiff v. WEST POINT PEPPERELL, INC., et al., Defendants

United States District Court; E.D. North Carolina
Wilmington Division.
DEBBIE B. SHAW, Plaintiff
v.
WEST POINT PEPPERELL, INC., et al., Defendants
**No. 84-26-CIV-7.**

May 28, 1985.

Debbie B. Shaw, Pro Se Route 1, Box 334-B Bladenboro, North Carolina 28320, counsel for plaintiff.
Hubert N. Rogers, III (at trial only) Rogers and Bodenheimer P. O. Box 1607 Lumberton, North Carolina 28358, counsel for plaintiff.
Edward Katze William K. Principe Constangy, Brooks & Smith 2400 Peachtree Center Building 230 Peachtree Street, N.W. Atlanta, Georgia 30303, counsel for defendants.
Dickson McLean, Jr. McLean, Stacy, Henry & McLean P. O. Drawer 1087 Lumberton, North Carolina 28358, counsel for defendants.

MEMORANDUM OF DECISION
DUPREE, District Judge.
*1 This Title VII employment discrimination action came on for trial before the undersigned without a jury at the May 7, 1985 civil session of the court at Wilmington. Although plaintiff initiated the action pro se, she was represented at trial by counsel. Plaintiff's claim was that she was discharged from her position as a winder at defendant West Point Pepperell's Elizabethtown, North Carolina plant on account of her sex. Answering plaintiff's complaint the defendant denied that she had been dismissed on any impermissible grounds and alleged instead that she was discharged for walking off her job without first seeking permission. Having reviewed the evidence elicited at trial, the court now incorporates into this memorandum of decision its findings of fact and conclusions of law. Rule 52(a), F.R.Civ.P.

Plaintiff testified at trial that on the night of June 2, 1983, she was working her regular shift at defendant's plant when she began her menstrual cycle, causing her clothes to become soiled. She asked her sister to obtain permission to go home and change clothes from her supervisor, Rufus Duckworth. This permission was granted. Plaintiff went to her mother's home, which was closer to the plant than her own home, cleaned up, and borrowed a pair of bluejeans from her sister. She returned to work within one hour.

Later that evening, plaintiff began to experience severe cramps and an unusually excessive menstrual flow, resulting in her pants again becoming soiled. She testified that she attempted to find her supervisor, but was unable to do so. She also stated that she was unable to find anyone else in the department, which contained approximately twenty-five people, to help her find Mr. Duckworth so that she could again obtain permission to leave. Consequently, she left the plant without permission and went home. She did not check out of the plant with the security guard, stating that he was not at the gate when she left.

She returned at midnight to pick up her husband, who worked in a different department on the same shift at

Not Reported in F.Supp.                                                                                                                              Page 2
Not Reported in F.Supp., 1985 WL 2208 (E.D.N.C.), 38 Fair Empl.Prac.Cas. (BNA) 263, 37 Empl. Prac. Dec. P 35,327
**(Cite as: Not Reported in F.Supp.)**

defendant's plant. She asked him to go to Mr. Duckworth to explain the circumstances of her departure, and to ask if she still had her job. Her husband did have a conversation with Mr. Duckworth, and was informed that plaintiff was supposed to report to the plant personnel officer the next day.

Plaintiff returned to the plant the next day, and spoke with Lowell' Buck' Enquist, the personnel director at the defendant's plant. Plaintiff testified that Enquist told her that her condition was not an excuse for leaving without permission, and that she should have given notice prior to leaving. She also testified that she asked him to see a nurse, but he refused, saying it was not necessary. Plaintiff also stated that at no time did Enquist tell her that she had been fired or that the company had considered her departure without permission to constitute a voluntary quit. She testified that Enquist told her to go home because she was upset and that he would talk to her supervisor and the department head and get back to her on Monday, June 6.

*2 On June 6, she returned to speak to Mr. Enquist, who informed her at that time that the company considered her to have quit when she walked off the job. He asked her to sign a separation notice, but she refused because she believed that her departure without giving notice was justified under the circumstances.

Part of defendants' defense to plaintiff's claim is that she did not timely file her charge with the EEOC. See 42 U.S.C. § 2000e-5(e); Price v. Litton Business Systems, Inc., 694 F.2d 963 (4th Cir. 1982). The charge was filed on December 1, 1983, exactly 180 days after her June 6 meeting with Mr. Enquist. At trial, Mr. Enquist stated that he informed plaintiff on June 3 that she had been terminated. Plaintiff disagreed with this testimony, asserting that she did not understand that she had been discharged until June 6. The court finds plaintiff's testimony on this point to be more credible, and accordingly concludes that she timely filed her charge of discrimination with the EEOC and that her claim must be determined on its merits.

The basis for plaintiff's claim that her discharge was based on her sex rests largely on her assertions that Rufus Duckworth, her supervisor, made statements to her on the night that she walked off the job which indicated to her that her sex was, indeed, the reason for her dismissal. She testified that Duckworth continually made' evil comments' about women, and that when she came back to work on the night of June 2, 1983 after leaving for the first time, he complained about the condition of her machine and stated that women were a lot of trouble and that if it were left up to him, there would be no women working in the winding department. She further asserts that Mr. Enquist stated the next day that having her monthly period was not a justification for leaving work.

