UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

KIM FOREMAN,

|                                    |     |                              |
|------------------------------------|-----|------------------------------|
|                                    | )   |                              |
| Plaintiff,                         | )   | CAUSE NO. 3:06-cv-449-MHT    |
|                                    | )   |                              |
| v.                                 | )   |                              |
|                                    | )   |                              |
| MASTERBRAND CABINETS, INC.,        | )   |                              |
|                                    | )   |                              |
| Defendant.                         | )   |                              |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND
ITS MOTION IN THE ALTERNATIVE FOR A NEW TRIAL**

Table of Contents

Page

I.  MBCI Is Entitled To Judgment As A Matter Of Law Or, Alternatively, To A New Trial
    On Plaintiff's Sex Discrimination Claim Under Title VII...................................................1

    A.  Plaintiff Failed To Show That There Was Any Similarly Situated Male Employee
        Who Was Treated More Favorably Than She Was ...................................................2

        1.  Plaintiff Was Required To Present Evidence Of A Similarly Situated Male
            Employee Even Though Her Excuse For Her Misconduct Was That She
            Had Experienced "Female Problems" .........................................................4

        2.  Plaintiff Was Not Similarly Situated To Thomas Clack Because He Did
            Not Abandon His Job Duties Mid-Shift During Core Production Hours ....6

        3.  Plaintiff Was Not Similarly Situated To DuWayne Nazworth Because He
            Gave Notice To His Team Leader Before He Left His Job Duties ...........10

    B.  There Was No Evidence That MBCI's Decision To Discharge Plaintiff For
        Abandoning Her Job Duties Was A Pretext For Sex Discrimination...................12

        1.  There Was No Evidence That MBCI's Reason For Discharging Plaintiff
            Was False And No Evidence Of Intentional Sex Discrimination..............13

        2.  Plaintiff's Disagreement With MBCI Over The Appropriate Discipline For
            Her Admitted Misconduct Is Not Evidence Of Pretext ...........................15

            a.  Plaintiff Failed To Present Evidence That MBCI Deviated From
                Any Of Its Procedures...................................................................16

            b.  Plaintiff Did Not Even Attempt To Present Any Other Alleged
                Evidence Of Pretext ......................................................................21

            c.  Plaintiff's Case Was Solely An Improper Attempt To Second-
                Guess MBCI's Reasonable Business Judgment ...........................23

II. MBCI Is Entitled To Judgment As A Matter Of Law Or, Alternatively, To A New Trial
    On Plaintiff's Claim For Punitive Damages ....................................................25

    A.  There Was No Evidence Of Malice Or Reckless Indifference .............................26

Table of Contents
(continued)

Page

B.  There Was No Evidence That A Discriminating Employee Was High Up The Corporate Hierarchy Or That Higher Management Approved Of Discriminating Behavior ........................................................................................................... 31

C.  The Evidence Was Uncontested That Any Discrimination Against Plaintiff Was Contrary To MBCI's Good Faith Efforts To Comply With Title VII .................. 35

III.  MBCI Is Entitled Alternatively To A New Trial On Plaintiff's Claim For Punitive Damages Due To The Prejudicial Exclusion Of Admissible Evidence ............................ 39

IV.  Conclusion ......................................................................................................... 41

Table of Authorities

Page

**Cases**

*Abel v. Dubberly*, 210 F.3d 1334 (11th Cir. 2000) ................................................................ 11, 42

*Ash v. Tyson Foods, Inc.*, 129 Fed. Appx. 529 (11th Cir. 2005) .................................................. 30

*Bass v. Bd. of County Commissioners, Orange County, Fla.*, 256 F.3d 1095
    (11th Cir. 2001)........................................................................................................................ 18

*Boykin v. Bank of America, Corp.*, 162 Fed. Appx. 837 (11th Cir. 2005)................................... 13

*Brackett v. Alabama Dept. of Transp.*, 212 Fed. Appx. 779 (11th Cir. 2006)............................ 42

*Brown v. Marriott International, Inc.*, 1:04-cv-3255, 2006 WL 2189695 (N.D. Ga.
    July 31, 2006)............................................................................................................ 12, 21, 23

*Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319 (11th Cir. 2006)................................... 2, 3

*Butler v. Greif Bros. Serv. Corp.*, No. 06-15274, 2007 WL 1244206 (11th Cir. Apr. 30, 2007). 42

*Cannon v. Dyncorp*, 378 F. Supp.2d 1332 (M.D. Ala. 2004)....................................................... 21

*Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189 (11th Cir. 2004) ............................ 14

*Combs v. Plantation Pattern,* 106 F.3d 1519 (11th Cir. 1997).......................................... 4, 24, 42

*Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354 (11th Cir. 1999)......................... 23

*Davis v. Qualico Miscellaneous Inc.*, 161 F.Supp.2d 1314 (M.D. Ala. 2001) ......................... 2, 3

*Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317 (11th Cir. 1999) ................ 25, 26, 31, 32, 33, 43

*Earley v. Champion Int'l Corp.*, 907 F.2d 1077 (11th Cir. 1990) ................................................ 13

*Garcia-Cabrera v. Cohen*, 81 F. Supp.2d 1272, 1281 (M.D. Ala., 2000).................................... 12

*Harley v. The Health Center of Coconut Creek, Inc.*, 487 F. Supp. 2d. 1344
    (S.D. Fla. 2006)................................................................................................................... 18, 19

*Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554 (11th Cir. 1984) ..................................................... 43

*Holston v. The Sports Authority*, 136 F. Supp.2d 1319 (N.D. Ga. 2000) ....................................... 8

*Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286 (11th Cir. 2006)...................... 19

Table of Authorities
(continued)

Page

*Jirak v. Federal Express Corp.*, 805 F. Supp 193 (S.D.N.Y. 1992) ................................................ 5

*Johnson v. The Bd. of Trustees of the Univ. of Alabama*, 191 Fed. Appx. 838 (11th Cir. 2006) . 42

*Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306 (11th Cir. 1998) ........................... 3

*Keel v. U.S. Dep't of Air Force*, 256 F. Supp.2d 1269 (M.D. Ala. 2003) ...................................... 3

*Kolstad v. American Dental Association*, 527 U.S. 526 (1999) ................................ 26, 31, 35, 40

*Laughlin v. Pilot Travel Centers, LLC.*, No. 5:05-cv-342-OC-10GRJ, 2007 WL 121344 (M.D. Fla. Jan. 11, 2007) ..................................................................................................... 32, 34, 38

*Lee v. GTE Florida, Inc.*, 226 F.3d 1249 (11th Cir. 2000) ......................................................... 23

*Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999) .................................................................. 3

*McCalister v. Hillsborough County Sheriff*, 211 Fed. Appx. 883 (11th Cir. Dec. 20, 2006) ........ 9

*McMillan v. Dekalb County, Georgia*, No. 104-cv-3039, 2005 WL 5121850 (N.D. Ga. Dec. 15, 2005) ......................................................................................................................... 19

*Mendoza v. Borden, Inc.,* 195 F.3d 1238 (11th Cir. 1999) ......................................................... 42

*Mitchell v. USBI Company,* 186 F.3d 1352 (11th Cir. 1999) ................................................ 13, 21

*Morrison v. Booth*, 763 F.2d 1366 (11th Cir. 1985) .................................................................. 19

*Nair v. Bank of American Illinois*, 991 F. Supp. 940 (N.D. Ill. 1997) ......................................... 17

*Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181 (11th Cir. 1984) ............................................ 2

*Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337 (11th Cir. 2007) ........................................... 39

*Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995) ............................................................ 20

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) .......................................... 13

*Shaw v. West Point Pepperell, Inc.*, No. 84-26-CV-7, 1985 WL 2208 (E.D.N.C. May 28, 1985) .................................................................................................... 4, 5

*Silvera v. Orange County School Bd.*, 244 F.3d 1253 (11th Cir. 2001) .................................... 2, 42

Table of Authorities
(continued)

Page

*Solomon v. Waffle House, Inc.*, 365 F. Supp. 2d 1312 (N.D. Ga. 2004) ...................................... 40

*Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318 (11th Cir. 1998).................................................. 4

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981)............................................. 12

*Turner v. Bieluch*, No. 03-81059, 2004 WL 2044291(S.D. Fla. Aug. 13, 2004) .................. 13, 21

*U.S.E.E.O.C. v. W&O, Inc.*, 213 F.3d 600 (11th Cir. 2000).................................................... 26, 29

*Wilbur v. Correctional Services Corp.*, 393 F.3d 1192 (11th Cir. 2004) ...................................... 34

*Williams v. Motorola, Inc.*, 303 F.3d 1284 (11th Cir. 2002) ........................................................... 2

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004).................................................... 2

*Wright v. Sanders Lead Co., Inc.,* No. Cir. Ct. 2:05-cv-371-ID, 2006 WL 905336 (M.D. Ala.
  Apr. 7, 2006) ....................................................................................................................... 3, 4, 21

**Statutes**

42 U.S.C. § 1981a.................................................................................................................... 1, 25

42 U.S.C. § 2000e ....................................................................................................................... 1

Pursuant to Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure ("Rules 50(b) and 59"), Defendant, MasterBrand Cabinets, Inc. ("MBCI"), respectfully submits this Brief in Support of its Renewed Motion for Judgment as a Matter of Law and its Motion in the Alternative for a New Trial on Plaintiff Kim Forman's claim of sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and her claim for punitive damages under 42 U.S.C. § 1981a.

## I.    MBCI Is Entitled To Judgment As A Matter Of Law Or, Alternatively, To A New Trial  On Plaintiff's Sex Discrimination Claim Under Title VII

On April 12, 2005, Plaintiff walked off of her job at MBCI's Auburn manufacturing facility at 8:59 a.m. without informing her supervisor or any other member of MBCI management that she was leaving.  She remained missing from work for over 6 ½ hours during the facility's core production hours without communicating with any MBCI manager about her departure.  The next day, Plaintiff's employment was terminated.  Plaintiff does not deny that she engaged in this misconduct.  She also does not dispute that MBCI terminated her employment immediately after she admitted her misconduct to MBCI's Human Resources Manager, Tom Barthel.

