IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

KIM FOREMAN,

PLAINTIFF,                    CIVIL ACTION NO. 3:06cv00449 (MHT)

V.

MASTERBRAND CABINETS, INC.,

DEFENDANT.


**PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED RULE 50
MOTION AND CONCURRENT RULE 59 MOTION**

COMES NOW, the Plaintiff, by and through undersigned counsel, opposing Defendant's Motion for Judgment as a Matter of Law or in the alternative Motion for a New Trial and submits in support thereof:

I.   **DEFENDANT IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW WITH RESPECT TO PLAINTIFF'S GENDER DISCRIMINATION CLAIM**

Defendant's Motion for Judgment as Matter of Law appears to rest on two points: Plaintiff failed to show that her male comparators were similarly situated, and that even if the male comparators were similarly situated, such a termination was not a pretext for discrimination. Defendant's argument fails on both accounts.

A.   **Plaintiff's Presented Evidence Sufficient to Show a Prima Facie Case.**

Defendant's Rule 50 Motion is simply one more effort at misdirection under the "similarly situated" prong of the McDonnell-Douglas burden shifting analysis. Defendant's argument relies on the Court to accept the premise that the "nearly identical" conduct described is malleable and can be changed such that the Court has no choice, in every employment case, to grant judgment as a matter of law in favor of all employers. The evidence before the Court shows that not one, but two, male comparators committed the same misconduct and were treated more favorably by the Defendant.

### 1. The Misconduct:

During Plaintiff's case in chief, Defendant's corporate representative, Eugene Murray took the stand and testified about the misconduct for which Plaintiff was terminated. During his examination by the Plaintiff, Mr. Murray reviewed the written discovery responses signed by the Defendant's corporate representative Perry Ezell. Mr. Murray confirmed Defendant's description of the conduct from the witness stand. Mr. Murray testified that the Defendant terminated Plaintiff "because she had left the plant without notifying any member of management, was gone without any valid reason for the excessive time missed, had a handbook and had reviewed the appropriate policies at the time of her hire, and should have been aware of the consequences of her action." (See Doc. 58 Pl. Ex. 1: RFA No. 7). This was further verified in the testimony of the decision

maker, Tom Barthel. Despite admissions during discovery that are signed by its own counsel, the trial testimony, and Defendant's Exhibit 6 & 7, Defendant's brief inaccurately conveys the evidence at trial as stating that Plaintiff was terminated because she left without permission "and remained missing from the facility for the majority of his shift during core production hours."[1] Defendant's argument about "core production hours" lacks merit and shows its desperation to create differences between the comparators that do not exist or differences that are not relevant.

### 2. Male Comparator: Handbooks and Consequences.

The evidence presented by the Plaintiff shows that "the quantity and quality of the comparator's misconduct [were] nearly identical" to that of the Plaintiff. Mr. Clack and Mr. Nazworth are valid comparators in regard to having a company handbook and understanding the consequences of their action of leaving work without their supervisor's permission that could result in discipline. Mr. Murray and Mr. Barthel told the jury that the Defendant terminated Plaintiff because she "had a handbook and had reviewed the appropriate policies at the time of her hire, and should have been aware of the consequences of her action." (See also Doc. 58 Pl. Ex. 1: RFA No. 7). Defendant's Trial Exhibits 1, 2, 3, and 8 were admitted into evidence. Defendant's Trial Exhibits 1, 2, and 3 show Plaintiff's

---

[1] Defendant's stated reason in its brief is a shift from its admission and is arguably evidence of pretext. (See *Cleveland v. Home Shopping Network, Inc.*, 369 F. 3d 1189, 1195 (11th Cir. 2004).

acknowledgement of receiving the policy handbooks and her orientation checklist with the company. Exhibit 8 is the handbook itself.

Plaintiff introduced evidence that shows identical acknowledgment of the policies for the male comparators. Plaintiff's Exhibits 11 and 12 are the signed acknowledgment forms for Thomas Clack. Mr. Clack is identical to Plaintiff in that he had reviewed the handbook and was aware of the consequences of his actions. Mr. Clack testified he understood the policies in Defendant's Exhibit 8. Likewise, Mr. Murray and Mr. Barthel testified that all employees, including Mr. Nazworth, receive the company handbook and are aware of the consequences of their actions. Mr. Nazworth is identical to Plaintiff in that he also had reviewed the handbook and was aware of the consequences of his actions. Mr. Nazworth testified he understood the policies in Defendant's Exhibit 8. Plaintiff and her male comparators are identical in terms of possessing a handbook, reviewing the policies, and understanding those policies.

