# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KIM FOREMAN, ) | |
| ) | |
| Plaintiff, ) | CAUSE NO. 3:06-cv-449-MHT |
| ) | |
| v. ) | |
| ) | |
| MASTERBRAND CABINETS, INC., ) | |
| ) | |
| Defendant. ) | |

### DECLARATION OF LUANNE CLAYTON

I, Luanne Clayton, declare under penalty of perjury as follows:

1. I am an adult, over age 18, of sound mind and competent to testify as to all matters contained in this Declaration. All matters contained in this Declaration are within my personal knowledge or were obtained in the regular course of my duties and responsibilities as an agent of my employer.

2. I am the Human Resources Manager for Thermo Fisher Scientific, which is the parent company of Capitol Vial, Inc. I have held this position since June 21, 2004. My duties and responsibilities in this position include managing the Human Resources Department for Capitol Vial.

3. As the Human Resources Manager, I am the custodian of all documents and information relating to employees' employment, such as their dates of hire and termination, positions, and compensation as well as the company's policies and procedures. These documents and information are compiled and maintained in the ordinary course of Capitol Vial's business. I have reviewed documentation and

information regarding the employment and compensation of Kim Foreman as well as spoken to her former supervisor, Mr. Vernon Jones, prior to making this statement.

4. Kim Foreman began her employment with Capitol Vial on June 12, 2005. She worked in Capitol Vial's manufacturing operation in Auburn, Alabama. The position held by Ms. Foreman at the time she resigned was the Mold Operator position, which is a Grade 2 position.

5. Ms. Foreman's final rate of pay as a Mold Operator in February 2006, was $10.25 per hour.

6. Effective February 28, 2006, Ms. Foreman voluntarily resigned from her employment at Capitol Vial. Ms. Foreman provided Capitol Vial with a written notice confirming her resignation. Ms. Foreman did not indicate to Capitol Vial either orally or in her written notice that her decision to quit her job was related to her work schedule or to her babysitting needs.

7. Capitol Vial did not ask Ms. Foreman to resign her employment. At the time she quit, Ms. Foreman's performance was acceptable and she had the opportunity to continue her employment with Capitol Vial.

8. If Ms. Foreman had maintained her employment as a Mold Operator through today's date, her current rate of pay at Capitol Vial would be $11.30 per hour.

9. Ms. Foreman's working schedule as a Mold Operator was three twelve-hour shifts per week, plus one six hour shift per week (hereafter, the "Twelve-Hour Shift Schedule"). Because the twelve-hour days in this schedule include a 30-minute unpaid lunch period, the Twelve-Hour Shift Schedule results in a 40-hour

workweek. All Mold Operators work this Twelve-Hour Shift Schedule.

10. There are other Grade 2 positions within Capitol Vial's Auburn facility that work a more traditional schedule of eight hours per day, five days per week. These Grade 2 positions include Quality Control as well as positions within the warehouse. When one of these positions becomes available, it is posted, and current employees within the facility may bid for the job. Ms. Foreman could have bid for open positions with more traditional work schedules. All of the Grade 2 positions pay the same hourly rate as the Mold Operator position.

11. Ms. Foreman was eligible to bid for a job transfer within Capitol Vial's Auburn facility.

12. Capitol Vial provides all of its employees with a copy of its employee handbook. Attached hereto as Exhibit A is a true and correct copy of Capitol Vial's Job Posting policy which is contained within its employee handbook. This policy sets forth the process and criteria for bidding for a job transfer.

13. Ms. Foreman could have also bid for a Grade 1 position. The comparable hourly rate of pay for a Grade 1 position is $9.75, or .50¢ per hour less than a Grade 2 position. There are significantly more Grade 1 than Grade 2 positions. It is not uncommon for employees who do not like working the Twelve-Hour Shift Schedule to bid for a Grade 1 position to obtain a transfer to a more traditional eight hours per day, five days per week schedule. The employee can then later bid for a Grade 2 position when it becomes available which has a more traditional work schedule in order return to the higher level of pay. The ability to bid again is subject to the rule that an employee

3

who transfers to a new position must wait six months before bidding for another transfer. This certainly would have been an option available to Ms. Foreman.

14. At the request of Mr. Romaniuk, I reviewed all job applications for Grade 1 and Grade 2 positions for the six (6) months prior to Ms. Foreman's resignation. Based upon my review, there is no indication that Ms. Foreman bid for any position during this time period.

