UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KIM FOREMAN, ) | |
| ) | |
| Plaintiff, ) | CAUSE NO. 3:06-cv-449-MHT |
| ) | |
| v. ) | |
| ) | |
| MASTERBRAND CABINETS, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND
ITS MOTION IN THE ALTERNATIVE FOR A NEW TRIAL**

MasterBrand Cabinets, Inc. ("MasterBrand") maintains that there is no legally sufficient basis for the jury's verdict in favor of the Plaintiff on sex discrimination or punitive damages.  (*See* Fed. R. Civ. P. 50(a)(1) and (b).)  Plaintiff failed to present any evidence of a similarly situated male employee who had engaged in "nearly identical" misconduct but who received discipline that was less severe.  Plaintiff also failed to present any legally sufficient evidence that the termination of her employment was a pretext for intentional sex discrimination.  With respect to punitive damages, Plaintiff failed to present any evidence that a manager acted with malice or reckless indifference to her federally protected rights, that any allegedly discriminating manager was high up the corporate hierarchy, or that higher management had countenanced or approved any manager's allegedly discriminating behavior.  Finally, the evidence was undisputed that any manager's discriminatory conduct toward Plaintiff would have been contrary to MasterBrand's good faith efforts to comply with Title VII, as shown by the Company's comprehensive anti-discrimination policies and its internal procedures for reporting, investigating, and redressing workplace discrimination.

Plaintiff fails to respond substantively to these arguments in her Response To Defendant MasterBrand Cabinets, Inc.'s Renewed Rule 50 Motion And Concurrent Rule 59 Motion ("Plaintiff's Response"). This Reply Brief is necessitated by Plaintiff's misrepresentation of basic facts and misapplication of legal principles governing her claims.

I. **To Make Out A Prima Facie Case, Plaintiff Had To Present Evidence Of A Male Employee Who Had Abandoned His Job Duties Without Notice During Core Production Hours**

Plaintiff does not dispute that she was required to produce evidence of a similarly situated male employee who was treated more favorably in order to make out a prima facie case of discrimination under *McDonnell-Douglas*. (Pl.'s Resp. at 2.) She also does not dispute that for a male employee to be "similarly situated" as a matter of law, the "quantity and quality" of that male employee's misconduct must have been "nearly identical" to that of her own. (Pl.'s Resp. at 3.) *See Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).[1] Finally, Plaintiff does not dispute the basic facts of her misconduct. However, Plaintiff's attempt to overly generalize the similarly situated analysis is inconsistent with the law and should be rejected by the Court. In particular, focusing solely upon an employee's departure from work irrespective of the circumstances is insufficient to establish legally defensible comparators.

In her Response, Plaintiff argues that Thomas Clack's departure from work was nearly identical to her own departure. (*See, e.g.*, Pl.'s Resp. at 3, 4.) Since the evidence demonstrates that, unlike Foreman, Clack's misconduct consisted of leaving at the end of his 11.4 hour shift <u>after</u> core production hours were over and <u>after</u> his own duties had been finished for the day, Plaintiff's contention is unsupported by either the facts or the law.

---

[1] The Eleventh Circuit has explained that this "nearly identical" requirement serves an important function by "prevent[ing] courts from second-guessing employers' reasonable decisions and confusing apples and oranges." *Wright v. Sanders Lead Co.*, No. Civ. A. 2:05-cv-371-ID, 2006 WL 905336, at *8 (M.D. Ala. Apr. 7, 2006), *aff'd* 217 Fed. Appx. 925 (11th Cir. 2007) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)).

Plaintiff does not dispute that an employee's abandonment of his/her job duties without notice during core production hours (i.e., while the operation's various production lines were running) adversely impacts management's ability to plan and complete production in order to ship on time and complete. (MasterBrand's Opening Br. at 9.)[2] Plaintiff also does not dispute that, in contrast, the potential adverse impact caused by Clack leaving <u>after</u> production had ended, <u>after</u> his shift was finished, and <u>after</u> his job duties had been completed was significantly different. Indeed, unlike Plaintiff, there was no evidence that Clack abandoned his job duties at all as opposed to simply failing to check in with his supervisor before departing for the day. *Cf. Holston v. The Sports Authority*, 136 F. Supp.2d 1319, 1325 (N.D. Ga. 2000) *aff'd* 251 F.3d 164 (11th Cir. 2001) (holding that the plaintiff's abandoning of her job duties mid-shift without notice was not nearly identical to comparator's failing to appear for work at all because only plaintiff's misconduct "could result in a work flow stoppage and backlog that could decrease productivity").

