UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

KIM FOREMAN,                              )
                                          )
            Plaintiff,                    )        CAUSE NO. 3:06-cv-449-MHT
                                          )
      v.                                  )
                                          )
MASTERBRAND CABINETS, INC.,               )
                                          )
            Defendant.                    )

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S
PETITION FOR ATTORNEYS' FEES**

Pursuant to this Court's Order dated October 3, 2007, Defendant, MasterBrand

Cabinets, Inc. ("MBCI"), respectfully submits this brief in opposition to Plaintiff Kim Foreman's

("Plaintiff's") Petition for Attorneys' Fees (Doc. No. 80) and her Supplemental Brief In Support

Of Motion For Attorneys Fees (Doc. No. 91).  Plaintiff seeks an award of over $100,000 in

attorneys fees based on proposed hourly rates that are far in excess of the prevailing rates within

the local community and based on time records rife with errors and duplicative entries.  Because

Plaintiff's request for attorneys fees lacks reliable evidentiary support, Plaintiff's request for

attorneys fees should be denied.  Alternatively, any award of attorneys' fees to Plaintiff's counsel

should be substantially less than the inflated amount they have requested.

**ARGUMENT**

An award of reasonable attorneys' fees under 42 U.S.C. § 1988 is calculated first

by "multiplying the number of hours reasonably expended on the litigation times a reasonable

hourly rate."  *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)

(citation omitted).  "This 'lodestar' may then be adjusted for the result obtained."  *Id.*  The "fee

applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Id.*

I.    **The Amount Of Time For Which Plaintiff's Counsel Seeks Fees Lacks Evidentiary Support And Is Unreasonable**

Plaintiff's counsel seek attorneys fees for David Arnold based on 155.1 hours worked and for Allen Arnold based on 171.6 hours work.  (*See* Exhibit M To Plaintiff's Supplemental Brief In Support Of Motion For Attorney's Fees (Doc. No. 91) (hereafter "Exh. M to Pl.'s Supplemental Br.")).  However, the amount of time that Plaintiff's counsel propose should be used in calculating the "lodestar" is substantially exaggerated with erroneous, inflated, and improper entries.

A.    **Plaintiff's Counsels' Billing Records Are Unreliable And Fail To Demonstrate "Billing Judgment"**

The Eleventh Circuit has made clear that fee applicants must exercise "billing judgment." *Am. Civil Liberties Union*, 168 F.3d at 428 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  This means that they must exclude from their fee applications "excessive, redundant, or otherwise unnecessary [hours]," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Id.*  If a fee application fails to exercise billing judgment, then "courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" *Id.*

Here, Plaintiff's counsel's billing records demonstrate a blatant lack of billing judgment.  For instance, Plaintiff's counsels' billing records include the <u>same</u> <u>entries</u> <u>more</u> <u>than</u> <u>once</u>, meaning that their fee request is based in part on multiple billings for the same activity. Examples of duplicative billing include the following:

- Plaintiff *twice* seeks fees for a "Rule 37 letter to Defendant" on January 23, 2007.  *See* Exh. D To Pl.'s Supplemental Br. (1/23/2007, David, 1.0 hours for the "Rule 37 letter to Defendant")

- Plaintiff *twice* seeks fees for a conference with opposing counsel that occurred on July 28, 2006.  *See* Exh. C to Pl.'s Supplemental Br. (7/28/2006, Allen, .50 hours for "Conference with Chris Murray"); and Exh. E To Pl.'s Supplemental Br. (7/28/2006, Allen, .50 hours for "Conference with Chris Murray").

- Plaintiff *twice* seeks fees for reviewing a court order on May 15, 2007.  *See* Exh. D To Pl.'s Supplemental Br. (5/15/2007, David, .20 hours for the "Receipt and review of Order denying Motion to Amend"); and Exh. F To Pl.'s Supplemental Br. (5/15/2007, David, .20 hours for the "Receipt and review of Order denying Motion to Amend").

- Plaintiff *twice* seeks fees for a letter excusing Plaintiff from work.  *See* Exh. F To Pl.'s Supplemental Br. (8/23/2007 and 8/31/2007, David, .50 and .2 hours respectively for "Letter for client for excuse from work").

