# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KIM FOREMAN, ) | |
| ) | |
| PLAINTIFF, ) | CASE NO. 3:06-CV-00449-MHT |
| ) | |
| V. ) | |
| ) | |
| MASTERBRAND CABINETS, INC., ) | |
| ) | |
| DEFENDANT. ) | |

### AFFIDAVIT OF CHRISTOPHER WELLER

I, Christopher Weller, state under penalty of perjury as follows:

1. I am an adult, over age 18, of sound mind and competent to testify as to all matters contained in this Declaration. All matters contained in this Declaration are within my personal knowledge.

2. My name is Christopher W. Weller. I am a partner in the law firm of Capell & Howard, P.C., resident in the firm's Montgomery office.

3. I was admitted to the Alabama State Bar in 1987, and thereafter was admitted to the bars of the United States District Court for the Northern, Middle and Southern Districts of Alabama, the Eleventh Circuit Court of Appeals, and the United States Supreme Court. I have practiced law continuously since June of 1987. My practice is devoted principally to federal civil litigation, including business litigation and the defense of civil rights and employment discrimination cases. I have been involved in numerous civil rights actions in the Middle District of Alabama, including several of the largest civil rights class actions in the history of the state of Alabama (*Crum, Frazer* and *Reynolds*). I have frequently litigated cases involving

1

allegations of sex or race discrimination, and I am familiar with the presentation, proof, and defense of claims such as the ones involved in the above-captioned case. I frequently and regularly appear in this Court in such cases, including cases brought under 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964) and 42 U.S.C. § 1981. As a result of my practice, I have been involved in a number of cases in the federal courts, particularly in this District, in which fee applications have been at issue. I am familiar with the standards involving fee shifting and the fee awards.

4. I am familiar with the rates charged by our firm for legal services provided by our lawyers at its offices located in Montgomery and Opelika, and I am generally familiar with the rates charged by other lawyers and firms in the Montgomery and Opelika market. I am also generally familiar with hourly rates charged by senior federal court litigators in employment litigation in this market through information obtained in other fee-shifting litigation.

5. I have spoken with the attorneys representing MasterBrand Cabinets, Inc. about the issues in this case, and I have examined the application for attorneys' fees, exhibits, pleadings and other documents submitted by Plaintiff's counsel. I have been asked by MasterBrand's attorneys to provide an opinion regarding the reasonableness of Plaintiff's counsel's fee request.

6. I understand that the most senior and experienced lawyer for the plaintiffs in this case is asking for a fee based on a "lodestar" hourly rate of $400.00. I am not aware of any lawyer practicing in the Middle District who regularly commands in the marketplace a $400.00 hourly rate, even for complex federal litigation. In my opinion, while a few of the most experienced federal litigators in this District might command as much as $275.00 per hour and on occasion in certain complex cases somewhat more, most could expect to be able to charge a fee-paying client in the increasingly competitive lawyer marketplace a fee in the range of

$225.00-$275.00 per hour. The higher end of this range would generally be applicable, if at all, to lawyers with very significant experience or special capabilities in the area of class litigation and who have and exercise primary responsibility for the matter at hand.

7. I also understand that the plaintiff is requesting an hourly rate of $235.00 for an associate attorney who was admitted to practice in 2004. The current Capell & Howard billing rate for associates ranges from $140.00 per hour for a first year associate to $180.00 per hour for a sixth year associate. Our firm's established hourly rate in the year 2004 for lawyers with approximately three years experience was $140.00. Then, as now, however, such lawyers often were able to command only somewhat lower hourly rates. Indeed, our firm has accepted engagements for such associates working on employment related litigation at lower than their standard rates, which I consider to be reflective of actual market conditions.

8. My firm's established hourly rate schedule includes an hourly rate of $240.00 for me, and rates ranging from $240 to $280 for mid-level partners. None of our senior partners with 25 years or more experience in various areas of practice, including litigation, have hourly rates exceeding $295. On occasion, Capell & Howard attorneys are able to command $300.00 per hour, but those instances are very rare, usually involve sophisticated corporate or tax work and never involve employment litigation. As a practical matter, however, the Montgomery-area marketplace dictates that often I must actually charge a lower hourly rate in order to be competitive. Consequently, while I can occasionally charge my "standard" rate, my rate actually billed to and collected from clients for the kind of litigation involved here rarely if ever exceeds $225.00, and is usually lower than that amount.

