## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

**KIM FOREMAN,**

**PLAINTIFF,**                **CIVIL ACTION NO. 3:06cv00449 (MHT)**

**V.**

**MASTERBRAND CABINETS, INC.,**

**DEFENDANT.**

### PLAINTIFF'S REPLY BRIEF IN RESPONSE TO DEFENDANT'S OPPOSITION TO PETITION FOR ATTORNEYS' FEES

COMES NOW the Plaintiff, by and through undersigned counsel, and replies to Defendant's opposition to Plaintiff's Petition for Attorneys' Fees.

## I.      Introduction

It is surprising that Defendant has filed an opposition to Plaintiff's low overall fee petition. The billable rates regarding the attorneys for mid-level partners at Defendant's firm typically charge $300 to $350 per hour; and associates bill at the rate OF up to $240 per hour. Considering the results obtained in this case with Defendant represented by such able counsel, Plaintiff's counsel has asked for a reasonable rate and compensation for the results obtained for Ms. Foreman. Certainly in winning, Plaintiff's counsel should not receive a lower hourly rate than Defendant's lawyers.

1

## II.    Duplicative Time and Billing Judgment

### A. Duplicative Time

Defendant has alleged examples of duplicative billing. Defendant cites four examples of alleged duplicative billings and only two entries are due to be reduced. (Doc. 92, p. 3). The duplicative nature is due to Plaintiff's counsel trying to operate its billing software to comply with the Court's Order regarding summaries for each stage of litigation in the supplemental fee petition. Plaintiff agrees that the "Conference with Chris Murray" for 0.5 hours by Mr. Arnold and "Receipt and Review of Order denying Motion to Amend" for 0.2 hours by Mr. Arendall was erroneously counted twice due to the nature of the "filtering process" on Defendant's software. The supplemental brief exhibits were broken down into stages and mistakes were simply made in operating the software.[1] Defendant's accusation that Plaintiff's counsel double billed for the client's "work excuses" is erroneous as the client needed two work excuses for different periods of time.

Defendant's opposition to 2.0 hours for reviewing the submitted discovery and a subsequent letter regarding its deficiencies is without merit. Defendant's counsel has apparently never stopped a project and then later resumed a project. Defendant's paper discovery required intensive scrutiny. Plaintiff's counsel,

---

[1] A review of Defendant's Brief in Opposition to Plaintiff's Fee Petition contains clerical and mathematical mistakes. (See Doc. 93, p. 19, 20 (mathematical computations vs. conclusion); p. 15 (heading)). However, Plaintiff's counsel does not impugn Defense counsels' character as a result of his obvious mistakes.

especially with limited personnel information, required close review and due diligence to successfully represent the client. It is fair to say that the close scrutiny of written materials was invaluable at the trial of this matter. Additionally, Motions to Compel are not taken lightly in the Middle District of Alabama, and careful review of documentation in an effort to avoid wasting the Court's time should be awarded, not reduced. Defendant's counsel only supplemented the responses after the close of discovery preventing Plaintiff's counsel from being able to depose witnesses to challenge the validity of the documents.

**B.    Billing Judgment**

Defendant seems to believe reviewing the notices from the Court or motions submitted by counsel do not require any thought or reaction in an effort to prosecute the case. Defendant's objections to review of the Pro Hac Vice admission documents are frivolous. Defendant should be happy this motion was not opposed, which allowed it to use lawyers of its choosing to defend it in this case. Contrary to Defendant's counsel's experience, this firm does consider opposing Pro Hac Vice admission. Defendant's opposition to this billable amount is without merit.

Defendant takes issue with the 2.2 hours regarding Plaintiff's opposition to extend the discovery cut-off in this case. This decision was not taken lightly and required serious thought and conference amongst Plaintiff's counsel. Despite

conferencing among the two attorneys, the records were not double billed for this strategic decision.   The choice to oppose a discovery extension resulted in a savings of an unnecessary Rule 56 motion and held down the overall fees and costs for depositions.   Plaintiff was protected by not having to sit for a deposition, but the immense time put into trial preparation was crucial.   Furthermore, Defendant's key witnesses were outside of the subpoena power of this Court and this information had to be considered in opposing Defendant's motion.[2]   Defendant's accusation of lack of billing judgment is without merit.