However, the court finds that the testimony of Mr. Duckworth and Mr. Enquist sufficiently rebutted these assertions. Mr. Duckworth testified that he had never made any' evil comments' about women and that he had never stated that he would rather not have women in his department. These assertions are supported by the fact that out of the twenty-five employees under his supervision at the time, sixteen were women. Furthermore, there was no evidence that any other woman had been dismissed under similar circumstances or had ever been harassed in any manner by Mr. Duckworth. Finally, defendants' evidence showed that in the only two other instances where employees had walked off the job without permission, they too had been deemed to have voluntarily quit; both of those employees were men.

Mr. Enquist testified that he had not told plaintiff that her departure from work was unjustified. He stated that he had told her that he did not consider her physical condition to have merited departing without first seeking permission from her supervisor or informing a fellow employee of her departure. Given that there were twenty-four other employees in the department, fifteen of whom were women, the court cannot say that this position was unreasonable.

*3 Defendants also presented evidence showing that plaintiff had, at times, a bad temper, and that this temper contributed to her departure without giving notice. Several of defendants' witnesses testified that plaintiff previously had been involved in an incident whereby she slapped a fellow employee and had to be separated from her. Defendant Duckworth further testified that on the night of June 2, plaintiff became angry after returning from home the first time because Duckworth had put another employee on her machine while she was gone, and that the other employee had complained of the condition of the machine.[FN1] He also stated that plaintiff told him that he should not let anyone else run her machine, and that the next time she went home she would not come back. Duckworth also

Not Reported in F.Supp.  Page 3
Not Reported in F.Supp., 1985 WL 2208 (E.D.N.C.), 38 Fair Empl.Prac.Cas. (BNA) 263, 37 Empl. Prac. Dec. P 35,327
**(Cite as: Not Reported in F.Supp.)**

testified that later in the evening, he received a phone call from the security guard who stated that he had seen plaintiff's car leaving the parking lot going about sixty miles an hour, and the guard wanted to know whether it was plaintiff or her husband driving. At that point, Duckworth checked plaintiff's machine, and found that she was gone. He was not informed of the reasons for her departure until after her husband came in to see him at the end of the shift.

A further factor in defendants' favor is the fact that Duckworth had no authority to fire plaintiff. He could only recommend that this be done. The ultimate decision to terminate plaintiff's employment was with Enquist and Gene Osborne, the department manager of the winding department. Thus, even if the court assumes that Duckworth had some predisposition against women, he did not have the ultimate authority to decide whether or not plaintiff should be terminated. That decision was left up to his superiors.

Thus, the evidence shows that plaintiff left work on the night of June 2 without permission. Plaintiff admitted that she knew that such a departure was generally considered to be a voluntary quit. Plaintiff further failed to persent any evidence that any other employee, male or female, had ever departed under similar circumstances without being similarly discharged.[FN2]

To state a claim of sex discrimination based on the enforcement of a work rule, plaintiff must show either that she did not violate the rule or that, if she did, male employees who engaged in similar conduct were not punished similarly. Green v. Armstrong Rubber Company, 612 F.2d 967, 968 (5th Cir.), cert. denied, 449 U.S. 879 (1980); Payne v. Blue Bell, Inc., 550 F.Supp. 1324 (M.D.N.C. 1982). Plaintiff failed to show either that she did not violate the rule or that male employees who walked off the job without first seeking permission were not discharged. Furthermore, Title VII does not protect against harsh or even unfair actions by employers. It only provides a remedy when those actions are based on impermissible discriminatory grounds, such as race or sex. Nix, supra; Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir. 1979); Megill v. Board of Regents, 541 F.2d 1073 (5th Cir. 1976); Payne v. Blue Bell, Inc., supra.

*4 Thus, plaintiff has failed to sustain her burden of showing that her discharge was based on her sex. While the court can sympathize with her embarrassment in not wishing her co-workers to see her with her pants soiled, she knew that she was not supposed to walk off the job without first seeking permission. Plaintiff herself testified that if a machine is left unattended, serious damage could result. Furthermore, while defendants' actions may be considered harsh under the circumstances, they cannot be said to have been based on impermissible discriminatory grounds. Therefore, the court sitting as factfinder in this action concludes that plaintiff has failed to sustain her burden of showing discriminatory discharge on the basis of sex. An order of dismissal of the action will be entered in accordance with this opinion.

> [FN1] That employee was also a woman.
>
> [FN2] Plaintiff submitted evidence regarding defendant West Point Pepperell's employee handbook, which sets out guidelines regarding absenteeism. Page 5, paragraph 2, of the handbook states that employees will be subject to disciplinary action if they fail to give proper notice within one working day after the beginning of an absence which is caused by an emergency condition and which could not be anticipated. Plaintiff asserts that she met the requirements of the handbook by giving notice within a few hours of her departure. However, the testimony at trial showed that this provision covers only those situations where the employee cannot come to work. It does not discuss instances where the employee walks off the job. Furthermore, plaintiff testified that she knew that she had to seek permission from her supervisor before leaving. Therefore, the court gave little weight to her assertion that the defendants' alleged failure to follow the provisions in the handbook in her case constituted discrimination on the basis of sex. See Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984).

Shaw v. West Point Pepperell, Inc.
Not Reported in F.Supp., 1985 WL 2208 (E.D.N.C.), 38 Fair Empl.Prac.Cas. (BNA) 263, 37 Empl. Prac. Dec. P 35,327

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1985 WL 2208 (E.D.N.C.), 38 Fair Empl.Prac.Cas. (BNA) 263, 37 Empl. Prac. Dec. P 35,327
**(Cite as: Not Reported in F.Supp.)**

END OF DOCUMENT

2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.