There is no evidence that the termination of Plaintiff's employment was motivated by discriminatory animus on the basis of her sex.  There is no evidence that any male employee engaged in nearly identical misconduct.  Consistent with this fact, there is no evidence that any male employee received more favorable treatment than Plaintiff for any similar misconduct.  Finally, there is absolutely no evidence that MBCI's legitimate, nondiscriminatory reason for terminating Plaintiff's employment – her admitted misconduct – was either (1) false or (2) a pretext for intentional sex discrimination.

Because there is no evidence from which a reasonable jury could find that Plaintiff's sex was a substantial or motivating factor in MBCI's decision to terminate her employment, judgment as a matter of law must be entered in MBCI's favor on Plaintiff's sex discrimination claim.

A.    **Plaintiff Failed To Show That There Was Any Similarly Situated Male Employee Who Was Treated More Favorably Than She Was**

Plaintiff's Title VII claim required her to prove that MBCI "acted with discriminatory purpose" in terminating her employment.  *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002).  Because Plaintiff lacked any direct evidence of discrimination, she had to "create an inference of discrimination by establishing a prima facie case."  *Id.*  Initially, to make out a prima facie case, Plaintiff had to show:

> [1] that she is a member of a protected class, [2] that she was qualified for the job from which she was fired, and [3] 'that the misconduct for which she was discharged was <u>nearly identical</u> to that <u>engaged in</u> by [an employee outside the protected class] whom [the employer] retained.'

*Williams*, 303 F.3d at 1293 (citation omitted; emphasis added).[1]

Under Eleventh Circuit law, Plaintiff could be found similarly situated to a retained male employee sufficient to give rise to a reasonable inference of discrimination only if "the quantity and quality of the comparator's misconduct [were] <u>nearly identical</u>" to that of her own.  *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).  *See also Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1184-1185 (11th Cir. 1984); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004); *Silvera v. Orange County School Bd.*,

---

[1]    This Court noted in *Davis v. Qualico Miscellaneous Inc.*, 161 F.Supp.2d 1314, 1319 (M.D. Ala. 2001) that a plaintiff may alternatively satisfy the third prong of a prima facie case of discriminatory discharge by showing that she was "replaced by someone who was not a member of the plaintiff's protected class."  Plaintiff did not offer this theory in support of her allegations.

BDDB01 4885355v2

244 F.3d 1253, 1259 (11th Cir. 2001); *Keel v. U.S. Dep't of Air Force*, 256 F. Supp.2d 1269, 1286 (M.D. Ala. 2003), Aff'd 99 Fed. Appx. 880 (11th Cir. 2004); *Davis v. Qualico Misc. Inc.*, 161 F. Supp.2d 1314 (M.D. Ala. 2001). Therefore, a "similarly situated" employee for purposes of workplace discipline is one who

> engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Wright v. Sanders Lead Co., Inc.,* No. Cir. Ct. 2:05-cv-371-ID, 2006 WL 905336, at *9 (M.D. Ala. Apr. 7, 2006), Aff'd 217 Fed. Appx. 925 (11th Circ. 2007) (internal citations omitted).

Although different treatment of a similarly situated employee may support an inference of discrimination, it is well established that an employer "may believe, without violating Title VII, that there is a qualitative difference between various acts of misconduct." *Wright*, 2006 WL 905336, at *9 (citation omitted). *See also Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 (11th Cir. 1998) , *modified on other grounds*, 151 F.3d 1321 (11th Cir. 1998) ("Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules."). Accordingly, a plaintiff is required to present evidence of a comparator who engaged in misconduct "nearly identical" to her own in order to ensure that courts and juries in discriminatory discharge cases are not merely second-guessing the employer's good faith interpretation and application of its personnel procedures with respect to employees whom the employer may have reasonably regarded as having engaged in different degrees of misconduct. *See Burke-Fowler*, 447 F.3d at 1323 ("When making that determination, '[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'"); *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th

3

Cir. 1999) (same).  Where a plaintiff and her alleged comparator have not engaged in "nearly identical" misconduct, "an employer's decision to impose different punishment on each does not raise an inference of illegal discrimination."  *Wright*, 2006 WL 905336, at *9.

Here, there is no evidence that any male employee engaged in misconduct nearly identical to that of Plaintiff and thus no evidence of a prima facie case of discrimination.[2]

### 1.    Plaintiff Was Required To Present Evidence Of A Similarly Situated Male Employee Even Though Her Excuse For Her Misconduct Was That She Had Experienced "Female Problems"

Plaintiff has not identified any authority suggesting that she was relieved of her burden of presenting evidence of a male employee who had engaged in nearly identical misconduct simply because Plaintiff claimed that her misconduct in leaving her job related to her experiencing a "female problem."[3]  Indeed, authority that is directly on point contradicts such a proposition.  In *Shaw v. West Point Pepperell, Inc.*, No. 84-26-CV-7, 1985 WL 2208 (E.D.N.C. May 28, 1985), the court rejected a sex discrimination claim under circumstances essentially the

---

[2]    Although the Eleventh Circuit has stated that judgment as a matter of law under Rule 50(b) should not be granted solely on the ground that a plaintiff failed to establish a prima facie case, the Court has explained that it will "consider the evidence submitted by [a plaintiff] in connection with his prima facie case in evaluating whether a reasonable jury could disbelieve [the defendant's] proffered nondiscriminatory reasons for its actions."  *Combs v. Plantation Pattern*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997).  In this case, Plaintiff's inability even to meet the basic requirements for showing a prima facie case, together with her failure to present any evidence that MBCI's legitimate, non-discriminatory reason for her termination was a pretext for discrimination, require judgment as a matter of law in MBCI's favor.

[3]    As noted above, Plaintiff did not present any direct evidence of sex discrimination in this case.  Direct evidence is "evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). For instance, there is no evidence that any member of management stated that Plaintiff's employment was being terminated because her absence related to "female problems" or because she was female.  To the contrary,  the testimony at trial from all of the decisionmakers involved in Plaintiff's discharge indicated that her employment had been terminated because she failed to provide any notice of her leaving work either before or after her departure from the Auburn facility and was gone for an extended period of time.  These are, on their face, gender-neutral, non-discriminatory reasons.

BDDB01 4885355v2

same as those alleged here by Plaintiff because there was no evidence of a male comparator who was treated more favorably. The plaintiff in that case left her position working on an assembly line after she began her menstrual cycle. She alleged that she had soiled her clothing and gone home to change her clothes. Because she had left without informing her supervisor, she was thereafter terminated for having abandoned her job without notice. The court granted judgment in favor of the defendant on plaintiff's sex discrimination claim, in part, because she "failed to present any evidence that any other employee, male or female, had ever departed under similar circumstances without being similarly discharged." *Id.* at *3.

Here, too, regardless of Plaintiff's proffered excuse for her misconduct, she was required to present evidence of a similarly situated male employee who had not been discharged – that is, an employee who walked off his job without giving notice to any member of management and remained missing from the facility for the majority of his shift during core production hours. *Cf. Jirak v. Federal Express Corp.*, 805 F. Supp 193, 195 (S.D.N.Y. 1992) (fact that plaintiff gave as an excuse for her absence from work that she was suffering from menstrual cramps did not relieve her of burden of showing that a similarly situated male employee with a high number of absences had been treated differently than she was under employer's absence policy). Plaintiff failed to present any such evidence.

Moreover, whether or not MBCI should have excused Plaintiff's leaving her job during core production hours without first giving notice to MBCI management because she might have been embarrassed if her clothing were soiled is merely a question of business judgment that is irrelevant to Plaintiff's Title VII claim. *See, e.g.*, *Shaw*, 1985 WL 2208 at *3 ("Title VII does not protect against harsh or even unfair actions by employers. It only provides a

remedy when those actions are based on impermissible discriminatory grounds, such as race or sex.").

Indeed, MBCI's managers testified at trial that they *would* have excused Plaintiff's failure to give prior, face-to-face notice due to the nature of Plaintiff's situation if they had received notice from her by telephone after her departure. Yet, as Plaintiff does not dispute, she not only failed to give notice prior to her departure, she also failed to speak with any member of MBCI management during the entire 6 ½ hours of her unnoticed absence from her shift. After Plaintiff's return to work, she met with MBCI managers on at least three occasion, first with Smith and Krogh on the afternoon of her reappearance; then with Barthel on April 13; and finally, with Zellars on the day after her termination. The undisputed evidence presented at trial showed that during each of these meetings, MBCI managers questioned Plaintiff regarding whether she had provided any notice of her departure from work, either before or during her absence, in an effort to find a reason *not* to discharge her. Given Plaintiff's admitted failure to speak with any MBCI manager during her disappearance from work, they could not find any such reason.

## 2. **Plaintiff Was Not Similarly Situated To Thomas Clack Because He Did Not Abandon His Job Duties Mid-Shift During Core Production Hours**

Plaintiff contends that MBCI treated Thomas "Mike" Clack more favorably than it treated her. However, that MBCI issued different discipline to Plaintiff and Clack fails to support any reasonable inference of discrimination because Clack and Plaintiff did not engage in nearly identical misconduct.

The evidence at trial showed that Clack was employed by MBCI as a Support Tech, which is the equivalent of a lead person. As part of his duties, Clark oversaw the DMR

crew, which is a skeletal crew that stays late after a shift has been completed and the production lines have been shut down. The DMR crew is responsible for cleaning up after the other production employees have left for the day. At some point, Norm Krogh, Senior Manufacturing Manager, instructed Clack that he should inform his Team Leader, Buddy Smith, before he left at the end of each day.

On May 16, 2005, Clack worked 11.40 hours. After completing his DMR work, Clack left at the end of his shift without informing his Team Leader. At the time he left the facility, the day's shift had been completed, the production lines had been shut down, and Clack had finished his job. However, because Clack had failed to inform his Team Leader that he was leaving as Krogh had instructed him to do, Krogh demoted Clack from the Support Tech position. This demotion resulted in a decrease in pay as well as the loss of opportunity to move into a management position with the Company.[4]

Unlike Clack, Plaintiff was not a Lead Person and was not working on the DMR crew at the time she walked off the job. Rather, Plaintiff was an Expeditor who was responsible for identifying, locating, and obtaining parts for cabinets as they were being assembled during the facility's core production hours. Unlike Clack, Plaintiff's misconduct did not consist of merely neglecting to tell a Team Leader that she was leaving at the end of the day after her work had been completed and after the production lines had been shut down. Rather, Plaintiff walked off of her job shortly after her shift began without giving notice to any member of MBCI management and left her duties unaccounted for during an extended period of time while the production lines were running and cabinets were being assembled. Indeed, the evidence at trial

---

[4]    At the time he was demoted, Clack also received a written warning for damaging a cabinet as he transported it within the facility.

showed that, due to Plaintiff's misconduct in abandoning her work, Plaintiff's duties remained unperformed for at least two hours during the facility's core production hours, from about 9 a.m. when she left until sometime after 11 a.m. when her supervisors discovered on their own that she was missing.