### 3. Male Comparator: Leaving without Permission:

Mr. Murray told the jury Defendant terminated Plaintiff "because she had left the plant without notifying any member of management." (See also Doc. 58 Pl. Ex. 1: RFA No. 7). When considering the male comparators, Defendant's argument regarding "core production hours" rings hollow. While the evidence before the jury did show that the policy varies depending whether the employee

leaves work is male, the time of day this happened was not an issue addressed at trial. Plaintiff left work for a valid reason and then she came back; whereas the male comparators did not return. Mr. Clack took the witness stand and testified to personally committing, on several occasions, the identical misconduct of leaving without notifying any member of management. Mr. Clack received a written warning from the Defendant for one of these departures that was signed by Norm Krogh and Buddy Smith. (See Pl. Trial Exhibit 4). The write up shows that Mr. Clack damaged merchandise and left work without receiving permission from his supervisor, Buddy Smith. There is no dispute that Mr. Clack was treated more favorably under the circumstances. The write up shows that Mr. Clack was demoted for his misconduct of damaging merchandise and leaving without permission. Mr. Clack also left the worksite without permission despite a direct order from his manager, Norm Krogh, to seek permission from Buddy Smith. There is no dispute that Plaintiff was terminated for leaving the worksite without permission. Mr. Clack committed not just nearly identical misconduct, but worse misconduct than Plaintiff, as his leaving without permission was an insubordinate act, as well, he damaged product. Mr. Clack was treated more favorably than Plaintiff in regard to the discipline each received for leaving the worksite without obtaining permission.

Mr. DuWayne Nazworth is also a male comparator that is guilty of nearly identical misconduct under the *Burke-Fowler* similarly situated standard. Mr. Clack testified about his personal knowledge of Mr. Nazworth leaving the workplace without permission on at least two occasions.[2] Following each instance, Defendant simply transferred Mr. Nazworth to a different portion of Defendant's facility. Mr. Clack testified that following the first instance of leaving without permission Mr. Nazworth was transferred from "base line" to "cutting." Plaintiff's Exhibit 5 shows one such transfer to be more akin to a promotion. Mr. Clack stated that another instance occurred where Mr. Nazworth left without permission; later resulting in Nazworth's transfer from "cutting" back to "base line." Courts have ruled that a "transfer" is not always tangible adverse job action. See *Johnson v. Booker T. Washington Broad. Servs.*, 234 F.3d 501, 512 (11th Cir. 2000) (noting that a transfer may be tangible depending upon financial implications); *Graham v. Department of Corrections*, 1 F. Supp. 2d 1445, 1450 (M.D. Fla. 1998). Mr. Nazworth did not suffer the ultimate adverse employment action of termination, and was therefore treated more favorably. Furthermore, Mr. Nazworth's discipline is documented by the Defendant. (See Pl. Exhibit 5). Mr. Nazworth received a

---

[2] Defendant's brief incorrectly states that Nazworth's leaving the workplace with permission is undisputed. This assertion is incorrect as Mr. Clack testified that Mr. Nazworth left without permission because Clack's job responsibility was to find a replacement unexpectedly **during "core production" hours.**

write up stating "[w]alked out on 9-24-04 at 8:15 a.m.[3] Discussed with Tom B. Was to prceed with replacement procedure and transfer Duwayne to Base Line." *Id.* Mr. Nazworth took the stand and denied these allegations that he left without permission and that the transfer was disciplinary in nature. The jury was presented with a question of fact regarding Mr. Nazworth's alleged misconduct that was nearly identical to that of the Plaintiff.

### 4. Male Comparator: Production Employees

Plaintiff and her male comparators were identical in that all three were "production employees." There was no dispute that Plaintiff was a production employee, in fact, Defendant relied on this as an explanation for terminating Plaintiff's employment. <u>Defendant's counsel confirmed</u> on cross-examination that Mr. Clack was a production employee. Mr. Clack also confirmed that Mr. Nazworth, a builder on the assembly line, was also a production employee. Defendant's argument that Mr. Clack was a "Lead Person" and not part of the DMR crew is a difference without distinction. Furthermore, Mr. Murray testified that the company handbook rules applied equally to all the employees.