15. Consistent with the above review, I do not personally recall any interaction with Ms. Foreman prior to the resignation of her employment in which she expressed any concerns or problems working the 12-hours per day, three days per week shift associated with the Mold Operator position. I also do not personally recall Ms. Foreman making any inquiry regarding her ability to transfer to a job working a more traditional shift.

16. I also spoke with current Capitol Vial supervisor, Vernon Jones, who was Ms. Foreman's supervisor at the time of her resignation. Mr. Jones also has no recollection of Ms. Foreman expressing any concern about the Mold Operator schedule prior to her resignation nor does he recall Ms. Foreman inquiring about the ability to transfer to a job with a more traditional schedule.

17. I have advised Mr. Romaniuk that Ms. Foreman's written notice of resignation is contained within her personnel file. However, it is the policy of Capitol Vial not to produce documents contained within an employee's or former employee's personnel file without the issuance of a subpoena. If a subpoena is issued, Capitol Vial will make Ms. Foreman's personnel file available for inspection and copying.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this \_\_ day of October, 2007, at Auburn, Alabama.

_Luanne Clayton_
Luanne Clayton

# EXHIBIT A
# to
# Declaration of LuAnne Clayton

**Thermo Fisher**
S C I E N T I F I C

# JOB POSTING

Job postings provide associates with the opportunity to apply for position openings within Capitol Vial, Inc. This policy is an integral part of the recruitment process for it demonstrates a good-faith commitment to our associates.

All vacancies are posted. In some situations, placement of an associate without a posting may be warranted such as: Associates returning to a job after an extended leave of absences, associates displaced due to organizational changes resulting in the elimination of their positions, or associates needing accommodations for disability.

Performance in your current position will be reviewed and strongly considered in the decision making process. After qualifications and performance have been reviewed, length of service with the company may also be considered.

## Procedure:

I. JOB POSTINGS/HOURLY

　　A. Upon receipt of an approved Personnel Change Form, Human Resources may post the opening on the Human Resources Board and at Capitol Vial's satellite locations for a period of three days. External recruitment may occur simultaneously with the internal job posting.

　　B. Hourly associates interested in applying for a posted position must sign up during the three-day posting period.

　　C. For a signature to be valid it must be the associate's original signature on the official signature-posting list. Associates will not be allowed to sign or remove the signature of another associate.

　　D. After the close of the posting period, Human Resources will evaluate all applications and make recommendations to the supervisor/manager who is responsible for filling the open position.

**ThermoFisher**
SCIENTIFIC

E. Interviews are not guaranteed to internal candidates; however, if an interview is scheduled, the supervisor/manager of the associate applying for the job is informed and will notify the candidate/associate of the interview time and date.

F. Upon final selection, the elected candidate will be notified by Human Resources of their selection. All interviewed candidates not selected will be notified verbally by Human Resources. A transfer is then arranged for the selected candidate, which is generally completed within two weeks.

G. In order to qualify for promotion or transfers into posted job vacancies, associates must me the following requirements:

1) May not be on probation or be in an introductory period (3 months/90 days).
2) May not have a disciplinary warning within the previous three months of posting.
3) Must have completed at least 6 months of service in present position, or for shift changes, completion of the introductory period and with management approval.
4) Must meet minimum requirements and be able to perform the essential functions of the posted position.
5) Have a satisfactory or better performance record, as indicated by last performance review.

H. Supervisor/managers will select candidates for posted positions based on qualifications, performance, training, attendance, interpersonal skills and teamwork.

I. The associate awarded a posting will have a 3 month/90 day introductory period in their new position. If an associate is not meeting the performance requirements for the position, they can be disqualified from the position. The associate may or may not be able to return to their previous position, shift or pay classification. The associate will be placed in an available opening based on production requirements at that time. The associate will be required to complete the six-month freeze from the original posting date before applying for a new position.

**ThermoFisher**
SCIENTIFIC

    J. An associate who has been awarded and accepts a posted position must remain on that job for at least 6 months before they are eligible to bid on a new posting.

## II. MANAGEMENT RESPONBILITIES

    A. Capitol Vial, Inc. reserves the right to make staffing changes based on the operational needs of the company at any time

    B. If, for career advancement purposes, a department desires to promote or transfer an associate within the department, the job need not be posted.

Management's commitment and communication are essential for maintaining the credibility of this process. Interviews may not be conducted, recruiters contacted, nor a job advertised until the job posting procedure has begun. Management reserves the right to go outside the company to solicit applicants.