Plaintiff attempts to ignore the significant factual differences by attempting to establish the "nearly identical" standard in the most generic of terms. Plaintiff contends that she was similarly situated to Clack because they both left work "without notifying any member of management." (Pl.'s Resp. at 4, 5.) However, courts have repeatedly rejected attempts such as Plaintiff's to evade the "nearly identical" misconduct requirement by means of overly generalized descriptions.

---

[2] Indeed, one of Plaintiff's own trial exhibits explicitly explains MasterBrand's need to receive prior notice of employee absences to allow supervisors to plan work appropriately. The employee handbook states that prior notice of employee absences is required because "[e]very associate's position is essential to the operation of our facility" and "[a]ny absence or tardiness from the job creates a hardship to fellow team members and the business as a whole." (Pl.'s Trial Exh 1 at 23.) The handbook further explains that employees are thus required to report absences prior to the workday to "<u>give[] your team leader the opportunity to plan work around your absence</u>." (Pl. Trial Exh. 1 at 23.) Although these provisions of the handbook come from MasterBrand's attendance policy, which is not itself relevant to Plaintiff's misconduct of abandoning her job duties, the reasoning behind this policy further supports MasterBrand's witnesses testimony at trial about the disruptive effects of an employee's simply leaving her job duties without notice in the midst of core production hours.

In *Wright*, for example, the plaintiff's employment was terminated because the defendant employer believed he had tried to cover up work rule violations committed by his subordinate. *Wright,* 2006 WL 905336, at *9. In support of his claim of race discrimination, the plaintiff contended that he was similarly situated to a white employee who had not been discharged after he had been found smoking on company property and in possession of tobacco products in violation of company rules. *Id.* The court concluded that the employees had not engaged in "nearly identical" misconduct as required under Eleventh Circuit law. The court observed that the plaintiff's "reverberating argument is that both Plaintiff and [his comparator] 'broke a rule'," but the court explained that "to fashion the comparison at this level of generality results in too broad a comparison for purposes of establishing a similarly-situated individual." *Id.* at *9. The court noted that "an employee cannot prevail simply by proffering generic similarities in the misconduct." *Id.* at *8. In light of the evidence produced, the court thus concluded that "[f]actually, the infractions [of the plaintiff and his alleged comparator] are as different as apples and oranges" and held that these "[s]ubstantive differences in employee misconduct show that the employees are not similarly situated for purposes of comparing disciplinary sanctions." *Id.* at *9. The court consequently granted summary judgment in favor of the defendant. *See also Bates v. Greyhound Lines, Inc.*, 81 F.Supp.2d 1292, 1300-01 (N.D. Fla.), *aff'd without op.*, 239 F.3d 369 (11 Cir. 2000) (providing analysis of specificity required to meet similarly situated prong); *Richardson v. Newburn Enlarged City Sch. Dist.*, 984 F.Supp. 735, 746 (S.D.N.Y.1997) ("The level of generality at which [plaintiff] attempts to compare the various instances of misconduct – i.e., 'poor judgment' – is contrary to case law and would render disparate treatment analysis meaningless."); *Raybon v. Alabama Dep't of Pub. Safety*, Civ. A. No. 00-D-391-N, 2001 WL 611194, *4 (M.D.Ala. April 19, 2001) (rejecting employees' contention as overbroad that

4

other employees who engaged in "generic moral and ethical misconduct" were similarly situated state troopers).