In addition, many of the time entries submitted by Plaintiff's counsel are erroneous or excessive on their face.  Examples of such time entries include the following:

- 5/18/2007: Arendall claims a total of 1 hour (at $350.00) for clerical or paralegal work such as preparing a civil cover sheet, mailing and filing complaint.  *See* Exh. D To Pl.'s Supplemental Br. (5/18/2007, David, 1.00 hours for "preparation and filing of complaint, summons, request for service by certified mail, civil cover sheet, exhibits, mail for service on Defendant");

- 5/24/2007:  Arnold claim .70 hours to calendar obligation under the Rule 16 Order.  *See* Exh. G To Pl.'s Supplemental Br. (5/24/2007, Allen, .70 hours for "Calendared remaining obligations under Rule 16 Order in preparation for trial);

- 6/28/2006 and 7/3/2006: Arendall claims a total of 1.4 hours to review a file received from the Equal Employment Opportunity Commission ("EEOC") pursuant to a Freedom Of Information Act request  (*See* Exh. B to Pl.'s Supplemental Br.).  However, there was nothing in the EEOC's file relating to Plaintiff's charge other than Plaintiff's own complaint because MasterBrand did not respond to Plaintiff's EEOC charge with a position statement and the EEOC did not complete its investigation of her complaint prior to issuing her a right to sue letter at Plaintiff's counsels' request.  This entry is either simply wrong or grossly excessive.

- 6/19/2005: Arendall claims .5 hours for the "Receipt and review of correspondence and enclosure from opposing counsel."  (*See* Exh. A to Pl.'s Supplemental Br.)  However, this entry cannot be accurate because this lawsuit was not even filed until a year later in 2006, and no counsel had appeared on behalf of MasterBrand as of June 19, 2005.

Examples of other inflated time entries include the following[1]:

- 6/19/2006: Arendall claims .2 hours to review a routine, one-line order granting Defendant's unopposed motion for an enlargement of time to answer Plaintiff's complaint.  (*See* Exh. B to Pl.'s Supplemental Br.)

---

[1]   MasterBrand also notes that Plaintiff's counsel seeks 16.7 hours for Arnold's preparation of the initial fee petition and the subsequent supplemental supporting brief.

- 6/26/2006: Arendall claims .3 hours to review a routine, two-line motion for pro hac vice admission by opposing counsel.  (*See* Exh. B to Pl.'s Supplemental Br.)

- 6/29/2006: Arendall claims .2 hours to review a one-line order from the court granting Defense counsel's motion for pro hac vice admission.  (*See* Exh. B to Pl.'s Supplemental Br.)

- 5/10/2007, 5/11/2007, and 5/14/2007: over the course of three days, Arendall claims a total of two (2) hours to review MasterBrand's two-page motion to extend a deadline and to draft Plaintiff's five-paragraph response.  (*See* Exh. D to Pl.'s Supplemental Br.)

- 5/15/2007: Arendall claims an additional .2 hours to review the Court's two-line order ruling on MasterBrand's motion for an extension.  (*See* Exh. D to Pl.'s Supplemental Br.)

- 9/13/2007 and 9/18/2007: Arnold claims a total of 3.80 hours to calculate the amount of prejudgment interest due on Plaintiff's damages award. (*See* Exh. K to Pl.'s Supplemental Br.)

Entries such as these demonstrate a tendency to inflate the amount of time required to perform even basic and routine tasks.  Such inflation undermines the confidence that this Court should place in Plaintiff's counsels' account of the amount of time they expended on this case.  Indeed, in light of the duplicative, erroneous, and excessive entries contained in Plaintiff's counsels' billing records and the lack of reliable evidentiary support for Plaintiff's counsel's fee request, the overall amount of time for which Plaintiff's counsel is awarded fees should be subject to an across-the-board reduction.

### B.    Plaintiff's Counsel Seeks Fees For Time That Must Be Excluded

Plaintiff's counsels' fee request is also objectionable because they seek fees for certain categories of time that should be excluded altogether, including time spent on unsuccessful claims, time spent on frivolous matters, and under-documented travel time.

### 1.    Time Spent On Unsuccessful Claims

It is well settled that Plaintiff's counsel may not obtain attorneys fees for time that they spent pursuing unsuccessful claims. *See, e.g.*, *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) (stating that a court "must deduct time spent on discrete and unsuccessful claims").

Here, the jury rendered a verdict in favor of MasterBrand on Plaintiff's claim of race discrimination under Title VII.  Accordingly, time that Plaintiff's Counsel spent pursuing that unsuccessful claim must be excluded from any award of reasonable attorneys fees.  This excludable time includes, in particular, the time that Plaintiff's counsel spent preparing a brief in support of Plaintiff's claim for punitive damages on her race discrimination claim.  (*See* Pl.'s "Brief Regarding Punitive Damages In Regard To Her Claim Of Race Discrimination" (Doc. No. 61).)  This brief was filed on September 7, 2007, following the close of evidence at trial.  The entries relating to this claim that must be stricken include the following:

- 9/7/2007, Allen, "punitive damages brief", 2.90 hours.  (Exhibit I to Pl. Supplemental Br.)