9. I have reviewed the affidavits of attorneys Michael Quinn and Alicia Haynes. Both Mr. Quinn and Ms. Haynes are respected employment law attorneys. However, their

3

practices are located in Birmingham, where they litigate the majority of their cases. I have practiced law in both Birmingham and Montgomery. I practiced law with the firm of Burr & Forman in Birmingham for three years before relocating to Montgomery to practice with Capell & Howard. Although there is overlap between the Northern District and the Middle District in terms of lawyers appearing in both courts, it has been my experience that attorneys appearing in the Northern District are able to command substantially higher hourly rates than those recognized by the courts in the Middle District. I do not believe that the same range of prevailing rates is applicable to Birmingham, Montgomery, and the Opelika areas because these communities vary substantially in size, are located in different regions of the state, and have distinct legal markets. Birmingham is a larger city, and has a larger business community and legal market than either Montgomery or Opelika. In contrast, Opelika is a relatively small community that is not part of a major metropolitan area. In my experience, the prevailing rates for legal services in Birmingham are substantially higher than the prevailing rates both in Montgomery and in the area around Opelika. I do not believe that plaintiff's attorneys would ordinarily be able to command rates in Montgomery and the Opelika area that are as high as those they might be able to command in Birmingham. In sum, Birmingham is simply a more lucrative market for attorneys.

10.    Hourly rates such as those sought by Plaintiff's counsel are simply not commanded by even the most prominent attorneys practicing in the Middle District, in federal or state court, irrespective of their field of expertise. In fact, this Court has issued several opinions wherein it found that "the customary fee for attorneys working on employment discrimination cases in the Montgomery area ranges from $130.00 to $300.00." *Ramsey v. Public Service Commission*, 2000 WL 426187 at *6 (M.D. Ala. 2000); *see also Hall v. Lowder Realty*, 263 F. Supp. 2d 1352, 1366 (M.D. Ala. 2003); *Reynolds v. Alabama Department of*

*Transportation*, 926 F. Supp. 1448, 1457 (M.D. Ala. 1995). I am unaware of a single instance where hourly rates in excess of $300.00 per hour have been awarded in the Middle District. Furthermore, fee awards of $300 per hour are extremely rare. The one case of which I am aware that the Middle District awarded fees to one attorney at a rate of $300 per hour (after significantly adjusting the lodstar by 60%), involved multiple parties and intervenors, complex legal issues affecting three separate cases, multiple depositions, and the development and exchange of complex expert statistical reports.

11. Based on my personal experience and discussions with other attorneys who practice employment law in Montgomery and Opelika, in 2007, the prevailing rates in the Montgomery/Opelika plaintiffs' attorneys with thirty-years or more experience litigating similar employment law cases range from $200.00 to $295.00 per hour, and the prevailing rates for plaintiffs' attorneys in such cases with three years of experience range from $125.00 to $175.00 per hour. An attorney's rate within these ranges is typically determined for a particular case based on factors such the level of difficulty of the case, the risk assumed by the plaintiff's attorney of failing to obtain any recovery, and the amount of expertise and effort required to prosecute the claims.

12. Based on my review of the Complaint and other pleadings in this action, Plaintiff Kim Foreman's Title VII and 42 U.S.C. § 1981 claims involved simple allegations of disparate treatment based on the different discipline that was issued to two white male employees whom Ms. Foreman believed were similarly situated to her. Ms. Foreman's sex and race discrimination claims in this case did not require wide ranging discovery or expert analysis and did not raise any novel legal questions. The claims and issues in this case were neither unusual nor complex.

13. In my experience, discrimination cases under Title VII and comparable laws such as this one are generally attractive to plaintiffs' counsel. Because the costs of defense of such cases can often equal or exceed the damages claimed, such cases are frequently settled by defendants for economic reasons or to avoid the risks of going to trial, even where a plaintiff's claims lack substantial merit. Plaintiff's counsel are thus often able to obtain recoveries in such cases with a minimal investment of time and effort and without facing a significant danger of obtaining no return at all. I believe the very high volume of employment discrimination litigation over the past decade attests to the fact that there is no shortage of plaintiffs' counsel willing to prosecute such cases.

14. Based on my knowledge of the legal market, I believe that Ms. Foreman likely could have found a general practitioner in the Opelika or Montgomery area who was both willing to take a case such as this one and possessing sufficient skill and experience in Title VII and § 1981 law to prosecute the case efficiently and effectively. I also believe that if Ms. Foreman specifically desired an attorney who specialized in employment law, she would likely have been able to find one in Montgomery who was willing to take and capable of handling a case such as this one.

15. Based on my knowledge of the prevailing hourly rates charged by attorneys with comparable skill and experience in similar litigation, the hourly rates requested by David R. Arendall and Allen D. Arnold are excessive and above the range of appropriate hourly charges for legal services in the Opelika area or in Montgomery. I do not believe that there would be any grounds to support a premium rate for Plaintiff's counsel in this case in excess of the prevailing rates for the local community. The claims in this case were routine and did not require any extraordinary expertise, experience, or effort to prosecute, nor did they present any

6

unusual risks.

16.  Based on my knowledge of Mr. Arendall's and Mr. Arnold's practice and experience, I believe a reasonable hourly rate for their services would be $250 and $150 an hour, respectively.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**FURTHER THE AFFIANT SAYETH NOT.**

Dated this, the 12th day of November, 2007.

_____
Christopher W. Weller
AFFIANT


Sworn to and subscribed before me on this the 12th day of November 2006.

_____
NOTARY PUBLIC

(SEAL)                                   My Commission Expires: 9-19-11