Defendant's opposition to 3.8 hours regarding Mr. Arnold's work regarding prejudgment interest is also without merit.   Defendant's seems to operate on the literal assumption that the interest calculation took counsel 3.8 hours to punch in the numbers on a calculator.   The prejudgment interest award requires a calculation of interest based on rates set by the Federal Reserve.   Interestingly enough, the statute calls for a rate on a debt instrument that is no longer issued by the government.   Despite phone calls to the Federal Reserve Bank, investment bankers, and considerable Google searches, tracking down this rate is difficult for a person not regularly following the bond market.   The statute even states that the Federal Court system receives a report of this rate each week.   Contact with clerks at the Middle and Northern District informed counsel that they had no clue what

---

[2] Plaintiff's counsel points out to the Court that Defendant's primary witnesses were outside the jurisdiction of the Court and unavailable for deposition absent considerable cost and expense.

Mr. Arnold was talking about when asked. Research and calculations regarding the prejudgment interest is reasonable billing time from start to finish.

Defendant's blanket assertion that time is inflated is not well taken. Throughout the litigation of this case, Plaintiff's counsel made several overtures regarding settlement. Despite now having a judgment, Defendant has never offered a single penny to resolve this matter. Plaintiff's counsel has efficiently prosecuted the case.[3] With the possibility of an award of equitable relief pending, counsel has asked for less than the 50% of the total award with attorneys' fees, which is below the contingency fee contract that he has agreed upon with the Plaintiff. Defendant cannot argue that travel time or any other time was unnecessary when it in fact did nothing proactive to resolve the matter. This Court has reviewed numerous fee petitions, some resulting in published decisions, and the overall time expended on comparable Title VII cases, as compared to others, is quite low. Plaintiff's have filed a concurrent motion for production of Defendant's billing records to MBCI for the defense of this case to compare efficiencies and charges with the fees sought by the undersigned.

---

[3] If Plaintiff's counsel wanted to increase hours, depositions (which would have been helpful at trial), motions to compel discovery, and even travel to deponent's locations would have been an effective way to be guilty of what counsel falsely accuses. Plaintiff's counsel should not be punished for vigorously prosecuting the case after settlement overtures were rejected. (See *Tyler v. Westway Automotive Center, Inc.*, 2005 U.S. Dist. LEXIS 45771 (S.D. Fla. 2005) (denying defendant's blanket objection and request to reduce the amount of fees requested due to fact plaintiff's counsel made two settlement offers that were rejected).

### III.    Defendant Seeks to Exclude Time that Should be Properly Paid

#### A. Time Spent on Plaintiff's Gender Claim is Inextricably Intertwined with her Race Claim

Defendant's argument that hours expended by Mr. Arnold in his efforts of drafting and submitting a punitive damages brief are not to be awarded is without merit.[4]   The Court ordered this issue to be briefed by both parties prior to instructing the jury.   The Court then instructed the jury regarding the punitive damages for <u>both</u> the gender and race claim.   Plaintiff's efforts were successful as the Court gave the instruction for punitive damages regarding the race claim. Additionally, the analysis for the punitive damages claim is intertwined for both race and gender.   At all times, the discrimination claims involved a black-female plaintiff and white-male comparators.   Defendant's request for a 6.1 hour reduction is without merit.

#### B. Frivolous Objections & Motions

A review of Exhibit A indicates that Defendant's lead counsel does not prosecute cases for clients as part of their practice, which is much more difficult than defending when you do not have the burden of proof, yet do have the documents and witnesses and an unlimited budget to use for the case.[5]

---

[4] Defendant's argument regarding the undersigned's Rule 37 and discovery review is identical to the punitive damages brief: a project that Mr. Arnold started work upon, stopped, and then resumed to completion.

[5] A similar exhibit for Mr. Murray could not be produced as he has left the firm, and his profile has been removed.

Defendant's accusation that Plaintiff's counsel hours are inflated and intended to harass MBCI are baseless. The skills and effort to prosecute a case requires a plaintiff's counsel to prepare for the worst and keep all of its avenues open for strategy purposes. What harassment occurs when Plaintiff's are merely seeking to be paid for hours worked with a successful result?