Case law demonstrates that an employee's walking off the job mid-shift without notice in a production facility – as Plaintiff admittedly did in this case – is a distinct type of misconduct for purposes of establishing a prima facie case of discrimination and is not "nearly identical" to other types of employee attendance issues.

For example, the plaintiff in *Holston v. The Sports Authority*, 136 F. Supp.2d 1319, 1325 (N.D. Ga. 2000) Aff'd 251 F.3d 164 (11th Cir. 2001) , was – like Plaintiff here – discharged for walking off her job on a single occasion without giving notice.  In support of her allegation of race discrimination, the plaintiff offered evidence that a white employee had failed to appear for work three days in a row before she was discharged.  The plaintiff contended the white employee had received more favorable treatment than she had, arguing that she had been terminated for a single instance of leaving her job without notice while the alleged comparator had not been terminated until the third day in a row she failed to appear for work.

The *Holston* Court granted the defendant's motion for summary judgment on the ground that the plaintiff and her alleged comparator were not similarly situated.  The Court held that the plaintiff's misconduct – leaving her job on a production line in the middle of production hours while the shift was running – was not nearly identical to the conduct of the employee who failed to appear for her shift altogether.   The Court explained that an employee's abandoning her job mid-shift without notice may reasonably be viewed by an employer "as a much more serious threat to the orderly work of the plant" than an employee's failing to show up to work at the

beginning of the work day. *Id.* at 1328. According to the Court, when an employee abandons her job in the middle of her shift without notifying a supervisor, "it could result in a work flow stoppage and backlog that could decrease productivity," while an employee's failure to appear for work is less disruptive because the employer can make adjustments in the work flow at the beginning of the day. *Id. See also McCalister v. Hillsborough County Sheriff*, 211 Fed. Appx. 883 (11th Cir. Dec. 20, 2006) (holding that misconduct that included "departing one's post mid-shift" was not materially identical to alleged comparator's failure to report for duty at all).

Here, MBCI's witnesses testified that an employee's failure to provide notice of his or her departure from work impeded management's ability to plan and complete production to ensure that all of the work needed to be done on a shift would in fact be completed. They further testified that this inability to plan could jeopardize MBCI's commitment to its customers to ship its cabinets complete and to ship them on time. (*See* Exh. A, at 12.) Indeed, consistent with this concern, the undisputed evidence showed that after Plaintiff walked off of her job without informing any member of management, her job duties went entirely unperformed for at least two hours during the facility's core production hours. After her disappearance was discovered, other employees had to be re-assigned, halfway through the day, to cover Plaintiff's abandoned job duties as well as their own. The undisputed testimony at trial was consistent with the evidence presented in *Holston*, namely that an unannounced departure in the middle of core production hours was a distinct type of misconduct that warranted serious disciplinary action.

The evidence at trial established that Clack's misconduct consisted of his leaving MBCI's facility at the end of his workday - after the day's production work in the facility had been completed, after the line employees had left, and after he had been finished his work – without telling his Team Leader contrary to Krogh's instructions. As the Court explained in

9

*Holston*, misconduct such as Plaintiff's, which can result in "work flow stoppage and backlog that could decrease productivity," may reasonably be viewed by an employer as a more serious threat to the orderly work of the facility than other types of misconduct, such as Clack's, which did not involve any abandonment of his job duties during core production hours.

In short, the evidence showed that Plaintiff abandoned her job duties without notice mid-shift during core production hours and that Clack did not. Because the quantity and quality of Plaintiff's and Clack's misconduct was not "nearly identical," Plaintiff and Clack were not similarly situated. Accordingly, since the distinction in discipline was justified by business circumstances and necessity, no reasonable inference of intentional discrimination could arise from MBCI's disciplining Plaintiff and Clack differently.

### 3.     Plaintiff Was Not Similarly Situated To DuWayne Nazworth Because He Gave Notice To His Team Leader Before He Left His Job Duties

Plaintiff also contends that MBCI treated DuWayne Nazworth more favorably than it treated her. However, the difference in MBCI's treatment of Plaintiff and Nazworth fails to support any reasonable inference of discrimination because Nazworth and Plaintiff did not engage in nearly identical misconduct. Indeed, the evidence showed that Nazworth did not engage in any misconduct at all.

The evidence at trial established that, on September 24, 2004, Nazworth discovered that he had blood in his ear while he was working. After examining this issue in the bathroom, he told his Team Leader, Sandy Smith, that he had to leave work for personal reasons. When his Team Leader asked him why he was leaving, Nazworth responded that it was none of

his business.  Nazworth then left the facility and received treatment from a doctor for his medical condition.  Nazworth returned to work the next day, and MBCI did not issue him any discipline.[5]

There is no evidence to dispute the fact that Nazworth informed his Team Leader on September 24, 2005 that he was leaving work.  Furthermore, that Nazworth would <u>deny</u> engaging in any such misconduct while Plaintiff repeatedly <u>admitted</u> it to MBCI's managers is also a sufficient ground to find that Nazworth and Plaintiff were not similarly situated.  *See, e.g., Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000) (holding that plaintiff was not similarly situated to her alleged comparator because plaintiff "always freely admitted" to having engaged in misconduct and comparator had not).

In addition, the evidence at trial that Nazworth's Team Leader was angry with him for leaving work and that he attempted to have Nazworth reprimanded even though he had not engaged in misconduct, did not somehow make Nazworth similarly situated to Plaintiff.  Nazworth testified that when he returned to work the day after his departure, his Team Leader initially told him his employment was going to be terminated.  Then, after the human resources department determined Nazworth had informed his Team Leader before he had left work and that he would thus not be disciplined, Nazworth's Team Leader still initially declined to assign any work to him.  Nazworth's Team Leader also signed an Hourly Status Form stating that Nazworth was going to be transferred to a lower paying position.  However, this Form was never approved and Nazworth immediately returned to his former position without any reduction in his pay.

---

[5]    The evidence at trial also showed that Nazworth provided MBCI with a doctor's note stating he had received treatment on September 24 and was excused from work due to his medical condition.  To protect the confidentiality of his medical information, MBCI retains Nazworth's doctor's note in a medical file separate from his personnel file and will not disclose Nazworth's medical records without

In short, the undisputed evidence at trial showed that Nazworth informed his Team Leader that he was leaving prior to his departure from work and that Plaintiff did not.  Because Plaintiff and Nazworth did not engage in "nearly identical" misconduct, they were not similarly situated.  Again, no reasonable inference of intentional discrimination could arise from MBCI's treating Plaintiff and Nazworth differently with respect to the discipline it issued.

By failing to come forward with evidence of any male employee who had engaged in misconduct nearly identical to her own – let alone any such male employee who had been treated differently by MBCI than she had for such misconduct – Plaintiff failed to establish even a prima facie case of sex discrimination.

### B.    There Was No Evidence That MBCI's Decision To Discharge Plaintiff For Abandoning Her Job Duties Was A Pretext For Sex Discrimination

MBCI offered a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment – her admitted misconduct consisting of her abandoning her job duties without notice for an extended period of time during core production hours.  Plaintiff was thus required to prove that MBCI's "proffered nondiscriminatory reason was merely a pretext for discriminatory intent."  *Brown v. Marriott International, Inc.*, No. 1:04-CV-3255-WSD, 2006 WL 2189695, *1 (N.D. Ga. July 31, 2006).   Plaintiff's burden of showing pretext "merge[d] with the ultimate burden of persuading the court that [she] has been the victim of intentional discrimination."  *Garcia-Cabrera v. Cohen*, 81 F. Supp.2d 1272, 1281 (M.D. Ala., 2000), Aff'd 237 F.3d 636 (11th Cir. 2000) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  As the *Garcia-Cabrera* Court explained:

---

his consent.  Nazworth's doctor's note was shown to Nazworth at trial, and he verified its accuracy and authenticity.

> A plaintiff may show that an employer's proffered legitimate reason for [her] discharge is a pretext for unlawful discrimination by adducing enough evidence to permit the jury to reasonably disbelieve the proffer- that is, by attacking the proffer directly, or by pointing to other evidence, including evidence previously used to establish his prima facie case, that shows that the real reason for the employer's action was discrimination.

*Id. See, e.g. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated").   A plaintiff "must … present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext" and "[m]ere conclusory allegations and assertions will not suffice." *Boykin v. Bank of America, Corp.*, 162 Fed. Appx. 837 (11th Cir. 2005) <u>Cert.</u> <u>Denied</u> 126 S.Ct. 2931 (2006) (quoting *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).

### 1.    There Was No Evidence That MBCI's Reason For Discharging Plaintiff Was False And No Evidence Of Intentional Sex Discrimination

"[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false *and* that discrimination was the real reason.'" *Turner v. Bieluch*, No. 03-81059, 2004 WL 2044291, at \*5 (S.D. Fla. Aug. 13, 2004) (emphasis in original) (quoting *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999)).  Plaintiff's evidence failed on both counts.

There was no evidence that MBCI's asserted reason for Plaintiff's termination was false.  To the contrary, the evidence at trial established that Plaintiff had <u>admitted</u> to multiple MBCI managers – Buddy Smith, Norm Krogh, Tom Barthel, and Anthony Zellars – that she had engaged in the misconduct that MBCI offered as the reason for her termination.  The evidence also showed that Plaintiff's employment was terminated immediately after she confirmed she

13

had engaged in this misconduct to Barthel, the Auburn facility's Human Resources Manager.[6] In addition, MBCI's stated reason for Plaintiff's discharge remained consistent over time. *Cf Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1195 (11th Cir. 2004) ("[T]he shifting reasons given by [Defendant] allowed the jury to find [its] explanation unworthy of credence, and consequently to infer the real reason was [discrimination].").  The explanation that MBCI offered at trial for Plaintiff's termination  – that she had left her job duties without informing any member of management and been gone for an excessive time – was the very same explanation that MBCI had provided nearly two-and-a-half years earlier to Plaintiff on the day of her discharge.  (*See* Exh. B.)