### 5. Plaintiff satisfied her Prima Facie Case

Defendant's argument that Plaintiff was not similarly situated is without merit. The misconduct described by the Defendant is that Plaintiff left work

---

[3] Testimony at trial from several witnesses confirmed that the "core production hours" began at 7 a.m.

without permission, had a handbook, understood the policies, and understood the consequences of her actions. Defendant's argument that Mr. Clack and Mr. Nazworth are not nearly identical is correct, instead Plaintiff and her male comparators are **exactly** identical, in terms of having left without permission, possessing a company handbook, and understood the policies and consequences of misconduct.

Defendant has not cited any case authority to support the idea that it may change its described misconduct after the conclusion of the trial to show that Plaintiff failed to meet the "nearly identical" standard.[4] The Defendant's corporate representative testified about the company's sworn discovery responses which described and identified plaintiff's misconduct. Plaintiff presented this testimony during its case-in-chief. Plaintiff presented male comparators who committed the identical infraction of leaving "the plant without notifying any member of management."

---

[4] Defendant's brief continues to cling to the notion that the jury must believe the rejected non-discriminatory reason it repeated during the course of the trial. Defendant offered a distinct reason during its case-in-chief and reiterates it in this brief that Plaintiff abandoned "her job duties without notice for an extended period of time during core production hours." Defendant offered an earlier reason prior to trial, and also covered at trial, as stated above in the above section. The jury's verdict shows that the reasons offered during discovery, and presented through impeachment testimony of Defendant's corporate representative on cross-examination, were rejected by rendering a verdict in favor of the Plaintiff.

### B. Plaintiff Presented Evidence Sufficient for the jury to find that Defendant's Termination was substantially motivated by Plaintiff's Gender

Plaintiff presented substantial evidence for the jury to determine that her gender was a motivating factor in regard to Defendant's termination decision. The jury's verdict shows that the Plaintiff succeeding "in [meeting] this [burden] … indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256; 101 S. C.t 1089, 1095, 67 L. Ed. 207, 217 (1981). The Eleventh Circuit has emphasized the *Burdine* decision and noted that a plaintiff may meet her burden "by showing that a discriminatory reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation."[5] *Clark v. Coats & Clark*, 990 F.2d 1217, 1228 (11th Cir. 1993).

"Although a plaintiff must both present a prima facie case and show pretext, the showing of pretext need not necessarily involve further evidence; the evidence in a prima facie case might be strong enough to also show pretext." *Ross v. Rhodes Furniture*, 146 F. 3d 1286, 1291 (11th Cir. 1998) (internal citations omitted). Defendant's argument that Plaintiff did not prove "pretext" rests on the

---

[5] Defendant's brief appears to indicate that direct evidence is required to prove that discrimination was the real reason for plaintiff's termination in contrast to the *McDonnell-Douglas* burden shifting analysis. Defendant ignores that Plaintiff's absence from work and subsequent termination is directly related to her menstrual cycle. A menstrual cycle is a "female problem."

premise that Plaintiff cannot prove a prima facie case.[6] Plaintiff refers the Court to the above section regarding comparative evidence as sufficient evidence of pretext to support the jury's verdict. However, the jury also had other evidence of pretext to consider in rendering its decision.

Defendant relied on Plaintiff's knowledge of the company policies in its legitimate non-discriminatory reason for her termination. (See Pl. Trial Brief Ex. 1: RFA No. 7). Mr. Murray confirmed the reliance on these policies during his examination. An employer's violation of its own procedures can be evidence of pretext. *Bass v. Bd. of County Comm'rs, Orange County*, Fla., 256 F.3d 1095, 1108 (11th Cir. 2001). *See also Rudin v. Lincoln Land Community Coll.*, 420 F.3d 712, 727 (7th Cir. 2005) ("An employer's failure to follow its own internal procedures can constitute evidence of pretext."). "Departures from normal procedures may be suggestive of discrimination." *Brown v. Marriott Int'l, Inc.*, 2006 U.S. Dist. LEXIS 56246 at [*32] (N.D. Ga. 2006) (citing *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985)).