Plaintiff argues in her Response that the level of generality at which her misconduct is to be characterized for purposes of the "nearly identical" analysis must be the same as that used in MasterBrand's termination letter. (*See* Pl.'s Resp. at 2-3, 4, 8 (noting that Plaintiff's termination letter stated that she had "left the plant without notifying any member of management" without reference to the time of day or core production hours).) Plaintiff does not cite any authority for the proposition that an employer's documentation in the ordinary course of business must recognize and be completely on point with the legal standard associated with disparate treatment. Furthermore, as the cases cited *supra* demonstrate, courts determine the appropriate level of generality for characterizing a plaintiff's and her alleged comparator's misconduct based on the facts presented. *See, e.g.*, *Wright,* 2006 WL 905336, at *9. Here, the uncontested evidence showed that Plaintiff abandoned her job duties without notice in the midst of production (known as core production hours) and that Clack did not. The undisputed facts further showed that there was a material difference in terms of planning for employee absences during core production hours as opposed to addressing an employee's departure after production had ended and the work for the day was either completed or substantially completed. Plaintiff's attempt to equate her absence for 6 1/2 hours in the middle of the workday to a matter of minutes 11.4 hours into Clack's workday is the proverbial apples to oranges comparison. Accordingly, as a matter of law the Plaintiff and Clack did not engage in nearly identical misconduct.

Plaintiff was also not similarly situated to DuWayne Nazworth. The undisputed facts demonstrated that Nazworth gave notice to his supervisor prior to leaving his job duties on

September 24, 2004 due to a medical condition.  (MasterBrand's Opening Br. at 10-12.)[3]  In her Response, Plaintiff contends that there was a factual dispute over whether Nazworth had given notice on the ground that Clack testified he had to "find a replacement [for Nazworth] unexpectedly during 'core production' hours.'"  (Pl.'s Resp. at 6, n.2.)  However, the evidence established that Sandy Smith, not Clack, was Nazworth's supervisor.[4]  There was no evidence that Nazworth was required to report his departure to Clack in addition to Smith.  Furthermore, Clack's being called upon to find a replacement for Nazworth is simply not probative of whether Nazworth informed <u>Smith</u> before he left.  Accordingly, there was no genuine issue of fact as to whether Nazworth gave notice to Smith before leaving on September 24, 2004, as he was required to do and as Nazworth testified he did.

Moreover, the undisputed evidence demonstrated that MasterBrand's human resources department determined Nazworth had informed Smith that he was leaving and therefore concluded he would not be disciplined.  (MasterBrand's Opening Br. at 11.)  Plaintiff incorrectly states that Nazworth was transferred to a different position.  (Pl.'s Resp. at 6.)  It is undisputed that Nazworth was <u>not</u> transferred, despite his supervisor's completion of an Hourly Status Form.  This Hourly Status Form was never approved, and Nazworth continued working in his existing position.  (MasterBrand's Opening Br. at 11.)

---

[3] Plaintiff also refers to another occasion when Clack contended Nazworth left work without giving notice. (Pl.'s Resp. at 6.) Not only did Nazworth deny this had ever occurred, but Clack's testimony – even if accepted as true for purposes of this motion – was too vague to establish that this other alleged departure made Nazworth and Plaintiff similarly situated.  For example, there is no information concerning what time of day Nazworth allegedly left, what job duties he allegedly left, how long he was allegedly gone, or when his departure was allegedly discovered.  Accordingly, this other purported departure by Nazworth – which was not alleged in Plaintiff's Complaint, identified in her discovery responses, or referred to in the Pretrial Order as a basis for her disparate treatment claim – is not sufficient evidence to show that she and Nazworth engaged in nearly identical misconduct.

[4] In fact, there was a significant issue at trial as to whether Clack really had any personal knowledge from a supervisory standpoint about Nazworth's employment.  The overwhelming evidence presented at trial was that while Clack was a lead person (lead persons were called Support Techs), he was not Nazworth's lead person.  In contrast to Clack's testimony, Buddy Smith, Norm Krogh and Nazworth testified that Clack <u>was not</u> the lead person for Nazworth's department.

6

Plaintiff also incorrectly states that Nazworth "received a write up" for leaving work. (Pl.'s Resp. at 6-7, citing Pl. Exh. 5.) However, the "write up" that is referenced is the Hourly Status Form which is nothing more than an administrative form used to track changes in employees' position assignments or pay. (*See* Pl. Exh. 5.) As noted above, the Hourly Status Form, which is <u>not</u> used for discipline, was never approved or implemented. Plaintiff did not present any evidence that Nazworth's departure from work was in any way inappropriate.