- 9/7/2007, Allen, "Punitive Damages brief", 2.70 hours.  (Exhibit I to Pl. Supplemental Br.)

- 9/10/2007, Allen, "Rule 50; punitive damages argument; jury instruction argument prep," .50 hours.  (Exhibit I to Pl. Supplemental Br.)

Accordingly, Allen Arnold's fee request should be reduced by a total of at least 6.1 hours for time spent on Plaintiff's unsuccessful claim for punitive damages on her race discrimination claim.

### 2.    Time Spent On Frivolous Objections And Motions

It is also common sense that Plaintiff's counsel may not obtain attorneys' fees for time spent pursuing matters that were not only unsuccessful but also frivolous.  Here, Plaintiff's counsel raised a large number of  objections prior to trial that were without merit, yet required MasterBrand's counsel to invest substantial time in preparing opposition briefs (and required the time and attention of the Court).  (*See* Doc. Nos. 35, 41, 48, & 50.)  As MasterBrand set forth in its responses to these various submissions by Plaintiff's counsel, Plaintiff's motions and objections were almost entirely frivolous.  (*See* Doc. Nos. 53 & 54.)

For example, in her initial motion in limine, Plaintiff contended that MasterBrand had waived all of its affirmative defenses because, Plaintiff argued, the Pretrial order failed to preserve these defenses.  (Doc. No. 41 at 2.)  However, as MasterBrand demonstrated in its opposition to Plaintiff's Motion in Limine, Plaintiff's argument was baseless:  the Pretrial Order embraced MasterBrand's Answer explicitly setting out all of its defenses, clearly stated MasterBrand's defenses including its contention that Plaintiff was not entitled to any relief under Title VII, and contained various stipulations regarding Plaintiff's income during and after the termination of her employment which were relevant solely to the defense of mitigation.  (Doc. 54 at 2-3.)  Moreover, as MasterBrand pointed out in its opposition, Plaintiff would have waived her claim under 42 U.S.C. § 1981 according to her own theory since that claim was not specifically referenced in the Pretrial order. (*See* Doc. 54 at 2.)

Other frivolous pretrial objections by Plaintiff included:

- Moving to preclude MasterBrand from offering her discovery responses as an exhibit on the alleged ground they would be confusing to the jury, even though she, herself, had listed MasterBrand's discovery responses as a trial exhibit.  (*See* Doc. No. 53 at 11-12.)

- Moving to preclude MasterBrand from offering her EEOC charge as an exhibit, even though she listed the EEOC's investigation file as an exhibit. (*See* Doc. No. 53 at 14.)

- Moving to preclude information produced by MasterBrand in supplementing its discovery responses even though Plaintiff had previously demanded that MasterBrand so supplement its discovery responses and even though the supplemental production was arguably required under the Federal Rules of Civil Procedure.  (*See* Doc. No. 53 at 5-8.)

Notably, but not surprisingly, none of Plaintiff's pretrial motions in limine were granted.  Indeed, many of Plaintiff's pretrial objections were so obviously without merit that they raised the question of whether Plaintiff's counsel was filing them solely for the purpose of harassing MasterBrand and inflating attorneys' fees.[2]

Plaintiff should not be permitted to obtain attorneys fees for filing frivolous motions and objections prior to trial, and any time spent on these frivolous matters should be

---

[2]  Indeed, MasterBrand argued at the time in its opposition to Plaintiff's objections:

Plaintiff's objection is so patently frivolous that it raises the question whether Plaintiff is burdening MBCI (and the Court) with objections solely for the purposes of harassment and to increase attorneys fees.  Here, Plaintiff has objected to an exhibit listed by MBCI on the grounds that it is not relevant and will unnecessarily lengthen the trial *even though Plaintiff has included essentially identical documents on her own exhibit list*.

(Doc. No. 53 at 14.)

excluded from any award of attorneys' fees.[3]  As a matter of public policy, MasterBrand should not be expected to pay Plaintiff's attorneys fees for filing the frivolous motions as well as their own defense costs in defending against these frivolous motions.  Under such a scenario, MasterBrand would pay twice for work that added no value to the presentation of the issues at trial.  Accordingly, Allen Arnold's fee request should be reduced by at least 12.0 hours for time spent on frivolous pretrial motions.  MasterBrand also respectfully requests that any award of attorneys fees be subject to an additional overall reduction to offset the attorneys' fees that MasterBrand  was forced to incur in responding to Plaintiff's meritless submissions.