Defendant's counsel assertion that Plaintiff's Motion in Limine was frivolous is the pot calling the kettle black. Defendant failed to cross-examine Plaintiff regarding the mitigation of her damages, thus, the Court never had to rule on the issue regarding the waiver of Defendant's affirmative defenses. Likewise, Defendant never attempted to place into evidence any of the materials produced outside of the discovery period. Defendant cannot argue something was unsuccessful if the Court never ruled upon this issue. The undersigned was prepared for trial and ready for objections when such objectionable issues were present.[6] Plaintiff's Motion in Limine was successful in precluding any evidence regarding Plaintiff's irrelevant conviction for shoplifting. Furthermore, Plaintiff's Motion in Limine, even if never ruled upon by the Court, may very well have influenced Defendant's trial strategy. Defendant is unlikely to acknowledge its own strategies, but it was a successful use of time and energy to preclude certain

---

[6] The only issue that arose as a result of the pre-trial proceedings occurred as a result of the trial brief. Defendant's counsel attempted to introduce a defense, after the Plaintiff rested, that it had waived prior to trial, however, Plaintiff's counsel was quick to object, and the Court sustained this objection, that such an action was not permissible.

items either through Court order or through trial strategy. As the end result was keeping the evidence away from the jury's purview, Plaintiff's Motion in Limine was highly successful because the jury heard none of this irrelevant material.

The defense of a case is entirely different than a prosecution of a case. The presentation of evidence is important. Objections must be preserved or the objection is waived. The primary witnesses for the defense came to the trial without a subpoena. Plaintiff's counsel had to be prepared for anything, including the overruling of pre-trial objections to exhibits.

### C. Travel Time

Defendant's counsel's assertion that travel time is to be excluded in the award of fees is without merit. Plaintiff's counsel traveled to meet the most important witness in the case Thomas Clack; attended the Pre-Trial conference; and the trial itself, which required two trips from Birmingham to Opelika and back. Counsel, at all times, was discussing the case with one another, including preparation for trial that can reasonably be performed while traveling in an automobile. This included rehearsal of opening and closing statements, review of objections anticipated by the opposition during direct examination, and voir dire questions. Counsel, even on the journey after the verdict, discussed preparation of Defendant's anticipated post trial motions, Plaintiff's motion for equitable relief, and this fee petition.

## IV.    Hourly Rates Proposed by Plaintiff are Reasonable

Defendant's submitted affidavits do not support Defendant's argument that the fee is unreasonable.  Plaintiff's counsel submits a fee award from a case in the year 2000 for an award of $250 per hour for Mr. Arendall.  (See Exhibit B).  Seven years of experience in litigation and trial practice certainly calls for an increase in an attorney's hourly rate.  Mr. Arnold has been paid $235.00 for hourly paying clients and the undersigned has been paid $350.00 by such clients.  Furthermore, Mr. Arendall's thirty-two years of experience far exceeds those of Defendant's affiants, with the closest difference being 12 years.  This firm has litigated only one case with one of the affiants, Heather Lindsay, and she has never participated in a trial with either counsel to gauge their experience and expertise.  It is fair to say none of these affiants are senior partners at their respective firms and certainly do not have comparable experience.  Plaintiff has submitted affidavits from Mike Quinn[7] and Alicia Haynes[8] that support their claim for attorneys' fees in this matter.  Both of these lawyers have considerably more experience than do any of Defendant's affiants.  Plaintiff has also filed another Declaration with this motion

---

[7] Defendant's counsel disputes Mr. Quinn's affidavit as having validity, but nevertheless cites cases where he was awarded fees.

[8] Plaintiff has filed a motion to substitute Ms. Haynes affidavit as the incorrect rough draft was filed by error.

of defense counsel, Frank S. James.  (Exhibit C).  His years of experience in terms are comparable with those of the undersigned.[9]

Defendant argues that Montgomery rates are due to be applied to Plaintiff's fee petition.  However, as seen in Exhibit D, the entire section of the Opelika phone book list services for attorneys in several distinct areas of law.  The only listing for employment discrimination law is for the undersigned's firm.  (See Exhibit D, document pp. 17, 36).  Only two other firms in the Opelika area list discrimination work as an area of practice.  (Exhibit D, document pp. 23, 33). Neither of these firms advertises employment law as its primary practice. Defendant's argument that numerous options existed within the relevant legal market is without merit.  The connection to Montgomery is tenuous at best.  In this case, the lawyers reside in Birmingham, Alabama and Indianapolis, Indiana.  The only connection to Montgomery is Judge Thompson.  The only connection to Opelika is the physical courthouse where the trial was conducted.  The difference in distance from Opelika to Montgomery and Opelika to Birmingham is a travel time of less than an hour.  At all times, the parties and their counsel were conducting their prosecution and defense of this case in their offices, not located in Montgomery or Opelika, by virtue of the telephone, postal service, and electronic