Additionally, there was absolutely no evidence of intentional sex discrimination. As noted above, Plaintiff failed to present evidence of any male employee who had received more favorable treatment than she had for nearly identical misconduct.  There was no allegation or evidence that Plaintiff had been replaced by a male employee.  Nor was there any evidence of hostility or animus towards women generally within the facility or specifically with respect to any of the decision-makers involved in Plaintiff's discharge.  There was no evidence of negative or derogatory comments regarding women by any of the decision-makers.  Indeed, the evidence at trial showed that approximately fifty percent of the employees in the Auburn facility are female, including managers and supervisors.

---

[6]   The evidence at trial showed that the managers who initially discovered Plaintiff's misconduct – Buddy Smith and Norm Krogh – did not have authority on their own to terminate Plaintiff's employment.  They suspended Plaintiff and instructed her to report to Human Resources to meet with Barthel.

2.    **Plaintiff's Disagreement With MBCI Over The Appropriate Discipline For Her Admitted Misconduct Is Not Evidence Of Pretext**

Faced with absolutely no evidence of pretext or discriminatory animus, Plaintiff founded her entire case at trial on the theory that she should have received only a written warning for her misconduct based on an example provided in MBCI's employee handbook. Plaintiff asserted that MBCI "deviated" from its internal procedures by terminating her employment rather than giving her a warning in accordance with this handbook example.  She further contended that this deviation was evidence of pretext and discriminatory intent. Indeed, Plaintiff's "deviation" argument was the <u>only</u> ground that Plaintiff presented to the jury as a basis for finding pretext and discrimination, and it was not supported by any evidence.[7]

Plaintiff's argument fails as a matter of law for several reasons.  First, Plaintiff failed to present any evidence that MBCI deviated from its procedures as she claimed.  Second, the Eleventh Circuit has made clear that even where a deviation from procedures has occurred, this, standing alone, is not sufficient to show pretext to survive judgment as a matter of law. Finally, because she lacked any evidence of a procedural deviation or of discriminatory animus, Plaintiff's challenging MBCI's interpretation and application of its personnel policies was nothing more than a second-guessing of the Company's business judgment, which is clearly not evidence that could support her sex discrimination claim.

---

[7]    *See, e.g.*, Plaintiff's Trial Brief at 8-9; Plaintiff's Courts Instructions To The Jury, filed August 22, 2007, at unnumbered page 17; Plaintiff's Requested Jury Instructions, filed September 7, 2007. (Relevant excerpts attached hereto as Exh. G).

15

      **a.**       **Plaintiff Failed To Present Evidence That MBCI Deviated From Any Of Its Procedures**

Plaintiff's argument that MBCI deviated in her case from its internal procedures was not supported by any evidence. As noted above, Plaintiff based this contention on the "Conduct Policy" included within MBCI's employee handbook. This policy provides that MBCI may issue a variety of forms of discipline to employees for misconduct, ranging from a verbal coaching up to immediate termination. (Exh. A at 20-21.) The policy also provides examples of "unsatisfactory behavior," including some instances of behavior that "would normally result in either coaching or written notice" and others that "may result in immediate termination." (Exh. A at 21 & 22-23.) At the same time, the policy repeatedly states that "[t]he appropriate corrective action will be based on the severity and/or frequency of the unsatisfactory behavior . . . ." (Exh. A, at 21.) It further provides that "all individuals are employees at will and should be aware that they may be terminated for any of the above listed offenses [including the examples of misconduct that 'would normally result in either coaching or written notice'] if the company, in its sole discretion, determines that the circumstances so warrant." (Exh. A at 22.)

One set of examples in the handbook of behavior that "would normally result in either coaching or written notice" is "idleness on the job, inattention to job duties, wasting time, or leaving the job without the team leader's approval." (Exh. A at 21.) Plaintiff argued at trial that, in light of this example, MBCI deviated from its internal procedures by terminating her employment rather than merely issuing her a "coaching or written notice" for her admitted misconduct of abandoning her job duties without notice and remaining absent from work for over 6 ½ hours during core production hours.

Plaintiff offered absolutely no evidence to support her assertion that MBCI's internal procedures were what she contended they were. In particular, Plaintiff's bald assertion

concerning the degree of discipline that MBCI's internal procedures allegedly required to be issued to her was not supported by either (1) the plain text of MBCI's employee handbook or (2) any evidence showing how MBCI had applied its disciplinary procedures in practice. *See, e.g., Nair v. Bank of American Illinois*, 991 F. Supp. 940, 964-65 (N.D. Ill. 1997) (finding employee failed to demonstrate that the defendant deviated from its attendance policy based either on the "literal language" of the policy or on evidence of how the policy had been applied to similarly situated employees).

   First, as noted above, the plain text of MBCI's Conduct Policy expressly and repeatedly states that MBCI retains discretion to issue discipline more severe than the examples set out in the handbook – including that invoked here by Plaintiff – based on the circumstances of the misconduct. *See, e.g.*, Exh. A at 21 ("It is important to note that these three examples are not the only forms of corrective action which may be taken by MBCI and are not necessarily progressive in nature.  MBCI may determine, at its discretion, that certain offenses warrant a certain form of corrective action, including termination without prior notice"); *id.* ("The appropriate corrective action will be based on the severity and/or frequency of the unsatisfactory behavior or performance that would normally result in either coaching or written notice."); *id.* at 22 ("As noted previously, all individuals are employees at will and should be aware that they may be terminated for any of the above listed offenses if the company, in its sole discretion, determines that the circumstances so warrant."); *id.* ("Again, the above listing is not all-inclusive of behavior that is detrimental to our success, but it does serve as a guideline for actions that undermine a harmonious and productive work force.  Neither this document, nor any other Company document, constitutes a contract or agreement of any kind.").  *See also id.* at 6 ("[W]e will continue to practice flexibility and discretion in our decision making process.  Because of

the great variety of situations that can develop, as well as fluctuating personnel needs, we may sometimes make decisions in a manner other than as provided for or stated in this handbook."); *id.* at 8 ("MBCI follows a general policy of 'EMPLOYMENT AT WILL.' This means that your employment is by mutual agreement and may be terminated by either you or MBCI with or without cause or notice at any time.").

The plain text of MBCI's handbook thus expressly states that MBCI may terminate an employee immediately for any misconduct based on the circumstances. This is exactly what MBCI did in this case based on Plaintiff's admittedly abandoning her job duties without notice for the better part of a workday during core production hours. Plaintiff therefore presented no evidence that MBCI had deviated from the plain text of any internal procedures. *Cf. Bass v. Bd. of County Commissioners, Orange County, Fla.*, 256 F.3d 1095, 1108 (11th Cir. 2001) (deviation found where employer's hiring policy explicitly stated "NOTE: Do not total scores" of applicants during hiring interviews and the undisputed evidence showed that the defendant had nevertheless "total[ed] the scores" of the interviewees).

Additionally, Plaintiff presented absolutely no evidence that MBCI, in practice, had applied its Conduct Policy in a way that it deviated from in her case. Consider, in contrast, *Harley v. The Health Center of Coconut Creek, Inc.*, 487 F. Supp. 2d 1344 (S.D. Fla. 2006), where the employer's progressive discipline policy gave it discretion to determine whether to suspend an employee suspected of abusing residents to allow time for an investigation or to discharge the employee immediately based on the circumstances. The plaintiff in that case alleged that her immediate termination was a deviation from the defendant's procedures despite the discretion written into the defendant's policy. In support of this contention, the plaintiff (1) offered testimony from her own former supervisor, who stated that "in her experience"

18

employees were first suspended before being terminated, *id*. at 1354, and (2) presented evidence of two other employees outside her protected class who had been "accused of similar misconduct" and who had been, unlike the plaintiff, suspended for it rather than immediately terminated, *id*. at 1349.

Unlike the plaintiff in *Harley*, Plaintiff here presented no evidence whatsoever regarding how MBCI interpreted and applied its handbook examples of misconduct in practice. No MBCI manager testified that he or she agreed with Plaintiff's arguments concerning what she believed the handbook examples required under various circumstances. Certainly, no MBCI witnesses conceded that there had been any deviation from MBCI's procedures. *Cf. Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286 (11th Cir. 2006) (evidence of deviation shown where plaintiff's supervisor testified that defendant "usually prepare[d] separation notices within a day or two of termination" and evidence also showed plaintiff's notice was not prepared until 12 days after her termination); *Morrison v. Booth*, 763 F.2d 1366, 1373 (11th Cir. 1985) (deviation shown where defendant conceded that it had "violated state procedures"); *McMillan v. Dekalb County, Georgia*, No. 104-cv-3039, 2005 WL 5121850, at *7 (N.D. Ga. Dec. 15, 2005) (deviation shown based on defendant's manager's testimony that procedure used to terminate plaintiff's employment was "very unusual"), *aff'd* 211 Fed. Appx. 821 (11th Cir. 2006). To the contrary, every MBCI witness testified that he agreed that it was appropriate under the circumstances to terminate Plaintiff's employment immediately based on her admitted misconduct.

Moreover, Plaintiff failed to present any evidence concerning how MBCI had applied the handbook examples in practice to other employees. Indeed, remarkably, the only evidence Plaintiff presented at trial regarding the discipline of other employees *refuted* her claim

that MBCI deviated from any alleged internal procedures only in her case.  As noted above, Plaintiff contended that MBCI's alleged internal procedures required that she receive only a written warning, rather than immediate termination, based on the handbook example referring to "leaving the job without the team leader's approval."  At trial, Plaintiff compared herself to two male employees, Clack and Nazworth, whom she contended had engaged in the same misconduct that she had.  Accepting only for the sake of the present argument that Clack and Nazworth were similarly situated to Plaintiff, as Plaintiff alleged, it was undisputed that Clack and Nazworth also did not receive discipline in accordance with the handbook example cited by Plaintiff.  Nazworth was not issued a written warning or any discipline at all.  Clack, on the other hand, received not only a written warning but also a demotion.  Thus, Nazworth received discipline that was less severe than that set out in the handbook example and Clack (like Plaintiff) received discipline that was more severe than that set out in the handbook example.  According to Plaintiff's own argument, MBCI would have thus "deviated" from its alleged internal procedures, not only when it disciplined her, but also when it disciplined both Nazworth and Clack.  Because Nazworth and Clack are male, this alleged "deviation" from internal procedures – even if there had been evidence to support such a claim – could not reasonably be construed as evidence of sex discrimination.[8]  *Cf. Randle v. City of Aurora*, 69 F.3d 441, 454 n.20 (10th Cir. 1995) (rejecting argument that alleged deviation from procedure could be evidence of pretext where "the alleged procedural irregularity disadvantaged all potential applicants" and thus did not suggest discriminatory animus).