In response to Plaintiff's pretext argument, Defendant argues that the Plaintiff's case relies upon second-guessing its business judgment and disagreement on the appropriate amount of discipline, a common strategy used by

---

[6] As noted by the Court in this case, "at the end of a trial it is 'the question of whether the plaintiff properly made out a prima facie case is not 'whether the defendant intentionally discriminated against the plaintiff.'" *Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1153-54 (11th Cir. 2005).

employers. Defendant's argument is misplaced. The evidence before the jury showed that the treatment of Plaintiff regarding the discipline policies, as compared to the males, Clack and Nazworth, showed a deviation from the normal procedures used by the Defendant, as well as in contrast to its own policies. Following the offense of leaving without informing her supervisor Buddy Smith, Plaintiff was terminated. Following the offense of leaving without informing his supervisor, Mr. Clack was not terminated, but was written up according to Defendant's policy. (See Pl. Exhibit 4 and Def. Exhibit 8, p. 22). Despite committing two allegedly terminable offenses in one discrete act, Defendant only issued Mr. Clack a written warning resulting in a demotion. The written documentation for Mr. Clack shows that Defendant's policy permits three warnings prior to a termination. Following the offenses of leaving without informing his supervisor, Mr. Nazworth was not disciplined whatsoever, but instead given transfers to other assembly lines. The jury heard evidence regarding how the policies were applied to the males, and how the policy was applied more strictly to the female Plaintiff for the same misconduct.[7]

---

[7] Interestingly, Defendant argues that the more favorable treatment it bestowed upon Nazworth and Clack is evidence that the Plaintiff and her comparators are not similarly situated. (See Doc. 77, p. 20). Defendant states that Clack and Nazworth's discipline was different than that proscribed in the handbook meaning Defendant made favorable exceptions to written policies for these male comparators. Defendant's contention appears to be that a write up and demotion, or no discipline whatsoever, is more severe than a termination. This is a novel argument, though clearly wrong.

Defendant's normal procedure shows that written warnings are given prior to termination, however, that procedure was abandoned in regard to the Plaintiff's discipline. Defendant cites *Harley v. The Health Center of Coconut Creek, Inc.*, 487 F. Supp. 2d 1344 (S.D. Fla. 2006) to support the notion that it was in compliance with its procedures. However, the *Harley* Court noted that "Defendant [did] not introduce evidence that in prior cases of verbal abuse, it similarly exercised its right of immediate termination." *Id.* at 1354, n. 8. Likewise, the evidence before this jury showed that in other cases of employees leaving the job without informing the supervisor, Defendant did not exercise its right of immediate termination under the policy. Defendant certainly did not exercise this alleged right when considering the actions of Mr. Clack and Mr. Nazworth.

## II. DEFENDANT IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW IN REGARD TO PLAINTIFF'S PUNITIVE DAMAGES AWARD

Defendant's collective Rule 50 and Rule 59 motion in regard to Plaintiff's verdict of punitive damages is due to be denied. The jury heard sufficient evidence to support Plaintiff's award of punitive damages. Defendant's contentions that the Court erred by not admitting evidence regarding its "circle the wagons" investigation following Plaintiff's termination is without merit. Defendant is not entitled to judgment as a matter of law or a new trial.

The Supreme Court set forth the standard for an employee's entitlement to

punitive damages in *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999). Under *Kolstad*, an employee must show that (1) the employer acted with malice or reckless indifference, an inquiry which ultimately focuses on the actor's state of mind; (2) that the employee causing or permitting the unlawful discrimination works in a managerial capacity (3) that the managerial employee was acting within the scope of employment and (4) that the employees managerial employee's unlawful discrimination is not contrary to the good faith efforts to comply with Title VII. *Id.* at 119 S. Ct 2124, 2128-29.

### A.   Knowledge of Plaintiff's Federally Protected Rights

The Eleventh Circuit has noted that the *Kolstad* analysis requires the employee "support a punitive damages award" with evidence "that the defendant acted with malice or reckless indifference to the plaintiff's federally protected rights." *Ferrill v. The Parker Group*, 168 F. 3d 468, 476 (11th Cir. 1999) (citing *Reynolds v. CSX Transp., Inc.*, 115 F.3d 860, 869 (11th Cir. 1997). "Malice means 'an intent to harm' and recklessness means 'serious disregard for the consequences of one's actions.'" *Ferrill*, 168 F.3d at 476. "An employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Kolstad*, 119 S. Ct. at 2125.