Finally, Plaintiff entirely fails to address the Eleventh Circuit authority holding that an employee who admits misconduct to her employer is not similarly situated to one who disputes the alleged misconduct. (MasterBrand's Opening Br. at 11, citing *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000).) Consistent with this authority, even assuming *arguendo* that there were a genuine issue of fact regarding whether Nazworth gave notice to his supervisor prior to leaving on September 24, 2004, Nazworth's steadfast denial of engaging in such misconduct differentiates his conduct from that of Plaintiff, who freely admitted her unannounced job abandonment to multiple MasterBrand managers. In light of Nazworth's denials and Plaintiff's admissions, Nazworth and Plaintiff were not similarly situated as a matter of law.

Accordingly, Plaintiff failed to present legally sufficient evidence of even a prima facie case of sex discrimination.

**II.   To Support Her Discrimination Claim, Plaintiff Was Required To Present Evidence That MasterBrand's Explanation For Terminating Her Employment Was False And A Pretext For Discrimination**

In her Response, Plaintiff first argues that the evidence she presented purportedly making out a prima facie case of discrimination is sufficiently strong to stand alone as evidence of pretext. (*See* Pl.'s Resp. at 9-10.) Yet, as set forth above, Plaintiff's evidence failed to make out a prima facie case of discrimination because she could not identify any male comparator who

7

engaged in nearly identical misconduct but received more favorable treatment. Moreover, even assuming for the sake of argument that Plaintiff's evidence were sufficient to show a prima facie case, Plaintiff fails to identify any specific facts that would also demonstrate that MasterBrand's legitimate, non-discriminatory reason for her termination – her admitted misconduct – was false and that discrimination was the real reason. Plaintiff's conclusory assertion that her purported evidence of a prima facie case simultaneously demonstrates pretext fails as a matter of law. *See, e.g.*, *Boyin v. Bank of America, Corp.*, 162 Fed. Appx. 837 (11th Cir. 2005) *cert denied* 126 S. Ct. 2931 (2006) (a plaintiff "must . . . present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext" and "[m]ere conclusory allegations and assertions will not suffice").

Plaintiff alternatively argues that she demonstrated pretext by allegedly offering evidence that MasterBrand deviated from its internal procedures in terminating her employment. (Pl.'s Resp. at 10-12.) However, Plaintiff fails to articulate what MasterBrand policy she now contends was deviated from. (*Id.*) Moreover, Plaintiff failed to offer any legally sufficient evidentiary basis to find that MasterBrand's policies and procedures required what Plaintiff claimed they required. Specifically, there was no evidence that MasterBrand's policies mandated that the Company issue Plaintiff only a written warning for her admitted misconduct of leaving her job duties without notice for the majority of her scheduled shift during core production hours. (MasterBrand's Opening Br. at 15-20.)[5]

---

[5] Plaintiff contends in her Response that Barthel terminated her employment under an "inapplicable portion of [MasterBrand's] company policy handbook." (Pl.'s Resp. at 17.) Plaintiff offered absolutely no evidence at trial to support her assertion that the provisions of the handbook allowing for immediate termination of her employment were "inapplicable" to her. At most, the evidence at trial showed that MasterBrand, under its disciplinary policy, had the ability to take into consideration both extenuating and mitigating circumstances when addressing Plaintiff's admitted misconduct.

8

Significantly, Plaintiff fails to acknowledge that MasterBrand's employee handbook expressly and repeatedly states that MasterBrand retains the right to take the circumstances of a situation, both extenuating and mitigating, into consideration when issuing disciplinary action for employee misconduct. (*See* MasterBrand's Opening Br. at 17-18.) Plaintiff also fails in her Response to point to any other evidence of what MasterBrand's disciplinary policies actually were in practice. Instead, Plaintiff again simply misrepresents basic facts. For example, Clack was disciplined for both leaving work at the end of an 11.4 hour shift without notifying management and for engaging in conduct that may potentially damage company property. In both instances, the employee handbook provided a guideline for the appropriate disciplinary action based upon the circumstances associated with the offense. Clack was issued a written warning and demoted from his lead person role as a result of his conduct. The company took into consideration the mitigating circumstances that Clack's inappropriate actions came at the end of a long work day and did not have significant impact upon the company's ability to meet its production schedule. In this regard, Clack's circumstances when compared with those of the Plaintiff differed significantly and cannot merely be broadly categorized as the same offense with differing outcomes. Moreover, evidence that Clack was demoted is hardly evidence that MasterBrand had a standard practice of simply issuing written warnings for any unannounced departure from work by an employee, no matter what the surrounding circumstances of the employee's misconduct.