### 3.    Travel Time

Finally, Plaintiff's counsel seeks fees for a large amount of travel time.  However, because the billing entries for this travel time are inadequate, this time must be excluded.[4]

---

[3]    Specifically, any award of attorneys' fees should exclude fees for the following entries contained within Exhibit G to Plaintiff's Supplemental Brief relating to Plaintiff's frivolous pretrial objections and motions in limine:

- 8/20/2007, Allen, "Objections to W&E List," 1.40 hours
- 8/21/2007, Allen, "Review documents; Objections," 0.80 hours
- 8/22/2007, Allen, "Jury Instructions; Motion in Limine Research," 1.00 hours
- 8/24/2007, Allen, "Motion in Limine Response; Trial Brief", 1.50 hours
- 8/29/2007, Allen, "Amended Motion In Limine, 1.00 hours
- 8/31/2007, Allen, "Reply Briefs for Objctions [sic] and Motion in Limine; Backpay Exhibits", 5.30 hours
- 8/31/2007, Allen, "corrections, edits to replie [sic] briefs", 1.00 hours

[4]    In particular, any award of attorneys' fees should exclude fees for the following entries:

- 5/2/2007, Allen, "Drive to Dadeville, AL statement from witness", 4.30 hours.  (Exh. E to Pl.'s Supplemental Br.)
- 8/21/2007, Allen, "travel to Montgomery and back", 3.00 hours.  (Exh. G to Pl.'s Supplemental Br.)
- 8/21/2007, Allen, "Drive to Montgomery and Back 183 miles", 0.90 hours.  (Exh. G to Pl.'s Supplemental Br.)
- 9/4/2007, David, "Birmingham to Opelika," 2.50 hours.  (Exh. F to Pl.'s Supplemental Br.)
- 9/4/2007, Allen, "Drive time; motion prep.; witness prep of Foreman, Betties; Clack", 2.50 hours.  (Exh. G to Pl.'s Supplemental Br.)
- 9/6/2007, David, "Travel", 2.50 hours.  (Exh. H to Pl.'s Supplemental Br.)
- 9/6/2007, Allen, "Opelika to Birmingham," 2.50 hours (Exh. I to Pl.'s Supplemental Br.

Plaintiff's counsel fail to explain what, if any, work, they did during this travel time. *See, e.g.,* *Hearn v. General Electric Company*, No. 93-T-424-S, 1996 WL 937034 (M.D. Ala. Sept. 12, 1996) (excluding 19.5 hours of travel time sought by plaintiff's counsel). It is hardly credible for opposing counsel to argue an entitlement to be paid for pure travel time or that they were unable to perform any work such as cellular telephone discussions during some or all of the travel time. Accordingly, Allen Arnold's fee request should be reduced by an additional 18.1 hours for travel time and David Arendall's fee request reduced by an additional 10.0 hours for such time.

## II.     The Hourly Rates Sought By Plaintiff's Counsel Are Contrary To The Evidence And Unreasonable

Regarding the hourly rate, which is the other component required for calculating the "lodestar" amount, the Eleventh Circuit has explained that it is also the fee applicant's burden to "supply the court with specific and detailed evidence from which the court can determine the reasonably hourly rate." *Am. Civil Liberties Union,* 168 F.3d at 427. "[W]hat constitutes a reasonabl[e] hourly rates is a finding of fact . . . ." *Id.* at 436.

Plaintiff's counsels' claim for attorneys' fees is based on the following proposed hourly rates:

- David Arendall: $300 per hour for 2005, $350 per hours for 2006, and $400 per hour for 2007.

- Allen Arnold: $175 per hour for 2005, $200 per hour for 2006, and $235 per hour for 2007.

---

- 9/9/2007, Allen, "drive to Opelika," 2.40 hours (Exh. I to Pl.'s Supplemental Br.
- 9/10/2007, David, "Opelika to Bham", 2.50 hours.  (Exh. G to Pl.'s Supplemental Br.)
- 9/10/2007, Allen, "Opelika to Birmingham," 2.50 hours.  (Exh. I to Pl.'s Supplemental Br.)
- 9/9/2007, David, "Birmingham to Opelika," 2.50 hours.  (Exh. G to Pl.'s Supplemental Br.)

The evidence refutes Plaintiff's counsels' request for these rates.  Even if the declarations and affidavits submitted by Plaintiff's counsel were uncontested, they would fail to establish as a matter of fact that these proposed rates are the prevailing rates within the relevant legal market or that the market will bear the large year over year rate increases sought by plaintiff's counsel.