---

[9] Defendant's affiants consist entirely of opinions by individuals who solely represent employers/defendants.  However, Plaintiff's affiants cover various types of practices: a pure plaintiff's lawyer, Alicia Haynes; a practice representing employees and employers, Mike Quinn; and a pure defense lawyer, Frank James.

mail.  No connection existed to show that a Montgomery rate should be utilized; the undersigned requests this Court deem that the appropriate rate is the market for the State of Alabama.  The case occurred in Alabama, the prevailing rate of the undersigned is appropriate for Alabama, and the trial occurred in Alabama.

Defendant attempts to differentiate the relevant legal markets in such a manner that is not congruent with its own representation.  Plaintiff's counsel from Birmingham, Alabama, prosecuted a case two hours away by automobile against a Defendant represented by Indianapolis lawyers, more than a half day's travel away by airplane.  Defendant, conducting business operations in Alabama, elected to pay Indianapolis rates even though competent counsel existed to defend the matter in Alabama.  However, just like Defendant, Plaintiff is free to choose her own counsel, and as seen in the phone book, her options were limited.  Plaintiff's counsel's rates are based on rates charged to hourly paying clients in a city that is not far from a city where Plaintiff resided.  To demand that Plaintiff be required to seek an Opelika lawyer, when none there wants to represent a client with such a claim, and when the Defendant's representation is from out of state is a double standard.

The undersigned serves the entire State of Alabama.  Defendant attempts to argue to the Court this is a vanilla-discrimination case, lacking complexity, which any lawyer could have successfully prosecuted.  While not saying much for why

Defendant lost such a case, nothing could be further from the truth. Defendant provided minimal paper discovery. No depositions were taken in this case. No impeachment evidence existed. Nevertheless, the undersigned and co-counsel achieved a victory in a "trial-by-fire" environment where the case to be won from through cross-examination from the three decision-makers brought by Defendant from outside the Court's jurisdiction. The results of the trial found a verdict for the Plaintiff that compensated for her lost pay and convinced a jury that MBCI not only broke the law but that it did so with malicious intent. Defendant's claim that this case lacked complexity is without merit.

Plaintiff has filed a concurrent motion for production of Defendant's billable rates and time expended for this case. The only fair measure to determine if Plaintiff's counsel's billable time and rates is for counsel to have a full and fair review of the billing records and expenses by Mr. Romaniuk and Mr. Murray in defense of this case. As noted above, the amount charged to MBCI by Defendant's counsel is likely above that sought by Plaintiff's counsel for this case or the information would have been voluntarily provided by Defendant.

## V.    Adjustments

Mr. Arnold's time is due to be reduced by 0.5 hours as noted in section II above. The undersigned's time is due to be reduced by 0.2 hours as noted in section II above.

## VI.    Conclusion

The results of this case show that at each and every phase that the undersigned and co-counsel were considering every strategic aspect of the case from the moment the case was sent to the EEOC until the reading of the jury's verdict.  The undersigned obtained a successful verdict for its client.  Through limited discovery, Plaintiff's counsel prepared sufficient information through written discovery to prosecute a case, and contacted necessary witnesses sufficient to prepare a trial.  The trial of this matter resulted in the Plaintiff achieving all of the goals set out in preparation: irrelevant examination and documents were not shown to the jury.

WHEREFORE, Premises Considered, Plaintiff requests that the Petition for Attorneys' fees be granted as described herein.

Respectfully submitted,


/s/ David R. Arendall

_____

David R. Arendall


OF COUNSEL:
ARENDALL & ASSOCIATES
2018 Morris Avenue, Third Floor
Birmingham, Alabama 35203
205.252.1550 - Office
205.252.1556 – Facsimile

## **CERTIFICATE OF SERVICE**

I have filed the foregoing with the Clerk of the Court using the CM/ECF system on November 19, 2007, which will forward a copy to:

Mark J. Romaniuk

/s/ David R. Arendall

_____

Of Counsel