---

[8]    Any contention by Plaintiff that it was the degree of deviation from the handbook example that was evidence of discrimination, rather than the fact of the deviation itself, merely turns attention back to the issue of whether Plaintiff's misconduct was nearly identical to that of Clack and Nazworth.  Because, as shown above, their conduct was not nearly identical, MBCI's decision to impose different

b.    **Plaintiff Did Not Even Attempt To Present Any Other Alleged Evidence Of Pretext**

Even if Plaintiff had presented evidence of a possible deviation from MBCI's internal procedures, her claim would still fail as a matter of law because she failed to present any other evidence of pretext or discriminatory animus. The Eleventh Circuit has made clear that "[s]tanding alone, deviation from a company policy does not demonstrate discriminatory animus." *Mitchell v. USBI Company,* 186 F.3d 1352, 1355 (11th Cir. 1999). *See also Brown v. Marriott International, Inc.*, 1:04-cv-3255, 2006 WL 2189695, at *15 (N.D. Ga. July 31, 2006) ("Absent other evidence, 'deviation from a company policy [alone] does not demonstrate discriminatory animus.'" (alteration in original)); *Cannon v. Dyncorp*, 378 F. Supp.2d 1332, 1344 (M.D. Ala. 2004) ("even if Cannon could demonstrate that Dyncorp deviated from its alleged general policy, unless she provides evidence that the deviation was the result of racial animus, she still fails to state a *prima facie* case of discrimination"); *Turner v. Bieluch*, No. 03-81059, 2004 WL 2044291, at *5 (S.D. Fla. Aug. 13, 2004) (same).

Here, Plaintiff did not even attempt to present any evidence that she contended demonstrated pretext or sex discrimination other than her argument that MBCI had allegedly deviated from its internal procedures. Accordingly, even if there were evidence of a deviation, this evidence, standing alone, would not have been sufficient to show pretext or discriminatory animus.

Plaintiff did not claim that any inference of discrimination could be drawn from the timing of her termination. However, because the Court raised this question during oral argument on MBCI's Rule 50(a) motion, MBCI addresses the issue. MBCI respectfully notes

---

degrees of discipline on each of them does not raise a reasonable inference of discrimination. *See, e.g.*, *Wright*, 2006 WL 905336, at *8

that the evidence at trial concerning timing, when viewed in its entirety, could not reasonably support a finding of pretext. The evidence showed that after Plaintiff returned to work on April 12, she was placed on suspension by Krogh and told to go to Human Resources the following morning. In speaking with Barthel, the Human Resources Manager, the next morning, Plaintiff admitted that she had engaged in the misconduct with which she was charged, leaving her job duties in the midst of her shift without informing any member of MBCI management and remaining missing for over six hours. She also claimed that her unannounced departure from work had related to her experiencing "female problems." After this conversation, Barthel terminated Plaintiff's employment.

This sequence of events cannot be evidence of discrimination on the basis of sex for several reasons. First, the undisputed evidence at trial showed that Plaintiff was initially suspended by Krogh, in part, to allow time for MBCI to gather additional facts relating to Plaintiff's misconduct. The evidence showed that Barthel did this, including meeting with Plaintiff on the morning of April 13 to hear her explanation of what had happened. Significantly, there is no evidence that Krogh would have had the authority to terminate Plaintiff's employment on his own without the Human Resources Manager being involved. Therefore, the fact that Plaintiff's initial suspension by Krogh later became a termination by Barthel cannot alone be suggestive of pretext.

In addition, the evidence showed that Plaintiff's termination followed shortly after her admission of misconduct to Barthel. There is no evidence from which a reasonable fact finder could find that Plaintiff's termination was causally connected to her claiming that she had experienced "female problems" as opposed to her admitting her misconduct. Indeed, Plaintiff did not propose any theory for why an MBCI manager might be motivated to terminate an

22

employee for experiencing female problems rather than for engaging in admitted and blatant misconduct, as Plaintiff had.  Any such finding by the jury would be pure speculation.

Consequently, Plaintiff failed to present any evidence that MBCI's proffered reason for terminating her employment was either false or a pretext of sex discrimination.

### c.    Plaintiff's Case Was Solely An Improper Attempt To Second-Guess MBCI's Reasonable Business Judgment

Finally, given the absence of any evidence to support a prima facie case of discrimination or any evidence of pretext, it is apparent that Plaintiff's Title VII case was founded on nothing more than Plaintiff's disagreement with how MBCI interpreted and applied its Conduct Policy in her case.  Plaintiff's attempt to prove her sex discrimination claim solely by engaging in a debate with MBCI's management witnesses over which handbook provision they believed most appropriately applied to Plaintiff's misconduct was clearly contrary to repeated judicial admonishments that courts and juries in Title VII cases "do not sit as a super-personnel department that reexamine[] an entity's business decisions."  *Brown v. Marriott International, Inc.*, 2006 WL 2189695, at *12 (N.D. Ga. 2006) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999); internal quotation marks omitted).  The Eleventh Circuit has repeatedly made clear that a plaintiff "must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249 (11th Cir. 2000) (reversing district court's denial of defendant's Rule 50(b) motion because plaintiff failed to present legally sufficient evidence of pretext).  *See also Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (emphasizing that courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

23

Plaintiff's tactics in this case were much like those presented in *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997). There, the plaintiff attempted to show that the defendant's reason for hiring another employee instead of him was a pretext for discrimination. The employer's proffered legitimate, nondiscriminatory reason for this employment decision was that the other employee had supervisory experience, while the plaintiff did not. The plaintiff tried to show that this reason was pretextual by arguing that the other employee had been forced to resign from his prior, supervisory position for misuse of his former employer's funds. The Eleventh Circuit – reversing the district court's denial of the employer's renewed motion for judgment as a matter of law on this claim – explained that the plaintiff's argument failed to demonstrate any pretext. The Court stated:

> In relying on Walker's financial improprieties to undermine Meadowcraft's explanation that it based its promotion decision on Walker's superior supervisory experience, Combs confuses disagreement about the wisdom of an employer's reason with disbelief about the existence of that reason and its application in the circumstances. Reasonable people may disagree about whether persons involved in past financial improprieties should be made supervisors, but such potential disagreement does not, without more, create a basis to disbelieve an employer's explanation that it in fact based its decision on prior non-financial supervisory experience. Meadowcraft's decision to promote Walker instead of Combs may seem to some to be bad business judgment, and to others to be good business judgment, but federal courts do not sit to second-guess the business judgment of employers. Stated somewhat differently, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer.

*Id.* at 1543.

Here, Plaintiff certainly failed to show that an employee's abandoning her job duties without notice for most of a workday is not a valid reason "that might motivate a reasonable employer" to terminate that employee's employment. In the end, Plaintiff offered

24

nothing in support of her discrimination claim other than her challenge to the wisdom and fairness of MBCI's decision to terminate her employment rather than issue her some lesser form of discipline. The law is abundantly clear that Plaintiff's attack on MBCI's decision, standing alone, is insufficient to show that MBCI's proffered reason for discharging her was a pretext for discrimination.

Accordingly, even if Plaintiff had made out a prima facie case of discrimination, because she failed to present any evidence of pretext to rebut MBCI legitimate, non-discriminatory reasons for the termination of her employment, MBCI's renewed motion for judgment as a matter of law on Plaintiff's sex discrimination claim must be granted. Furthermore, as additional, alternative relief, MBCI should be granted a new trial on Plaintiff's sex discrimination claim because the jury's verdict was against the great weight of the evidence.

## II.    MBCI Is Entitled To Judgment As A Matter Of Law Or, Alternatively, To A New Trial On Plaintiff's Claim For Punitive Damages

Even if the evidence presented at trial had warranted submitting Plaintiff's sex discrimination claim to the jury, there was absolutely no evidence to support her claim for punitive damage, and judgment as a matter of law on this claim should be entered in MBCI's favor.

In order to obtain punitive damages, Plaintiff had to prove that MBCI "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to [her] federally protected rights . . .." 42 U.S.C. § 1981a(b)(1). To survive a motion for judgment as a matter of law on her claim for punitive damages, Plaintiff was required to present evidence that a "discriminating employee was high[] up the corporate hierarchy" or that "higher management countenanced or approved [his] behavior." *Dudley v. Wal-Mart Stores, Inc.*, 166

F.3d 1317, 1323 (11th Cir. 1999).   At the same time, MBCI could not be held liable for punitive damages where "discriminatory employment decisions of managerial agents . . . [were] contrary to [MBCI's] good-faith efforts to comply with Title VII."  *Kolstad v. American Dental Association*, 527 U.S. 526, 545 (1999) (citation omitted; emphasis added).

During the trial of this matter there was (1) no evidence of malice or reckless indifference, and (2) no evidence that a higher management employee discriminated against Plaintiff or countenanced such discrimination.  The undisputed evidence demonstrated that any discrimination on the basis of Plaintiff's sex would have been contrary to MBCI's good faith efforts to comply with Title VII.  Consequently, the jury's award of $55,498.52 in punitive damages must be vacated as a matter of law.

A.    <u>There Was No Evidence Of Malice Or Reckless Indifference</u>

The trial was barren of any hint of evidence that any MBCI employee acted with malice or reckless indifference to Plaintiff's federally protected rights.  "'[M]alice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination."  *Id*. at 535. "Malice means 'an intent to harm'  and recklessness means 'serious disregard for the consequences of [one's] actions.'" *U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000) (citation omitted).   Examples of conduct that might support an award of punitive damages include "(1) a pattern of discrimination, (2) spite or malevolence, or (3) a blatant disregard for civil obligations."  *Dudley*, 166 F.3d at 1322-23.