Mr. Barthel testified he was aware that it is illegal for an employer to discriminate on the basis because of gender. Mr. Barthel indicated he had attended

numerous seminars on the subject of workplace discrimination. Nevertheless, Mr. Barthel terminated Plaintiff in bad faith that supports the jury's punitive damages award. As evidence of Mr. Barthel's bad faith, Plaintiff presented evidence of Barthel's termination letter and subsequent letter to unemployment. Barthel testified that he reviewed the handbook prior to terminating Plaintiff to make sure the termination complied with the handbook rules. However, the letter shows no inference to the rule he claimed he relied upon. Mr. Barthel referenced the rule back only after receiving an unemployment compensation claim,

After receiving the compensation claim, Mr. Barthel sent a letter to the Alabama Department of Industrial Relation's Unemployment Compensation division that omitted pages of Defendant's handbook that clearly showed that Plaintiff's misconduct fell under the policy of leaving without a supervisor's permission calling for a verbal or written warning, and that the facts showed she was not in violation of that policy at the time of termination. (Def. Trial Exhibit. 8, p. 21). The jury can reasonably accept Mr. Barthel's misrepresenting the facts in a letter to unemployment as a showing of bad faith. Defendant argues that Mr. Barthel could not be acting in bad faith because he opposes all claims for unemployment compensation. However, the issue isn't Mr. Barthel's opposition to the claim, but rather his deliberate omission of the relevant policy handbook portions that applied to Plaintiff's termination. The evidence before the Court

allows a reasonable jury to find that Defendant's decision-maker acted with serious disregard for the consequences of his actions.

### B. Tom Barthel is a managerial employee under the *Kolstad* Analysis[8]

The Supreme Court in *Kolstad* noted that the person in "managerial capacity" need only be "an employee" that is "important, but perhaps need not be the employer's top management, officers, or directors to be acting in a managerial capacity." *Kolstad*, 119 S. Ct. at 2128. The Eleventh Circuit has held that "a Title VII plaintiff must show that the discriminating employee was high up the corporate hierarchy" **or** that upper management "countenanced or approved" the conduct. *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1323 (11th Cir. 1999).[9] Anthony Zellars, the top management of Defendant's Auburn facility, approved the conduct of Mr. Barthel. The testimony of Mr. Zellars and Mr. Barthel showed that Masterbrand is a separate company with three to four autonomous plants with the general manager being the top official at each plant.

---

[8] Defendant does not dispute the third element of the Kolstad analysis. Mr. Barthel testified that he was acting within the scope of his employment as a Human Resources Managers for the MBCI plant when he terminated Plaintiff's Employment.

[9] Defendant argues that no person at MBCI's parent company, FortuneBrand, Inc., took part in the termination decision. Defendant's theory supports the premise that all conglomerate corporations such as Disney, General Electric, or Viacom are immune from punitive damages in the Eleventh Circuit. Title VII was enacted and amended with the express intent of protecting small businesses by limiting jurisdiction to businesses with fifteen or more employees and capping punitive damages based upon the size of the company. The punitive damages were added as a deterrent to companies. However, under Defendant's position, a corporate maze can be created which protects all large publicly traded companies but not smaller companies that still fall within the purviews of Title VII.

The jury heard evidence that shows Mr. Barthel was the Defendant's acting Human Resources Manager. The parties do not dispute that Mr. Barthel is a white male and not a member of the Plaintiff's protected class. Mr. Barthel answered solely to the Plant Manager, Mr. Anthony Zellars. Mr. Barthel was the ultimate decision-maker in Plaintiff's termination. As noted by Defense counsel in closing, Mr. Zellars is the top official in Auburn, Alabama. Mr. Zellars, the top management official at the Defendant's plant of 400 employees, testified that he approved the decision of Mr. Barthel <u>after</u> he decided to terminate the Plaintiff. There can be no dispute that Mr. Zellars countenanced and approved Mr. Barthel's decision Mr. Barthel testified that he is in charge and managed the Human Resources for Defendant's 400 employees. He supervised a staff in order to conduct his duties. Mr Barthel had the authority to hire and fire employees. (See Pl. Ex. 10: memo admonishing Barthel "to develop individuals not terminate."). Plaintiff has satisfied Element (2) of the *Kolstad* analysis.