Accordingly, Plaintiff's Response fails to point to any legally sufficient evidentiary basis for a jury to find that MasterBrand deviated from any alleged internal policies or that Plaintiff's termination for her admitted misconduct was a pretext for intentional sex discrimination.

**III.    To Support Her Claim For Punitive Damages, Plaintiff Was Required To Present Evidence That A MasterBrand Manager Acted With Malice Or Reckless Disregard For Her Federally Protected Rights**

Plaintiff contends she presented evidence that Tom Barthel acted with "malice" because, in his role as Human Resources Manager, he opposed her claim for unemployment compensation, attached to his opposition a portion of the handbook that he believed applied to her misconduct, but did not attach to his opposition a portion of the handbook that she contended should have applied to her misconduct. (Pl.'s Resp. at 14-15.)  As an initial matter, a mere disagreement between Plaintiff and a MasterBrand manager over which provision(s) of the handbook covered Plaintiff's admitted misconduct is not, standing alone, evidence that the MasterBrand manager was motivated by malice or bad faith.  Furthermore, an employer has a right to challenge the award of unemployment compensation benefits.  In this adversarial format, there is no obligation on the part of an employer to make the claimant's case.  In other words, the claimant, in this case the Plaintiff, had an opportunity to present whatever evidence she deemed relevant to obtain an award of unemployment compensation benefits.  Taken to its logical conclusion, if an employer's role in contesting entitlement to unemployment benefits automatically justifies an award of punitive damages, there will be a significant chilling effect associated with an employer's ability to exercise its legal rights.

More significantly, Barthel's actions in opposing Plaintiff's unemployment compensation claim are irrelevant to whether Plaintiff's <u>termination</u> warranted punitive damages. Plaintiff's Title VII claim is, of course, based on her termination, not on her claim for unemployment compensation.  Moreover, the uncontested evidence at trial was that Barthel routinely opposed all claims for unemployment compensation, and there was absolutely no evidence that his opposition was based on an employee's sex, race, or any other protected classification.  Additionally, there was no evidence that the manner in which he defended

10

MasterBrand's interests in regard to Plaintiff's claim were any different than the protocol utilized in regard to any other unemployment compensation claim.

Accordingly, because Barthel's action in opposing Plaintiff's claim for unemployment compensation is irrelevant to the punitive damages aspect of her Title VII claim, and because Plaintiff failed to identify any evidence that Barthel acted with malice or reckless indifference toward her federally protected rights when he terminated her employment, Plaintiff's claim for punitive damages fails as a matter of law.

**IV.    To Support Her Claim For Punitive Damages, Plaintiff Must Present Evidence That A Discriminating Employee Was A Member Of Higher Management Or That Upper Management Countenanced And Approved Of the Discrimination**

Plaintiff does not dispute that she had to present evidence that MasterBrand's higher management was involved in her termination in order for any allegedly discriminating conduct to be imputed to MasterBrand for purposes of an award of punitive damages. *See Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1323 (11th Cir. 1999). Plaintiff contends in her Response that Anthony Zellars, the General Manager of the Auburn facility, and Tom Barthel, the Human Resources Manager of that facility, were members of higher management. (Pl.'s Br. at 15.) Plaintiff, again, misrepresents the facts in support of this contention. Specifically, she asserts that MasterBrand is a company with only "three or four autonomous plants." (Pl.'s Resp. at 15.) There was no evidence supporting this assertion offered at trial.