As demonstrated by the affidavits submitted by MasterBrand, the prevailing hourly rates in the Auburn/Opelika and Montgomery areas for plaintiff's attorneys of similar experience pursuing cases such as this one are substantially lower than the rates proposed by Plaintiff's counsel.  With this Brief in Opposition, MasterBrand has submitted the affidavits of three experienced litigators familiar with the local legal market and litigation in the Middle District:  Christopher Weller of Capell & Howard, P.C. practicing in Montgomery, Alabama, William H Webster of Henry, Lyons & White, P.C. practicing in Montgomery and Auburn, Alabama, and Heather Lindsay, located in Birmingham but practicing across the state.  (*See* Affidavit of Heather F. Lindsay ("Lindsay Aff.") attached hereto as Exh. A, Affidavit of William H. Webster ("Webster Aff.") attached hereto as Exh. B, and Affidavit of Christopher Weller ("Weller Aff.") attached hereto as Exh. C).  All three provide valuable insight into the prevailing hourly rates for employment litigation in the Auburn/Opelika and Montgomery areas.  All three believe that the fee range for experienced partners  is $175.00 - $250.00 per hour (perhaps up to $275.00 for complex matters) and $120.00 - $150.00 per hour for associates admitted to practice in 2004.  Based on actual prevailing rates, Arendall should be awarded an hourly rate no higher than $250.00 per hour and Arnold a rate no higher than $140.00 per hour.

**A.**    **Plaintiff's Counsels' Fee Petition Is Contrary To Their Own Representations Regarding Their Hourly Rates**

As an initial matter, it is notable that Plaintiff's counsel's fee requests are inconsistent with their own representations regarding their purported hourly rates. Although Arendall's fee request seeks fees for him based on a purported rate of $350 per hour in 2005, Arendall avers in his own declaration that his hourly rate in 2005 was $300 per hour. (*Compare* Declaration of David R. Arendall ("Arendall Decl.") ¶ IV (averring to a $300 hourly rate in 2005) *with* Exhs. A & M to Pl.'s Supplement Br. (claiming a $350 hourly rate in 2005).) Similarly, although Allen Arnold now seeks fees based on a rate of $200 per hour in 2005, he initially represented that his hourly rate was $175 in 2005. (*Compare* Pl.'s Petition For Attorneys' Fees, ¶8 (claiming a $175 hourly rate in 2005) *with* Exhs. A & M to Pl.'s Supplement Br. (claiming a $200 hourly rate in 2005).) These contradictions between Plaintiff's counsels' fee request and their earlier representations regarding their own hourly rates should substantially reduce the weight the Court accords to their claims about those rates and strongly suggests that Plaintiff's counsel is inflating their rates in their fee request.

**B.**    **The Relevant Legal Community For Determining A Reasonable Hourly Rate In This Case Is The Montgomery and Opelika Area**

Plaintiff's counsel have failed to submit <u>any</u> evidence of the prevailing rates within the legal market relevant to this case. It is well settled that "[a] reasonable hourly rate is the prevailing market rate in the *relevant legal community* for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Gay Lesbian Bisexual Alliance v. Sessions*, 930 F. Supp. 1492, 1494 (M.D. Ala. 1996) (emphasis added). "Establishing a claimed market rate is the plaintiff's burden." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000).

Generally, the "rate of attorney's fees is that of the place where the case is filed." *Gay Lesbian Bisexual Alliance,* 930 F. Supp. at 1495; *see also Am. Civil Liberties Union*, 168 F.3d at 437. In exceptional cases, a court may look outside the local market in determining an appropriate prevailing rate, but only if there is evidence that no attorneys within the local market would have been willing or capable of handling the case. *Id.* (concluding that the relevant legal market was Alabama as a whole rather than Montgomery because it was "unlikely that there would be any attorneys in the local market who would be willing to take the case and who would possess sufficient expertise in the area of law involved"); *see also Am. Civil Liberties Union*, 168 F.3d at 437 ("If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims.")

This case was filed in Opelika, and there is no basis for going beyond the local legal market of the Montgomery/Opelika area for determining a reasonable hourly rate for Plaintiff's counsel. Unlike in the *Gay Lesbian Bisexual Alliance* case, there is absolutely no evidence that attorneys in Montgomery or Opelika would have been unwilling or unable to handle this case. The claims and issues in this litigation were neither unusual nor complex. (*See* Lindsay Aff. ¶8, Weller Aff. ¶10-12) Plaintiff's claims under Title VII and 42 U.S.C. § 1981 involved simple allegations of disparate treatment based on the different discipline that was issued to two white male employees whom Plaintiff believed were similarly situated to her. (*Id.*) Plaintiff's claims in this case did not require wide ranging discovery or expert analysis and did not raise any novel legal questions. Because it is highly probable that Plaintiff could have found an attorney in the Montgomery/Opelika area who was both willing and capable of prosecuting her claims in this case (*see* Lindsay Aff. ¶8.; Weller Aff. ¶14; Webster Aff. ¶7), the relevant