Plaintiff certainly presented no evidence of a "pattern of discrimination."  In this regard, the following should be considered:

- There is no evidence that Plaintiff, in the five years she was employed by MBCI, had ever complained of any other alleged incident of discrimination on any basis.

- There was not any allegation, let alone evidence, that MBCI had discriminated against other female employees on any occasion.

- Plaintiff testified that she wanted to remain employed at MBCI due to the promotional opportunities. Specifically, she referenced in her testimony supervisors such as Buddy Smith and Arnita Crawford as examples of black and female employees who had advanced within the organization.

Indeed, far from any pattern of sex discrimination, the undisputed evidence at trial showed that a large percentage of the employees at MBCI's Auburn facility – up to fifty percent – are female. There was also significant evidence that MBCI employed females in management roles. The single instance of sex discrimination alleged by Plaintiff here, even if it had been supported by evidence, falls far short of showing a pattern of discrimination sufficient to support punitive damages.

Nor was there even an inference of evidence that any MBCI manager acted with spite or malevolence in terminating Plaintiff's employment. Again, the following should be considered:

- There was no evidence that any MBCI manager had ever exhibited hostility toward Plaintiff or any other female employee on the basis of their gender.

- There was no evidence that any MBCI employee had ever made a single disparaging comment about female employees, either about Plaintiff specifically or female employees generally.

If there had been any evidence of hostility or malevolence, Plaintiff had ample opportunity at trial to present it. Plaintiff testified at trial, yet she failed to specify any alleged instance of spite or malevolence on the part of any MBCI manager. In addition, all four managers involved in the decision to terminate Plaintiff's employment – Buddy Smith, Norm Krogh, Tom Barthel, and Anthony Zellars – testified at trial and submitted to extensive examination or cross-examination by Plaintiff's counsel. Plaintiff's counsel failed to elicit any suggestion of spite, hostility, malevolence, or ill will on the part of any of these managers toward Plaintiff.[9]

To the contrary, the evidence at trial showed that Plaintiff's supervisors generally regarded her as a good employee prior to her abandoning her job on April 12, 2005. Moreover, the evidence showed that Zellars – the highest ranking manager in the Auburn facility – met with Plaintiff the day after her termination. During this meeting, Plaintiff did not allege that she believed her termination was motivated by discrimination; rather, she simply questioned the termination generally. Thereafter, Zellars personally surveyed employees in Plaintiff's work area to determine if any of them had received notice from Plaintiff before or during the extended absence that led to her termination in an effort to determine whether there was any basis to reverse her termination. The uncontested evidence demonstrated that Zellars could not find a

---

[9]   Notably, three out of the four decisionmakers – Zellars, Krogh, and Barthel – are no longer employed by MBCI and were therefore under no obligation to appear at trial as MBCI managers. Nevertheless, all three of them voluntarily testified (all three reside and work are outside the subpoena power of this Court) in order to defend their conduct in the face of Plaintiff's allegations of discrimination.

single employee who stated that Plaintiff had informed him or her of Plaintiff's departure from work on April 12. Zellars could not even find any support for the proposition that Plaintiff had attempted to contact her supervisor via the assembly line phone. Zellars' own testimony was that he was searching for any small piece of evidence to corroborate Plaintiff's story. Having found no support for Plaintiff's story, Zellars was left with no other alternative but to not reverse Plaintiff's termination for abandoning her job duties without giving notice. Zellars' personal efforts on behalf of Plaintiff refute any suggestion that MBCI bore her ill will in terminating her employment.[10]

Finally, there was no evidence that MBCI acted with "blatant disregard for civil obligations." The evidence in this case was in stark contrast to that presented in *U.S.E.E.O.C. v. W&O, Inc.*, 213 F.3d 600 (11th Cir. 2000). There, the Court found there was sufficient evidence to support an award of punitive damages where the employer maintained a policy expressly barring pregnant employees from waiting tables past their fifth month of pregnancy and requiring them to instead take lower-paying cashier positions or cease working in the defendant's restaurant altogether. The evidence in that case showed the defendant's managers who drafted this policy had first conducted research that included reviewing reference books, consulting other restaurants' policies, and calling the Labor Board. The evidence further showed that the Labor Board had specifically informed the defendant's managers that the defendant must permit pregnant women to keep their jobs as long as they could fulfill their duties. Despite this clear

---

[10] Plaintiff's counsel argued that MBCI's decision to oppose Plaintiff's application for unemployment compensation was evidence of malice. However, the uncontested evidence showed that MBCI opposes <u>all</u> applications by terminated employees for such compensation as a matter of routine practice. There was no evidence that MBCI opposed Plaintiff's application in particular or that MBCI has ever opposed any application based on an impermissible factor, such as an employee's gender. Accordingly, that MBCI opposed Plaintiff's application for unemployment compensation is not evidence of malice.

warning to the contrary, the defendant's managers instead chose to draft the policy barring pregnant employees from waiting tables after their fifth month. The evidence also showed that various managers had made comments such as that "no one [was] going to run around here pregnant and big like that [and n]o pregnant women [were] going to tell me how long they'll stay." *Id.* at 611-12. The Court concluded that such comments could be interpreted as showing an unwillingness to accede to the law. In view of all of this evidence, the Court held that the jury was entitled to find that the defendant's managers knew that pregnancy discrimination violated federal law and that, by maintaining the policy nevertheless, the defendant had been recklessly indifferent toward plaintiff's federal rights.

Here, by contrast, there was no evidence that any MBCI manager engaged in blatant discrimination or disregard for Plaintiff's rights. There was no evidence of any MBCI policy that was discriminatory on its face. There was no evidence of any MBCI manager who made comments evincing contempt for federal antidiscrimination laws or a refusal to comply with them. There was no evidence that any MBCI manager even suspected, let alone believed, that the termination of Plaintiff's employment risked being deemed a violation of any federal law. To the contrary, all four managers testified that they believed they had reached the decision to terminate Plaintiff's employment without regard to her gender or any other impermissible factor under Title VII. *See, e.g.*, *Ash v. Tyson Foods, Inc.*, 129 Fed. Appx. 529, 536 (11th Cir. 2005), vacated and remanded on other grounds, 546 U.S. 454 (2006) (affirming district court's decision to grant new trial on punitive damages because plaintiff "failed to present any evidence that [supervisor] knew he was violating federal law when he failed to promote [plaintiff]").

It is also notable that Plaintiff's claim in this case is not based on any direct evidence of discrimination: no MBCI manager is alleged to have stated that Plaintiff was

terminated because she was female.  Rather, Plaintiff's claim of sex discrimination is based

entirely on inferences, and to the extent any such inferences were even reasonable based on the

evidence presented, they would have been extraordinarily weak, at best.  Certainly, the record is

devoid of any evidence of egregious misconduct that might also reasonably support an inference

of malice or reckless indifference.  *See, e.g.*, *Kolstad*, 527 U.S. at 539 (noting that evidence of

"egregious behavior" is one means of satisfying the plaintiff's burden to demonstrate malice or

reckless indifference to support an award of punitive damages).

Accordingly, the record in this case fails to show any basis for finding that MBCI

acted with malice or reckless indifference toward Plaintiff's federally protected rights.  Indeed,

Plaintiff testified at trial that she had wished to continue working for MBCI, a fact inconsistent

with any perception on her part that the MBCI workplace was rife with discrimination, spite or

malevolence, or the blatant disregard of employees' civil rights.  Finally, it is notable that the

jury declined to award Plaintiff any damages for alleged emotional distress, a fact consistent with

the evidence that Plaintiff was not subjected to any egregious conduct that would merit punitive

damages.

**B.**    **There Was No Evidence That A Discriminating Employee Was High
Up The Corporate Hierarchy Or That Higher Management Approved
Of Discriminating Behavior**

Plaintiff's claim for punitive damages also fails as a matter of law because there is

no evidence (1) that any of the managers involved in her termination was "high[] up the

corporate hierarchy" or (2) that MBCI's higher management "countenanced or approved" any

alleged discriminating behavior.  *Dudley*, 166 F.3d at 1323.

First, it is clear under Eleventh Circuit law that the four managers involved in

Plaintiff's termination – Zellars, Smith, Krogh, and Barthel – were not sufficiently high up the

31

corporate ladder to support an award of punitive damages. In *Dudley*, the Eleventh Circuit held that two head managers at a Wal-Mart store were not sufficiently high up the corporate hierarchy to warrant an award of punitive damages, in part, because they were managers of a single location out of a number of the defendant's locations nationwide. 166 F.3d at 1323. *See also Laughlin v. Pilot Travel Centers, LLC.*, No. 5:05-cv-342-OC-10GRJ, 2007 WL 121344 (M.D. Fla. Jan. 11, 2007) (store manager with authority over only one location not sufficiently high up corporate hierarchy to support punitive damages award).

In the present dispute, MBCI is a manufacturer of kitchen and bathroom cabinetry made up of multiple cabinet brands which include Schrock, Diamond, Kemper Aristokraft, Decora, and Axis and multiple manufacturing operations. (Exh. A, at MBCI-0457.) MBCI's corporate headquarters is located in Jasper, Indiana, from which MBCI's corporate management administers the Company's operations nationwide. Furthermore, as Plaintiff's own evidence at trial demonstrated, MBCI is merely one part of Fortune Brands, Inc., a company that consists of numerous brands in a variety of industries, including not only kitchen and bath cabinetry, but also office products, distilled spirits, and hardware. (*See* Exh. A, at MBCI-0459.)

The evidence at trial showed that Zellars, the highest ranking of the managers involved in Plaintiff's termination, only had authority for managing a single MBCI location, the Auburn facility.[11] Barthel, the Human Resources Manager, and Krogh, the Senior Manufacturing Manager, were responsible for specific functions only within the Auburn facility. Smith, a Team Leader, was responsible only for a specific area within the Auburn facility.

---

[11] It is also significant that Plaintiff – in an effort to support her claim of race discrimination under Title VII – repeatedly claimed that Barthel, who is Caucasian, was the primary decisionmaker with respect to her termination, not Zellars who is African-American. Accepting Plaintiff's theory, she presented absolutely no evidence that Barthel, who reported to Zellars, had any authority outside of the Auburn facility or was a member of MBCI's higher management.