### C. Barthel did not act in Good Faith

Mr. Barthel's employment decision lacks the good faith actions to show he adhered to Title VII. Plaintiff anticipates Defendant will argue that its Equal Employment policy is evidence of Mr. Barthel's good faith decision making. (Def. Ex. 9: p. 17). Plaintiff concedes that an employer's use of anti-discrimination policies is an important factor in determining good faith. *Kolstad*, 119 S. Ct. at

2129. "However, a policy alone is not sufficient as a matter of law to establish an employer's good faith." *Miller*, 82 F. Supp. 2d at 1310-11 (citing (*E.E.O.C v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1247 (10th Cir. 1999). The Plaintiff, through witnesses Barthel, Murray, and Krogh, has indicated that Mr. Barthel terminated Plaintiff "under the circumstances" that it saw fit to apply an inapplicable portion of its company policy handbook, but directly ignored portions of its company handbook that are directly on point (See Pl. Ex. 1, pg. 21 "leaving without the team leader's approval" and the Absentee Policy on pg. 24). A reasonable jury decided that Mr. Barthel's application of company policy lacked good faith. Mr. Barthel testified that he reviewed the handbook prior to meeting with the Plaintiff. He then wrote a contemporaneous memorandum following Plaintiff's termination to explain the circumstances of the termination. (See Pl. Ex. 10). Mr. Barthel did not reference any portion of the handbook in this memorandum. (See Pl. Ex. 10). However, when the Defendant was forced to pay unemployment compensation, Mr. Barthel cited the rules specifically found on pg. 22 and 23 of the handbook. (See Def. Ex. 7). Mr. Barthel did not show the Unemployment Compensation Department the relevant portion of the handbook on pg 21. The jury could reasonably determine from the evidence that Mr. Barthel lacked good faith if they find that the rules he used did not apply to Plaintiff. The evidence before the Court supported the jury's award of punitive damages is reasonable regarding Element

(4) of the *Kolstad* analysis.

### D.   Defendant is not entitled to JMOL or a New Trial

Defendant contends the Court erred in not admitting evidence regarding its post-termination investigation.[10]  Defendant attempted to offer this irrelevant material as a means to support good faith in complying with the Title VII. Defendant misses the point of "good faith." The question is whether Defendant's decision to terminate the Plaintiff was made in good faith, not that Defendant attempted to determine if it acted in bad faith <u>after</u> the termination decision was made by Barthel. Defendant's actions after the termination are not evidence of good faith, but support the premise that if every employer investigates an employment decision <u>after the fact</u> then a good faith attempt to comply with the law is always present, thus defeating the entire punitive damage remedy made part of Title VII. Plaintiff respectfully submits that exclusion of Defendant's evidence of its post-termination investigation was not in error.

### E.   The Jury's Award of Punitive Damages Should Not Be Vacated

The facts of this case support an award for punitive damages under the *Kolstad* analysis. Defendant terminated Plaintiff through the actions of its managerial employee, the Human Resources Director, Tom Barthel. The decision to terminate Plaintiff was made with reckless indifference to her federally

---

[10] Plaintiff contends that Defendant did not properly preserve this objection.

protected rights. Barthel's decision was approved by the highest ranking official Defendant's place of business. Furthermore, the jury reasonably decided that Mr. Barthel's actions were made in bad faith and rightly awarded the Plaintiff an award of punitive damages.

          Respectfully submitted,

          /s/ Allen D. Arnold
          _____
          Allen D. Arnold

OF COUNSEL:
ARENDALL & ASSOCIATES
2018 Morris Avenue, Third Floor
Birmingham, Alabama 35203
205.252.1550 - Office
205.252.1556 – Facsimile

## CERTIFICATE OF SERVICE

I have filed the foregoing with the Clerk of the Court using the CM/ECF system on October 18, 2007, which will forward a copy to:

Mark J. Romaniuk
Christopher C. Murray

          /s/ Allen D. Arnold
          _____
          Of Counsel