In fact, in addition to MasterBrand corporate headquarters in Jasper, Indiana, MasterBrand has 20 manufacturing operations and 13 distribution centers. (Affidavit of Michael

11

G. Schmitt ("Schmitt Aff.") at ¶4 (attached hereto as Exhibit A).)[6] MasterBrand presently employees approximately 12,500 employees in its various operations across Canada, Mexico and the United States. (Schmitt Aff. ¶11.) MasterBrand's officers and senior management team are located at its corporate headquarters in Indiana. (Schmitt Aff. ¶3.) All of the primary manufacturing operations, such as the Auburn, Alabama operation, have a General Manager and a Human Resources Manager. (Schmitt Aff. ¶5.) Eighteen of the 20 manufacturing operations fall into this category. (Schmitt Aff. ¶5.) Employment decisions involving production employees at Auburn and similar operations are typically made within the operation and do not involve regional management and/or corporate headquarters. (Schmitt Aff. ¶¶2 and 9.)

As the General Manager of the Auburn, Alabama operation in 2005, Zellars' authority and responsibility was limited to the Auburn operation. (Schmitt Aff. ¶6.) Similarly, when Barthel was the Human Resources Manager for the Auburn, Alabama operation in 2005, the scope of his authority and responsibility was also limited to the Auburn operation. (Schmitt Aff. ¶7.)[7] Zellars' and Barthel's roles at Auburn were consistent with MasterBrand's business model. (Schmitt Aff. ¶8.)

The only managers that Plaintiff alleges were involved in her termination were Zellars and Barthel, both of whom had responsibilities and authority limited to a single MasterBrand location. There is no evidence that any manager outside of Auburn was involved in or even had knowledge of their decision to terminate Plaintiff's employment. Accordingly, setting aside Plaintiff's misrepresentations about MasterBrand's size, it is clear that Plaintiff

---

[6] Although the burden of proof was on Plaintiff to establish the elements of her claim for punitive damages, including that any managers involved in her termination or approving her termination were members of MasterBrand's higher management, MasterBrand respectfully submits this additional evidence in the event it may be helpful to the Court in assessing Plaintiff's entirely unsupported assertion in her Response Brief about the size of MasterBrand's operations.

[7] Schmitt's Affidavit in this regard simply confirms the testimony presented by Zellars and Barthel at trial.

failed to present any evidence that any member of MasterBrand's <u>higher</u> management either was responsible for the termination of her employment or countenanced and approved of any discriminatory conduct toward her.

**V.     Plaintiff Failed To Present Any Evidence To Dispute MasterBrand's Good Faith Efforts To Comply With Title VII**

Finally, Plaintiff does not dispute that a corporate defendant has an affirmative defense to a claim for punitive damages where the corporation shows that an individual manager's discriminatory conduct was contrary to the corporation's good faith efforts to comply with federal law. *See Kolstad v. American Dental Association*, 527 U.S. 526, 545 (1999). Instead, Plaintiff appears to entirely miss the point, arguing incorrectly that MasterBrand, to establish this affirmative defense, had to show that the <u>individual</u> <u>manager</u> who allegedly discriminated against her did so in good faith. (Pl.'s Resp. at 16-18.) This is simply not the law, and it makes no sense. The relevant question is whether <u>MasterBrand's</u> antidiscrimination efforts were in good faith. Plaintiff presented absolutely no evidence that they were not. Consequently, there was simply no evidentiary basis to find that any discrimination by Barthel or Zellars was not contrary to MasterBrand's good faith efforts to comply with Title VII.

**VI.    Conclusion**

For the reasons set forth in its briefs, MasterBrand's renewed motion for judgment as a matter of law on Plaintiff's sex discrimination and punitive damages claims should be granted and judgment entered on these claims in MasterBrand's favor. Alternatively, MasterBrand should be granted a new trial on these claims.

Respectfully submitted,

BAKER & DANIELS LLP

By: s/ Mark J. Romaniuk
    Mark J. Romaniuk, (IN Bar #15255-49)
    Christopher C. Murray (IN Bar #26221-49)
    (both admitted *pro hac vice*)
    Attorneys for MasterBrand Cabinets, Inc.

300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
mark.romaniuk@bakerd.com
christopher.murray@bakerd.com

CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2007, the foregoing was filed electronically.  Notice of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system.

    David R. Arendall
    Allen D. Arnold
    Stephanie S. Woodard
    ARENDALL & ASSOCIATES
    2018 Morris Avenue
    Birmingham, Alabama  35203

    s/ Mark J. Romaniuk
    Mark J. Romaniuk

BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000

BDDB01 4922996v1