legal market for the legal services received by Plaintiff in this case is Auburn/Opelika and perhaps Montgomery, not Alabama as a whole nor some other legal market such as Birmingham. *See, e.g.*, *Miller*, 117 F.Supp.2d at 1256 & n.4 (concluding that "[b]ecause Plaintiff filed his case in Montgomery, Alabama . . . the area in and surrounding Montgomery [was] the relevant community to which the court should look" in determining the prevailing rate for legal services and rejecting plaintiff's contention the relevant market was Alabama as a whole or that it included Birmingham); *Laube v. Allen*, 506 F.Supp.2d 969, 988 (M.D. Ala. 2007) (finding that relevant legal market was Montgomery); *Black v. M.G.A.*, *Inc.*, 51 F.Supp.2d 1315, 1321 (M.D. Ala. 1999) (finding that the relevant legal community for a case filed in the Middle District of Alabama, Southern Division, was Montgomery, Alabama and declining to consider fees outside the district).

Plaintiff's counsel filed four affidavits in support of their proposed hourly rates. (*See* Pl.'s Evidentiary Submissions, Exhs. 1, 4, 6, & 7.)  However, none of this evidence specifically attests to the prevailing rates for legal services within the Auburn/Opelika or Montgomery areas.

First, Arendall's and Arnold's declarations simply declare what they believe is "[t]he appropriate current rate for [their] legal services appropriate to the local market," without indicating what legal market they are referring to.  (*See* Declaration of David R. Arendall ("Arendall Decl.") ¶ IV & Declaration of Allen D. Arnold ("Arnold Decl.") ¶IV (attached as Exhs. 1 & 4 to Pl.'s Evidentiary Submissions).)  Plaintiff's counsel are located in Birmingham, which constitutes a different legal market than the legal market where this case was litigated. Birmingham is a larger city, and has a larger business community and legal market, than either Montgomery or Opelika.  (Lindsay Aff. ¶4.)  Because Birmingham is considerably larger, the

prevailing hourly rates that attorneys can command there are likely higher than the prevailing rates the same attorneys could command in Montgomery and Opelika. (*Id.*). Consequently, Arendall's and Arnold's purported hourly rates for their work in Birmingham fails to evidence the prevailing rates in Montgomery/Opelika.

Moreover, the remaining two affidavits submitted by Plaintiff's counsel expressly refer to the wrong legal market. Both C. Michael Quinn and Alicia Haynes aver that they are familiar with the rates billed and paid "in *Birmingham*, Montgomery, and Opelika area" and provide their opinions as to "the prevailing market rate *in Alabama* for Plaintiff's attorneys in cases such as the current case." (*See* Affidavit of C. Michael Quinn ("Quinn Aff.") ¶4 & Affidavit of Alicia Haynes ("Haynes Aff.") ¶5 (attached as Exhs. 6 & 7 to Pl.'s Evidentiary Submissions).)[5] However, as set forth above, the relevant legal market is not Birmingham nor Alabama as a whole, but rather the Montgomery/Opelika area, where the prevailing hourly rates are lower than in Birmingham.

Plaintiff's have thus failed to submit any evidence of the appropriate rate within the relevant legal market.

**C.**    **A Reasonable Hourly Rate Is No Higher Than $250.00 For Allen Arnold And $140.00 For David Arendall**

A fee applicant may meet his burden of establishing his requested rate in the local market "by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates." *Miller v. Kenworth of Dothan, Inc.*, 117 F.Supp.2d 1247, 1254 (M.D. Ala. 2000). The Eleventh Circuit has explained that "[w]hat [an attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be

---

[5]    As set forth in MasterBrand's contemporaneously filed Motion To Strike, the affidavit of Alicia Haynes should be stricken because it concerns an entirely different case filed under the Family Medical Leave Act and fails to demonstrate that Ms. Haynes has any knowledge of or opinion about this case.

what he is paid as 'determined by supply and demand.'" *Dillards*, 213 F.3d at 1354-55. On the other hand, "a court should hesitate to give controlling weight to prior awards, even thought they may be relevant . . . . The reason is obvious: Prior awards are not direct evidence of market behavior; the court is not a legal souk." *Id.* at 1355.