None of the managers involved in Plaintiff's termination worked in MBCI's Jasper, Indiana headquarters. There was certainly no evidence that Zellars, Barthel, Krogh, or Smith had any responsibility for managing MBCI's or Fortune Brand's business generally. There was no evidence that any of these managers had any role in formulating, interpreting, or implementing MBCI's policies and procedures companywide. There was thus no evidence that any of the four managers involved in Plaintiff's termination was a member of MBCI's higher level management.

Moreover, there was absolutely no evidence that any member of higher management at MBCI's corporate headquarters "countenanced or approved" of any alleged discriminating behavior with respect to Plaintiff. There was certainly no evidence that any manager at MBCI corporate headquarters was either consulted or advised concerning Plaintiff's termination. Indeed, there was no evidence that any member of MBCI's corporate management in Jasper, Indiana was even aware of the decision to terminate Plaintiff's employment at the time it was made. Consequently, the facts in the present dispute are analogous to the facts in both *Dudley* and *Laughlin*. In both instances, it was determined that punitive damages were not appropriate. There is no basis for deviating from this legal precedent.

Finally, although MBCI maintains a national "Corporate Hot Line" for employees to report any complaints of discrimination, there is no evidence that Plaintiff utilized this line to complain to MBCI's corporate operations that she believed that she had experienced discrimination in Auburn. (*See* Exh. A, at 18, providing the telephone number of the Corporate Hot Line.) Indeed, there is no evidence that Plaintiff ever made any internal complaint of

<u>discrimination</u> to <u>anyone</u> at <u>MBCI,</u> either to <u>management</u> within the <u>Auburn</u> facility or to <u>MBCI's</u> <u>corporate</u> <u>headquarters</u>.[12]

In view of the fact that no member of MBCI's higher management knew of Plaintiff's termination by local managers in Auburn, it would defy logic to conclude that MBCI's higher management countenanced and approved of any discrimination involved in Plaintiff's termination. *See, e.g.*, *Wilbur v. Correctional Services Corp.*, 393 F.3d 1192, 1205 (11th Cir. 2004) (affirming judgment in defendant's favor on punitive damages claim on ground that plaintiff "offered nothing to establish that [defendant's] higher management 'countenanced or approved' the offending behavior of her supervisors'"); *Laughlin,* 2007 WL 121344 at *6 (granting judgment to defendant on plaintiff's claim for punitive damages where "there [was] a complete lack of evidence that [plaintiff] ever complained to anyone who was part of [the defendant]s) higher management, or that [plaintiff's supervisor] consulted with anyone in higher management about [plaintiff's] complaint . . . ," even though plaintiff admitted receiving the defendant's anti-harassment policy and complaint procedure).

---

[12] The first notice that any MBCI manager had that Plaintiff believed her termination had been motivated by discrimination came when MBCI received a copy of Plaintiff's charge of discrimination filed with the U.S. Equal Employment Opportunity Commission approximately two months after her employment with MBCI ended.

MBCI attempted to present evidence at trial through the testimony of Eugene Murray that MBCI had immediately investigated Plaintiff's allegation of discrimination upon receiving a copy of her EEOC charge and concluded no discrimination had occurred. However, the Court sustained Plaintiff's objection to Murray's testimony regarding MBCI's internal investigation on the ground that Murray was not involved in the termination decision, itself. As set forth below, MBCI respectfully submits that the Court's exclusion of this testimony was erroneous because Murray's testimony concerning MBCI's investigation of Plaintiff's allegation of discrimination further demonstrated MBCI's lack of malice and reckless indifference toward Plaintiff's federally protected rights. Such testimony also further demonstrated MBCI's good faith efforts to comply with Title VII, which, as explained *infra*, bars Plaintiff's punitive damages claim. Accordingly, the exclusion of this evidence provides grounds for a new trial in the event Plaintiff's claim for punitive damages is not denied as a matter of law.

C.    **The Evidence Was Uncontested That Any Discrimination Against Plaintiff Was Contrary To MBCI's Good Faith Efforts To Comply With Title VII**

Even if Plaintiff had presented evidence that a member of higher management had engaged in discrimination in terminating her employment, MBCI could not be held liable for punitive damages because the evidence at trial showed that any discriminatory employment decision was "contrary to the [MBCI's] good-faith efforts to comply with Title VII." *See Kolstad v. American Dental Association*, 527 U.S. 526, 545 (1999) (citation omitted; emphasis added).

The evidence of MBCI's good-faith efforts to comply with Title VII was uncontested. The evidence showed that MBCI maintains an "Equal Employment Opportunity Policy" ("EEO Policy"), which is included in MBCI's employee handbook. (Exh. A, at 17.) This policy provides that

> MBCI is committed to a policy of equal employment opportunity for all applicants and associates. Under this policy, employment decisions shall comply with all applicable state and federal employment discrimination laws. In this regard, all employment decision will be made without regard to race, color, gender, sex, religion, national origin, age, disability, veteran's status, or (in the case of U.S. citizens or intending citizens) citizenship. In addition, MBCI will not tolerate any unlawful discriminatory employment practice or procedure by anyone, including co-workers, team leaders, managers, executive and visitors. This policy applies to all employment practices and procedures including, but not limited to, recruiting, hiring, compensation, training, promotions, termination and all terms and conditions of employment. Any associate who believes that they have witnessed or been subjected to discrimination has an obligation to report the matter to the company in accordance with this policy.

> . . .

> Any associate who believes that they have either witnessed or been subjected to discriminatory conduct shall immediately report the discriminatory conduct to the company. Associates have a duty to report

discriminatory conduct the company in order to protect themselves, their colleagues and MBCI.

In order to ensure that a report of discriminatory conduct is properly recorded, an associate must report the discriminatory conduct to the Human Resources Manager, the Operations Manager or the Corporate Hotline at 1-888-786-2949.

(Exh. A, at 17.)

MBCI's antidiscrimination policy is also incorporated within and further explained in MBCI's "Standards of Business Conduct" ("Standards"). (*See* Exh. C at 6, 21-24.) As described in the Standards, employees who suspect discrimination has occurred are under a duty to report it internally and have multiple options for doing so. These options include reporting the alleged discrimination directly to MBCI's Human Resources or, if the employee "is uncomfortable in reporting the conduct to Human Resources," to the Vice President of Safety, Environmental and Risk Management. (Exh. C at 24.) Alternatively, "[e]mployees may also call a confidential pass-word-protected voicemail telephone hot-line at 1-888-786-2946." (Exh. C at 24.) MBCI's Standards provide that "[a]ll reports of Discrimination shall be promptly investigated." (Exh. C at 24.) "If the investigation reveals that the report has merit, corrective action up to and including termination will be taken to remedy the situation." (Exh. C at 24.) Finally, the uncontested evidence at trial showed that MBCI requires its managers to undergo training on the Company's Standards Of Business Conduct – including its antidiscrimination policy – annually.

Clearly, MBCI's EEO Policy and Standards of Business Conduct – which expressly state that all "employment decisions shall comply with all applicable state and federal employment discrimination laws" and which provide employees a means to report internally suspected discrimination for investigation – is fully consistent with and compliant with Title

36

VII's prohibition of sex discrimination in employment practices. Equally clear is the fact that any discrimination against Plaintiff on the basis of her sex would be a violation of MBCI's EEO policy and Standards that would result in the discipline of the discriminating manager up to and including termination.

There was no evidence or even an inference of evidence presented at trial that MBCI's antidiscrimination policy is not in good-faith. There was no evidence that MBCI fails to investigate complaints of discrimination. There was no evidence that MBCI fails to discipline employees, including managers, who are found to have engaged in discrimination.

Indeed, the only evidence at trial of any internal complaints were those made regarding Buddy Smith by employees who believed he had spoken to them too harshly. In both instances, the evidence showed that MBCI promptly investigated these complaints to determine whether Smith had engaged in any discrimination or any other violation of the Standards. Thus, the sole evidence presented at trial regarding MBCI's implementation of its EEO policy showed that MBCI complies with its own antidiscrimination policy and investigates employee complaints to identify possible violations.

Additionally, the evidence at trial showed that Plaintiff received both the employee handbook and the Standards of Business Conduct, which set forth MBCI's antidiscrimination policy and the various options that Plaintiff had for reporting any suspected instances of discrimination. (*See* Exh. A at 17; Exh. C at 24; Exh. D; & Exh. E; and Exh. F.) The evidence also showed that Plaintiff never sought to take advantage of MBCI antidiscrimination policy by using MBCI internal procedures to complain that she believed she had experienced discrimination. Plaintiff never reported any discrimination to any managers or supervisors within the Auburn facility; she did not contact any management at MBCI's corporate

headquarters to report any discrimination; nor did she call MBCI's Corporate Hotline to report any suspected discrimination. In short, Plaintiff never provided MBCI with notice via an internal complaint that she believed any MBCI manager had, contrary to Company policy, engaged in sex discrimination.[13]

Indeed, once MBCI received Plaintiff's charge of discrimination filed with the Equal Employment Opportunity Commission, MBCI, consistent with its internal EEO Policy and Standards, immediately launched an internal investigation of Plaintiff's allegations of discrimination. This investigation was conducted by Eugene Murray, a human resources manager from outside the Auburn facility.[14] There was no evidence that this investigation was lacking in good faith.

In sum, there was no evidence that MBCI's EEO policy and its Standards – which expressly mandate compliance with federal antidiscrimination law and provide an internal mechanism for enforcement – are anything less than a good-faith effort to comply with Title VII. Because any manager's discriminatory act with respect to Plaintiff would have been contrary to MBCI's good-faith EEO policy and Standards, Plaintiff's claim for punitive damages fails as a matter of law. *Cf. Laughlin,* 2007 WL 121344 at *6 (no punitive damages available, in part, because defendant "had a detailed and well-publicized procedure to prohibit and rectify any instances of [discrimination] which complied with the purposes of Title VII – a procedure which [the plaintiff] admit[ted] receiving").

---

[13]  Plaintiff also did not present any evidence of any other employee had had sought to invoke the Company antidiscrimination policy.