   If a fee applicant relies on opinion evidence to establish the reasonableness of his requested rate, "[t]he weight to be given" to such evidence "will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Miller*, 117 F.Supp.2d at 1254. Furthermore, in evaluating the comparability of market rates attested to, a court may consider one or more of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id.* This Court has stated that it relies primarily on the following *Johnson* factors: "the skill required to perform the legal services properly; the customary fee in the community; and the experience, reputation, and ability of the attorney." *Ellis v. City of Montgomery*, No. 2:05cv791, 2007 WL 2021967, *4 (M.D. Ala. July 9, 2007).

   1.  <u>Arnold</u>

   Arnold is a 2004 law school graduate and thus was a first, second, and third year associate over the course of this case. As noted above, Arnold seeks fees based on purported hourly rates of $175 per hour for 2005, $200 per hour for 2006, and $235 per hour for 2007.

   Remarkably, <u>none</u> of Plaintiff's submissions supports Arnold's claim that his hourly rate was $175 per hour in 2005 and $200 in 2006 as a first and second year associate. Even Arnold's <u>own</u> <u>declaration</u> is silent regarding his hourly rates in 2005 and 2006. (*See* Arnold Decl. ¶IV.) With respect to Arnold's alleged hourly rate in 2007, Arnold's declaration

notably fails to state that Arnold has ever actually charged or been paid his claimed rate of $235 per hour.  (Ex. 4 to Pl.'s Evidentiary Submissions.)

Significantly, Arnold has not submitted any direct evidence of what fees he has charged and been paid in the past for legal services.  Although Arnold avers that he "has represented some small businesses for defense purposes" (Arnold Decl. ¶C), and although Arnold presumably charged an hourly rate for his services in those matters, he fails to indicate what that rate was. Arnold has also failed to provide any evidence of what rates he has been awarded in other cases.  Arnold's fee application is thus based entirely on opinion testimony.

In contrast, MasterBrand's has submitted affidavits from three attorneys who have practiced extensively in the relevant legal market.  Heather Lindsay is an attorney based in Birmingham with experience in the Middle District  who has specialized in employment law since 1996.  Having practiced in both the Northern and Middle Districts of Alabama she is familiar with the differences in the prevailing rates within the two legal markets. (Lindsay Aff. ¶3)  William Webster is an attorney based in Montgomery who has practiced in the Montgomery/Opelika area since 1992.  (Webster Aff. ¶2)  Christopher Weller is a litigator practicing since 1987 with significant litigation experience in the Middle District.  (Weller Aff. ¶3)  All three attorneys have familiarized themselves with the claims and issues presented in this case as well as the qualifications of Plaintiff's counsel.  (Webster Aff. ¶3; Lindsay Aff. ¶4; Weller Aff. ¶5.)  Based on their knowledge of the prevailing rates within the Montgomery/Opelika area for attorneys of comparable experience in cases similar to this one, Weller, Webster and Lindsay are of the opinion that a junior associate such as Arnold would command an hourly rate no greater than $140.00  for this case.  (Webster Aff. ¶6; Lindsay Aff. ¶10; Weller Aff. ¶6-7.)  *Cf. Laube*, 506 F.Supp.2d at 988 (finding in 2007 that appropriate hourly

rate for first-year associate was $160 for civil rights case proceeding in Montgomery);

*Simpleville Music v. Mizell*, No. 1:04cv393, 2007 WL 496755 (M.D. Ala. Feb. 13, 2007)

(awarding associate with one to two years of experience an hourly rate of $160 in business

litigation).

### 2.    Arendall

As noted above, Arendall seeks a rate in this case of $300 per hour for 2005, $350

per hours for 2006, and $400 per hour for 2007.

Like Arnold, Arendall fails to provide any evidence of the rates he has actually

charged and been paid in the past.  Although Arendall avers that he has represented "defendants

in employment related cases" (Arendall Decl. ¶C), and although he presumably was paid at an

hourly rate for such work, Arendall fails to reveal what that rate were.  Arendall also fails to

indicate what rates he has been awarded in other cases.  Arendall's claimed hourly rates are,

therefore, like Arnold's, based entirely on opinion testimony that is irrelevant because it fails to

address the relevant legal market.

Webster and Lindsay, who have familiarized themselves with Arendall's

qualifications, are of the opinion that the appropriate hourly rate for an attorney of his caliber

within the Montgomery/Opelika area for a case such as this one would be no greater than

$250.00.  (Webster Aff. ¶6; Lindsay Aff. ¶10; Weller Aff. ¶6-7.)  These opinions are consistent

with rates awarded recently in other cases in the Middle District of Alabama.  *Cf. Ellis,* No.