[14]  As noted above, the Court erroneously sustained Plaintiff's objection to Murray's presenting further testimony concerning MBCI's internal investigation on the ground that Murray was not involved in the termination decision, itself.

For all of the above reasons, the jury's award to Plaintiff of approximately $55,000 in punitive damages has no basis in the evidence and must be vacated as a matter of law. Furthermore, as additional, alternative relief, MBCI should be granted a new trial on Plaintiff's claim for punitive damages because the jury's verdict was against the great weight of the evidence.

### III.    MBCI Is Entitled Alternatively To A New Trial On Plaintiff's Claim For Punitive Damages Due To The Prejudicial Exclusion Of Admissible Evidence

Even if the Court were to deny MBCI's renewed motion for judgment as a matter of law or its alternative motion for a new trial based on the insufficiency of the evidence supporting either Plaintiff's sex discrimination or punitive damages claims, the Court should nonetheless grant MBCI a new trial on the issue of punitive damages based on its prejudicial exclusion of Eugene Murray's testimony.  To gain a new trial under Rule 59(a) based on a district court's evidentiary ruling, a party "must establish that (1) its claim was adequately preserved; (2) the district court abused its discretion in interpreting or applying an evidentiary rule; and (3) this error affected 'a substantial right.'"  *Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1349 (11th Cir. 2007).  All three conditions are satisfied here.

First, MBCI adequately preserved the issue at trial of the admissibility of Murray's testimony.  Plaintiff's counsel objected to Murray's testifying concerning MBCI's internal investigation of Plaintiff's discrimination allegations after it received her EEOC charge of discrimination.  Plaintiff's counsel contended that Murray's testimony was not relevant since he was not involved in the decision to terminate Plaintiff's employment and thus lacked personal knowledge of that decision.  Defense counsel opposed Plaintiff's objection, arguing that Murray's testimony regarding MBCI's internal efforts to investigate Plaintiff's allegation of

discrimination was relevant to MBCI's good faith effort to comply with Title VII and thus relevant to the issue of punitive damages. The Court, agreeing with Plaintiff's counsel, sustained the objection, preventing Murray from testifying on this subject.

Second, the Court's ruling on this issue was an abuse of discretion because case law makes clear – as set forth above – that a corporate defendant may not be held vicariously liable for a manager's discriminatory conduct when that conduct is contrary to the defendant's good faith efforts to comply with Title VII. *Kolstad*, 527 U.S. at 546. Murray's testimony that MBCI had investigated Plaintiff's allegation of discrimination upon receiving a copy of her EEOC charge, and had concluded no discrimination had occurred, would have further refuted Plaintiff's claim for punitive damages. For example, in *Solomon v. Waffle House, Inc.*, 365 F. Supp. 2d 1312, 1330 (N.D. Ga. 2004), the court held there was no evidence to support a claim for punitive damages where the undisputed evidence showed that, once defendant received plaintiffs' complaint of discrimination, the defendant "promptly investigated their claim," including interviewing witnesses who had be present at time of alleged discriminatory act. The Court explained that "[t]hese actions by Waffle House effectively negate the possibility that a jury could find that Waffle House intended to harm Plaintiffs or acted with reckless indifference to Plaintiffs' federally protected rights," particularly since the plaintiffs had failed to offer any evidence that "Waffle House's conclusion (i.e., that there was no evidence of discrimination) was made in bad faith." *Id*. at 1330. In light of the relevance of Murray's proffered testimony, the Court's exclusion of it was an abuse of discretion.

Finally, the Court's exclusion of Murray's testimony affected a substantial right. As noted above, MBCI's good faith efforts to comply with Title VII provide a defense to punitive damages. Because Plaintiff never complained internally to MBCI that she believed that

she had experienced discrimination, and because the first notice MBCI received of this belief came when it was served with Plaintiff's EEOC charge, the Court's exclusion of Murray's testimony concerning MBCI subsequent investigation of the allegation effectively denied the jury an opportunity to consider what efforts MBCI made to respond to Plaintiff's concern about potential discriminatory conduct.  *Cf. Proctor*, 494 F.3d at 1352 ("Because Alabama law recognizes the borrowed servant doctrine as a complete defense to liability, we conclude that the exclusion of Fluor's evidence . . .  precluded the jury from considering that defense and thus had a substantial impact on the jury's verdict.).  If the jury had considered this evidence, it is possible that it would not have awarded Plaintiff any punitive damages.

Accordingly, MBCI is entitled to a new trial on the issue of punitive damages due to the prejudicial exclusion of Murray's testimony.

## IV.    Conclusion

MBCI's renewed motion for judgment as a matter of law pursuant to Rule 50(b) should be granted.[15]  Upon such a motion, courts "consider whether such sufficient conflicts exist in the evidence to necessitate submitting the matter to the jury or whether the evidence is so

---

[15]  Rule 50(b) provides in relevant part:

> If the court does not grant a motion for judgment as a matter of law made under subdivision (a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment . . .. The movant may alternatively request a new trial or join a motion for a new trial under Rule 59.

> In ruling on a renewed motion, the court may:

> (1) if a verdict was returned:

>> (A) allow the judgment to stand,

>> (B) order a new trial, or

>> (C) direct entry of judgment as a matter of law . . . .

Fed. R. Civ. P. 50(b).

BDDB01 4885355v2

weighted in favor of one side that that party is entitled to succeed in his or her position as a matter of law." *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000) (citing *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc)).    Because "[a] motion for judgment as a matter of law will be denied only if 'reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions,' " *see Mendoza*, 195 F.3d at 1244, a plaintiff "must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law," *Combs*, 106 F.3d at 1526.  *See also Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) ("The nonmoving party must provide more than a de minimus level of evidence to survive a motion for judgment as a matter of law").  Rather, "there must be a substantial conflict in evidence" before a matter will be left to a jury.  *Combs*, 106 F.3d at 1526.

Applying these standards, courts regularly grant motions for judgment as a matter of law where plaintiffs have failed at trial to present evidence at trial to support their claims of discrimination.  *See, e.g.*, *Abel*, 210 F.3d 1334 (11th Cir. 2000) (affirming grant of judgment as a matter of law in defendant's favor where plaintiff failed to present evidence of a similarly situated employee); *Johnson v. The Bd. of Trustees of the Univ. of Alabama*, 191 Fed. Appx. 838 (11th Cir. 2006) (affirming grant of judgment as a matter of law where plaintiff failed to prove a prima facie case for disparate treatment and could not show pretext); *Brackett v. Alabama Dept. of Transp.,* 212 Fed. Appx. 779 (11th Cir. 2006) (holding that the plaintiff did not carry her burden in showing pretext because none of the witnesses and none of the documents introduced at trial even hinted at the notion that the plaintiff was not promoted because she was African-American); *Butler v. Greif Bros. Serv. Corp.*, No. 06-15274, 2007 WL 1244206 (11th Cir. Apr.

30, 2007) (affirming grant of judgment as a matter of law in favor of defendant where plaintiff failed to establish a prima facie element of his case).

In this case, as set forth above, Plaintiff presented <u>no</u> evidence of a prima facie case of discrimination and <u>no</u> evidence that MBCI's proffered reason for the termination – her admitted misconduct – was a pretext for unlawful discrimination. Plaintiff's case at trial failed completely to raise any conflict in the evidence. Therefore judgment must be entered as a matter of law in MBCI's favor on her sex discrimination and punitive damages claims.

Even if the Court were to deny MBCI renewed motion for judgment as a matter of law on either Plaintiff's sex discrimination claim or her punitive damages claim, the Court should grant MBCI's motion for a new trial under Rule 59.[16] Such motions must be granted where a "verdict is against the clear weight of the evidence … or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984). Although the standards for granting a Rule 50(b) motion and a Rule 59 motion are different, courts in the Eleventh Circuit consider the arguments together. *See, e.g.*, *Dudley*, 166 F.3d at 1320 n.3 ("On liability, [the defendant] contends that it is entitled to a judgment as a matter of law or, in the alternative, to a new trial. . . . The two will be considered together even though the standards are not the same.").

In this case, even if there were more than a mere scintilla of evidence to support Plaintiff's claims, the clear weight of this evidence showed that MBCI terminated Plaintiff's employment for a single and simple reason, her admitted misconduct, and that no MBCI

---

[16] MBCI respectfully notes that, pursuant to Rule 50(c), the Court must rule on MBCI's motion for a new trial even if it grants MBCI's motion for judgment as a matter of law.

manager acted with malice or reckless indifference toward Plaintiff's federally protected rights. Because the jury's verdict was against the clear weight of this evidence, a new trial must be granted should judgment as a matter of law in MBCI's favor be denied.

Finally, because the Court's exclusion of Eugene Murray's testimony regarding MBCI's investigation of Plaintiff's allegation of discrimination constituted prejudicial error, a new trial must be ordered on Plaintiff's claim for punitive damages, even if MBCI's motion for a new trial were not granted on other grounds.

WHEREFORE, for the reasons set forth above, MasterBrand Cabinets, Inc., respectfully requests that its renewed motion pursuant to Rule 50(b) be granted, that judgment as a matter of law be entered in MBCI's favor on Plaintiff sex discrimination claim under Title VII and on her claim for punitive damages under § 1981a, and that MBCI be granted all other appropriate relief.  Furthermore, MBCI respectfully requests that its motion in the alternative for a new trial pursuant to Rule 59(a) be granted both on Plaintiff's claim of sex discrimination under Title VII and on her claim for punitive damages, that a new trial be ordered on both of these claims as additional, alternative relief to granting judgment as a matter of law in MBCI's favor, and that MBCI be granted all other appropriate relief.

BAKER & DANIELS LLP

By: s/  Mark J. Romaniuk
  Mark J. Romaniuk (IN Bar #15255-49)
  Christopher C. Murray (IN Bar #26221-49)
   (both admitted *pro hac vice*)
  Attorneys for MasterBrand Cabinets, Inc.

300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
mark.romaniuk@bakerd.com
christopher.murray@bakerd.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2007, the foregoing was filed electronically. Notice of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system.

David R. Arendall
Allen D. Arnold
ARENDALL & ASSOCIATES
2018 Morris Avenue
Birmingham, Alabama  35203

s/Christopher C. Murray

BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
mark.romaniuk@bakerd.com
christopher.murray@bakerd.com

BDDB01 4885355v2