2:05cv791, 2007 WL 2021967, *4 (M.D. Ala. July 9, 2007) (awarding lead attorney in non-

complex case $200 per hour); *Simpleville Music v. Mizell*, No. 1:04cv393, 2007 WL 496755

(M.D. Ala. Feb. 13, 2007) (awarding lead attorney rate of $300 per hour in business litigation);

*Kendrick v. Broadcast Media Group LLC*, No. 2:02CV1034, 2006 WL 2709846 (M.D. Ala. Sept.

20, 2006) (awarding C. Michael Quinn rate of $300 per hour in discrimination case);

III.    **The "Lodestar" Amount Should Be Adjusted Downward**

Taking into consideration the various reductions set forth above, the *maximum*

"lodestar" amounts for Arendall and Arnold are as follows:

**Arendall**

| | |
|---|---|
| Claimed time: | 155.1 hours |
| Less travel time: | -10.0 hours |
| Less duplicate and/or excessive entries | -8.7 hours |
| Total time: | 136.4 hours |

maximum Lodestar: 136.40 hours X $250.00 hourly rate = $34,100.00

**Arnold**

| | |
|---|---|
| Claimed time: | 171.6 |
| Less time on unsuccessful claims: | -6.1 hours |
| Less time on frivolous motions: | -12.0 hours |
| Less travel time: | -18.1 hours |
| Less duplicate and/or excessive entries: | -5.0 hours |
| Total time: | 130.4 hours |

maximum Lodestar: 130.4 hours X $140.00 hourly rate = $18,256.00

After calculating the "lodestar", that amount is "adjustable to arrive at a

reasonable fee in light of the relation of the results obtained to the worked performed."  *Dillards*,

213 F.3d at 1355-56.  The Supreme Court has explained that "there is no precise rule or formula

for making these determinations" and that a court "may attempt to identify specific hours that

should be eliminated, or it may simply reduce the award to account for limited success."

*Hensley v. Eckerhart*, 461 U.S. 424 436-37 (1983).

Here, the lodestar should be reduced downward to reflect Plaintiff's limited

success.  Plaintiff's Complaint alleged two claims: (1) race discrimination in violation of Title

VII and 42 U.S.C. §1981, and (2) sex discrimination in violation of Title VII.

Plaintiff's race discrimination claim was particularly weak. Indeed, at the close of evidence, this Court asked Plaintiff's counsel whether they intended to continue to pursue Plaintiff's race discrimination claims in light of uncontested evidence at trial that two of the four decision-makers in her termination were in the same protected class as Plaintiff. However, Plaintiff refused to dismiss her race claim, and the Court required the parties to brief the issue of whether there was any legally sufficient evidence to allow Plaintiff's claims for punitive damages on her race claim even to proceed to the jury. Unsurprisingly, the jury returned verdicts in favor of MasterBrand and against Plaintiff on her race discrimination claims.

In addition, even with respect to Plaintiff's sex discrimination claim, the jury awarded Plaintiff $0.00 in compensatory damages. And, as set forth in MasterBrand's brief in support of its renewed motion for judgment as a matter of law under Rule 50(b), Plaintiff also failed to present any legally sufficient evidentiary basis for the jury to award her punitive damages on her sex discrimination claim.[6]

In light of Plaintiff's failure on her race claim and her limited success on her sex discrimination claims, any award of attorneys fees must be reduced. This is particularly true as the appropriateness of punitive damages on the sex discrimination claim remains in dispute before the Court. MasterBrand respectfully suggests that an across the board reduction of the above-calculated lodestar amount would be appropriate.

## IV.    Conclusion

For the reasons set forth above, MasterBrand respectfully requests that if any attorneys fees are awarded to Plaintiff's counsel, those fees not exceed a total of $40,034.25.

---

[6]    Indeed, as set forth the MasterBrand's Rule 50(b) brief, MasterBrand is entitled to judgment as a matter of law on Plaintiff's sex discrimination claim because Plaintiff failed to present any legally sufficient evidence for the jury to rule in her favor on that claim.

Respectfully submitted,

BAKER & DANIELS LLP

By: s/ Mark J. Romaniuk
    Mark J. Romaniuk (IN Bar #15255-49)
    Christopher C. Murray (IN Bar #26221-49)
    (both admitted *pro hac vice*)
    Attorneys for MasterBrand Cabinets, Inc.

300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
mark.romaniuk@bakerd.com
christopher.murray@bakerd.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2007, the foregoing was filed electronically.

Notice of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system.

David R. Arendall
Allen D. Arnold
**ARENDALL & ASSOCIATES**
2018 Morris Avenue
Birmingham, Alabama  35203


s/ Mark J. Romaniuk

**BAKER & DANIELS LLP**
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
christopher.murray@bakerd.com